UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Firebird Global Master Fund II Ltd.** | ) | |
| 152 West 57th Street, 24th Floor | ) | |
| New York, NY 10019 | ) | |
| Plaintiff | ) | |
| v. | ) | _____cv _____ |
| | ) | |
| **Republic of Nauru** | ) | |
| Government Office | ) | |
| Yaren District | ) | |
| Republic of Nauru | ) | |
| Central Pacific | ) | |
| Defendant | ) | |
| | ) | |

## COMPLAINT

Plaintiff Firebird Global Master Fund II Ltd. ("Firebird") complains against Defendant

Republic of Nauru ("Nauru"), as follows:

### NATURE OF THE ACTION

1. Firebird brings this action pursuant to the Foreign Sovereign Immunities Act of 1976, 28

U.S.C. §1330, and §1602-11 and the Uniform Foreign Money Judgment Act, D.C. Code §15-382

(the "Recognition Act") for recognition and enforcement of a money judgment (the "Judgment")

rendered by the District Court of Tokyo, Japan (the "Japanese Court") against Nauru.  A copy of

the apostilled Judgment with English translation is annexed hereto as Exhibit A.

2. The Judgment arose from Nauru's failure to honor a guaranty agreement (the

"Agreement") of Japanese Yen bonds issued by the Republic of Nauru Finance Corporation

("RONFIN").   The Bonds were issued to finance commercial activity of Nauru, i.e. the mining,

processing, and sale of phosphate.  Based on current exchange rates, the Judgment is worth

$37,427,658.29.

1

## PARTIES

3.  Firebird is a corporation organized and existing under the laws of the Cayman Islands. Firebird is operated and managed from New York City, New York.   It has many investors based in the United States.

4.  Nauru is a foreign sovereign nation located in the southern Pacific Ocean.

## JURISDICTION AND VENUE

5.  Jurisdiction lies pursuant to 28 U.S.C. §1330 as Nauru is a foreign sovereign nation.

6.  Venue is proper in this district under 18 U.S.C. §1391(f)(4).

## FACTS

### Certificates Issued By RONFIN

7.  On May 31, 1988 RONFIN issued B numbered bearer bond Japanese yen certificates (1988), guaranteed by Nauru (hereafter, "B Certificates") including:

- Principal: ¥4,000 million
- Interest: Annual rate of 6.5%
- Redemption Dates
    - May 31, 1992, ¥400 million
    - May 31, 1993, ¥400 million
    - May 31, 1994, ¥400 million
    - May 31, 1995, ¥2,800 million
- Penalty Interest for Payment Delay: Annual rate of 6.5%

Judgment, pg. 3, Ex. A.

8.  On July 27, 1989 in accordance with the conditions stated below RONFIN issued C numbered bearer bond Japanese yen certificates (1989), guaranteed by Nauru (hereafter, "C Certificates").

- Principal: ¥5,000 million
- Interest: Annual rate of 7%

- Redemption Date: July 27, 1994, ¥5,000 million.  However, on August 12, 1994, the redemption date was altered as stated below:
    o  August 22, 1994, ¥500 million
    o  December 20, 1994, ¥500 million
    o  April 27, 1995, ¥4,000 million
- Annual interest rate for delay in payment: 7%.

Judgment, pg. 3, Ex. A.

9.  RONFIN has not redeemed the B Certificates in the amount ¥400 million with a

redemption date of May 31, 1994; B Certificates in the amount ¥2,800 million with a redemption

date of May 31, 1995; nor the C Certificates. Judgment, pg. 4, Ex. A.

### Nauru Guaranteed the Certificates

10. Nauru guaranteed payment of the principal and interest of the B Certificates and C

Certificates under two Agreements.  See Agreements, Ex. B.

11. Pursuant to the Agreement, Nauru submitted to the jurisdiction of the Tokyo Court and

waived sovereign immunity for resolution of disputes arising under the Agreement.  Judgment,

pg. 17-18, Ex. A

12. The Agreements provided:

> Any legal action relating to the Guarantee … may be brought against the Republic in the
> Tokyo District Court … to the jurisdiction of which the Republic hereby expressly and
> irrevocably submits for purposes of any such action.   To the extent permitted by
> applicable law the Republic hereby irrevocably waives any such immunity to which it
> might otherwise be entitled from jurisdiction, suit, attachment, judgment or execution in
> any such action.

Agreements, Ex. B.  See Judgment, pg. 7, Ex. A.

### Certificates Held By Firebird

13. Firebird holds numerous B Yen Certificates of ¥10,000,000 each and numerous C

Certificates of ¥1,000,000.  Judgment, pg. 3-4, Ex. A.

### The Judgment

3

14. Firebird brought an action in the Japanese Court against Nauru as the guarantor of the Bonds for repayment of principal and interest.  Nauru participated in the litigation, asserting various substantive defenses.

15.      On October 28, 2011, the Japanese Court issued a verdict in favor of Firebird for:

- **B Certificates Principle:** ¥300 million;

- **B Certificates Interest** on ¥300 million calculated at an annual rate of interest of 6.5% from June 1, 1995 until payment of that sum;

- **C Certificate Principle**: ¥1,000 million;

- **C Certificate Interest** on ¥1,000 million calculated at an annual rate of interest of 7% from July 28, 1994 until payment of that sum.

Judgment, pg. 20. Ex. A.

16. The value of the Japanese Judgment as of February 2, 2012 in U.S. currency is $37,427,658.29, calculated as follows:

- **B and C Certificate Principle: $16,899,691.00** ( ¥ 1,300 million *$.01312401)[1]

- **B Certificate Interest: $4,207,615.35**   ((( ¥300 million *$.01312401) *.065) * 213/365 for 1995) + ((( ¥ 300 million *$.01312401) *.065) * 16 years for 1996 through 2011) + ((( ¥300 million *$.01312401) *.065) * 33/365 for 2012)

- **C Certificate Interest: $15,871,682.23** ((( ¥1,000 million *$.01312401) *.07) * 156/365 for 1994) + ((( ¥1,000 million *$.01312401) *.07) * 17 years for

---

[1] The Yen/U.S. dollar exchange rate published February 2, 2012 in the Wall Street Journal.

1995 through 2011) + ((( ¥1,000 million *$.01312401) *.07) * 33/365 for
2012)

## CLAIM FOR RELIEF

### Recognition of the Judgment

17. Firebird incorporates the above paragraphs as if set forth fully herein.

18. The Judgment is a "foreign country judgment" for money that is "final and conclusive and enforceable" under the laws of Japan.  Recognition Act, §15-387.

19. The Judgment was rendered under a system which provided an impartial tribunal and procedures consistent with due process of law. Recognition Act, §15-383.

20. The Judgment is enforceable in the District of Columbia pursuant to the Recognition Act, §§15-381 to 388.

21. Nauru waived sovereign immunity and submitted to the jurisdiction of the Japanese Court with respect to the subject matter involved under the Agreements.

22. Nauru was provided notice of the Japanese Litigation and defended the matter.

23. This Court should recognize the Judgment pursuant to the Uniform Foreign Money Judgment Act of the District of Columbia and as a matter of comity under federal law.

WHEREFORE, Firebird requests judgment against Nauru as follows:

a.   Recognizing and enforcing the Judgment of $37,427,658.29 of principal and interest through February 2, 2012, plus costs in this action.

b.   Awarding such other relief as is deemed appropriate by the Court.

**MARKS & SOKOLOV, LLC**

BY:

Bruce S. Marks, Esq.  Bar. Id. CO0034
Marks & Sokolov, LLC
1835 Market Street 28th Floor
Philadelphia, Pennsylvania 19103
(215) 569-8901

Counsel for Plaintiff

**Dated: February 2, 2012**

# EXHIBIT A

平成 21 年（ワ）第 14156 号　社債償還等返還請求事件
原告　ファイヤーバード　グローバル　マスター　ファンド　セカンド　リミテッド
被告　ナウル共和国

<div align="center">判決確定証明申請書</div>



15 日

# APOSTILLE

<div align="center">(Convention de La Haye du 5 octobre 1961)</div>

也

被告

ます。

1. Country:  **JAPAN**

   This public document

2. has been signed by                  Naoya ITO

3. acting in the capacity of          Court Clerk,
                                       The Fourth Civil Division
                                       of the Tokyo District Court

4. bears the seal/stamp of

以上

<div align="center">Certified</div>

5. at **Tokyo**                         6. JAN. 2 5. 2012

7. by **the Ministry of Foreign Affairs**

8. No. 001196

9. Seal/stamp:                          10.  Signature:



                                       Kazutoyo OYABE
                                       For the Minister for Foreign Affairs

平成 21 年（ワ）第 14156 号　社債償還等返還請求事件
原告　ファイヤーバード　グローバル　マスター　ファンド　セカンド　リミテッド
被告　ナウル共和国

<div align="center">

判決確定証明申請書 

</div>



<div align="right">

平成 23 年 11 月 15 日

</div>

東京地方裁判所民事第４部　御中

<div align="right">

原告訴訟代理人弁護士　　田　子　真　也

</div>

　御庁係属の頭書事件につき、平成２３年１０月２８日に言い渡された判決が、被告

に対し、平成２３年 _11_ 月 _15_ 日に確定したことを証明いただきたく申請致します。

<div align="right">

以上

</div>

<div align="center">

前記証明する。
平成 23 年 11 月 17 日
東京地方裁判所民事第 4 部
裁判所書記官　伊　藤　直　也 

</div>

平成２３年１０月２８日判決言渡　同日原本領収　裁判所書記官

平成２１年㈦第１４１５６号　社債償還請求事件

口頭弁論終結日　平成２３年８月２６日

<div align="center">判　　　　　決</div>

ケイマン諸島　グランド　ケイマン　ＫＹ１－１１０３

ジョージ　タウン　私書箱８４７　ワンキャピタル　プレイス

トライデント　トラスト　カンパニー（ケイマン）　リミテッド　気付

　　　原　　　告

　　　　　ファイヤーバード　グローバル　マスター　ファンド　セカンド　リミテッド

　　　同代表者代表取締役　　　　　　　ハーベイ　　ソウイキン

　　　同訴訟代理人弁護士　　　　　　田　　子　　真　　也

　　　同　　　　　　　　　　　　　　中　　山　　靖　　彦

　　　同　　　　　　　　　　　　　　臼　　井　　幸　　治

　　　同　　　　　　　　　　　　　　御　　厨　　景　　子

中央太平洋ナウル島ナウル共和国ヤーレン区政府事務所

　　　被　　　　　告　　　　　ナ　ウ　ル　共　和　国

　　　同 代 表 者 大 統 領　　　マーカス・スティーブン

　　　同訴訟代理人弁護士　　　　　高　　取　　芳　　宏

　　　同　　　　　　　　　　　　　矢　　倉　　信　　介

　　　同　　　　　　　　　　　　　一　　色　　和　　郎

<div align="center">主　　　　　文</div>

１　被告は，原告に対し，１３億円並びにうち３億円に対する平成７年６月

　　１日から支払済みまで年６．５％の割合による金員及びうち１０億円に対

　　する平成６年７月２８日から支払済みまで年７％の割合による金員を支払

　　え。

２　原告のその余の請求を棄却する。

<div align="center">－ 1 －</div>

　　　3　訴訟費用は，これを５分し，その４を原告の負担とし，その余は被告の

　　　負担とする。

<div align="center">事 実 及 び 理 由</div>

第１　請求

　　１　被告は，原告に対し，６５億円並びにうち２１億円に対する平成７年６月１

　　　日から支払済みまで年６．５％の割合による金員及びうち４４億円に対する平

　　　成６年７月２８日から支払済みまで年７％の割合による金員を支払え。

　　２　訴訟費用は被告の負担とする。

　　３　第１項につき仮執行宣言

第２　事案の概要

　　　本件は，原告が，被告の保証の下にナウル共和国金融公社（以下「公社」と

　　いう。）が発行した円貨債券を取得したと主張して，被告に対し，保証契約に

　　基づき，①元金６５億円，②元金のうち２１億円に対するその債券の最終償還

　　日の翌日である平成７年６月１日から支払済みまで約定利率年６．５％の割合

　　による遅延損害金，③元金のうち４４億円に対するその債券の変更前の償還日

　　の翌日である平成６年７月２８日から変更後の償還日まで約定利率年７％の割

　　合による利息及び変更後の償還日の翌日から支払済みまで約定利率年７％の割

　　合による遅延損害金の支払を求めている事案である。

　　１　前提事実等（括弧内に証拠等を記載した事実以外は当事者間に争いがないか，

　　　当裁判所に顕著である。）

　　(1)　原告は，ケイマン法の下で設立された限定責任有限会社である。

　　　　被告は，パプアニューギニアの東約２１５０キロメートルに位置する外国

　　　国家である。公社は，１９７２年ナウル共和国金融公社法（以下「金融公社

　　　法」という。）に基づいて設立されたナウル共和国法人である。

　　(2)　公社は，１９８８年（昭和６３年）５月３１日，以下の内容で，無記名式

　　　の，ナウル共和国保証Ｂ号ナウル金融公社円貨債券（１９８８）（以下「本

<div align="center">- 2 -</div>

件Ｂ号債」という。）を発行した。

 ア 元本   ４０億円

 イ 利率   年６．５％

 ウ 償還日  １９９２年（平成４年）５月３１日 ４億円

        １９９３年（平成５年）５月３１日 ４億円

        １９９４年（平成６年）５月３１日 ４億円

        １９９５年（平成７年）５月３１日 ２８億円

 エ 遅延損害金 年６．５％

(3) 公社は，１９８９年（平成元年）７月２７日，以下の内容で，無記名式の，

ナウル共和国保証Ｃ号ナウル金融公社円貨債券（１９８９）（以下「本件Ｃ

号債」という。）を発行した。

 ア 元本   ５０億円

 イ 利率   年７％

 ウ 償還日  １９９４年（平成６年）７月２７日 ５０億円

       ただし，１９９４年（平成６年）８月１２日に，公社，

       被告及び本件Ｃ号債の債権者全員との間で，償還日が以下

       のとおりに変更された（甲４，弁論の全趣旨）。

       １９９４年（平成６年）８月２２日  ５億円

       １９９４年（平成６年）１２月２０日 ５億円

       １９９５年（平成７年）４月２７日  ４０億円

 エ 遅延損害金 年７％

(4) 原告は，以下の社債券を保有し，その旨を社債登録簿に登録している。

 ア 本件Ｂ号債

  (ｱ) 券面種類 １０００万円券

  (ｲ) 枚数   ２１０枚

  (ｳ) 債券番号 １ないし３０，４１ないし５０，１０１ないし１２０，１

                    ３１ないし１７０，１８１ないし２１０，２４１ないし２

                    ６０，２９１ないし３００，３１１ないし３２０，３３１

                    ないし３５０，３６１ないし３７０，３８１ないし３９０

  イ　本件Ｃ号債

      ㈦　券面種類　１００万円券

      ㈠　枚数　　　４４００枚

      ㈢　債券番号　１０１ないし４１００，４２５１ないし４６５０

⑸　公社は，本件Ｂ号債につき，４億円の償還日である１９９４年（平成６年）

　５月３１日及び２８億円の償還日である１９９５年（平成７年）５月３１日

　が到来したにもかかわらず，償還を行わなかった。

　　また，公社は，本件Ｃ号債についても，償還日が到来したにもかかわらず，

　償還を行わなかった。

⑹　本件Ｂ号債及び本件Ｃ号債の従前の保有者は，被告に対し次のとおり保証

　債務の履行を求める訴訟を提起していた。

　ア　クレッシュ・アンド・カンパニー・リミテッド（以下「クレッシュ」と

　　いう。）は，平成７年６月１日，本件Ｃ号債のうち債券番号１５０１ない

　　し２５００（以下，原告が保有する本件Ｂ号債及び本件Ｃ号債については，

　　債券番号により「本件Ｃ号債１５０１」などと特定する。）を保有してい

　　ると主張して，公社に対して償還を求めるとともに，被告に対して保証契

　　約に基づく保証債務の履行を求める訴えを提起した（東京地方裁判所平成

　　７年㈦第１０５７４号円建債償還等請求事件）。東京高等裁判所は，平成

　　１４年３月２９日，上記事件の控訴審（同裁判所平成１３年㈹第８９４号

　　事件）の判決を言い渡した。同判決は，公社に対する請求を認容したもの

　　の，被告に対する訴えについては，外国国家として我が国の民事裁判権か

　　らの免除（以下「主権免除」という。）を認めて不適法であると判断して

　　これを却下し，同判決は確定した（以下，当該訴訟を「平成７年訴訟」と

いう。）（乙１，乙２）。

イ　クレッシュは，平成１１年５月２８日，本件Ｂ号債１１１ないし１２０
を保有していると主張して，公社に対して償還を求めるとともに，被告に
対して保証契約に基づく保証債務の履行を求める訴えを提起した（東京地
方裁判所平成１１年(ワ)第１１７０７号円建債償還等請求事件），東京高等
裁判所は，平成１４年６月２６日，同事件の控訴審（同裁判所平成１３年
(ネ)第３４６５号事件）の判決を言い渡した。同判決も，公社に対する請求
を認容したものの，被告に対する訴えについては，主権免除を認めて不適
法であると判断してこれを却下し，同判決は確定した（以下，当該訴訟を
「平成１１年訴訟」という。）（乙３，乙４）。

ウ　クレッシュは，平成１２年５月３０日，本件Ｂ号債１０１ないし１１０
及び１３１ないし１４０を保有していると主張して，公社に対して償還を
求めるとともに，被告に対して保証契約に基づく保証債務の履行を求める
訴えを提起した（東京地方裁判所平成１２年(ワ)第１０７９９号保証債務等
請求事件）。東京地方裁判所は，いずれの請求もこれを認容する判決を言
い渡し，同判決は，平成１３年７月２４日の経過により確定した。その後，
公社と被告は，同判決について，再審を請求したものの（東京地方裁判所
平成１３年(カ)第３９号），同請求は棄却され，これに対する抗告（東京高
等裁判所平成１５年(ラ)第１５００号）も棄却された（以下，上記訴訟，再
審及び抗告を併せて「平成１２年訴訟」という。）（甲５，甲６，乙５）。

エ　以上のとおりの経過から，原告が保有している本件Ｂ号債及び本件Ｃ号
債は，前件訴訟の確定判決の有無により，次の三つに分類することができ
る。

(ア)　第１分類社債

平成１２年訴訟の対象であった本件Ｂ号債１０１ないし１１０及び１
３１ないし１４０については，請求認容の確定判決がある。

　　　㈠　第2分類社債

　　　　　平成7年訴訟及び平成11年訴訟の対象であった本件B号債111な

　　　　いし120及び本件C号債1501ないし2500は，主権免除により

　　　　訴え却下の判断をした確定判決がある。

　　　㈢　第3分類社債

　　　　　原告が保有するその余のナウル金融公社債券については，先行する確

　　　　定判決が存在しない。

　(7)　主権免除の範囲については，大審院昭和3年12月28日決定・民集7巻

　　　12号1128頁が，絶対免除主義（主権国家である外国国家は，我が国に

　　　所在する不動産に関する訴訟など特別の理由がある場合を除き，原則として

　　　我が国の民事裁判権に服することを免除され，外国国家が自ら進んで我が国

　　　の民事裁判権に服する場合に限って例外が認められるとする解釈）を採用し

　　　ており，平成7年訴訟及び平成11年訴訟は，これに従ったものである。

　　　　最高裁判所は，平成7年訴訟及び平成11年訴訟の口頭弁論終結後である

　　　平成18年7月21日，上記昭和3年大審院決定を変更し，主権免除の範囲

　　　について，制限免除主義，すなわち，外国国家は，主権的行為以外の私法的

　　　ないし業務管理的な行為については，我が国による民事裁判権の行使が当該

　　　外国国家の主権を侵害するおそれがあるなどの特段の事情がない限り，我が

　　　国の民事裁判権に服することを免除されないとする解釈を採用した（最高裁

　　　平成15年㈷第1231号同18年7月21日第二小法廷判決・民集60巻

　　　6号2542頁参照。以下「平成18年判決」という。）。

　(8)　原告は，平成21年4月28日，本件訴訟を提起した。原告は，上記各訴

　　　訟の判決確定後に本件B号債及び本件C号債を取得したものであり，上記各

　　　確定判決との関係では，口頭弁論終結後の承継人（民訴法115条1項3号）

　　　に当たる。

2　本件の争点

　第１分類社債に係る請求については，平成１２年訴訟の確定判決があり，重ねて訴訟を提起する訴えの利益の点が争点となる。

　第２分類社債に係る請求については，①平成７年訴訟及び平成１１年訴訟の確定判決があることから，訴え却下判決の既判力との抵触が問題となる上，②被告は，国際的管轄合意の成立を否定しており，我が国の国際裁判管轄の有無の点も問題であり，さらに，③消滅時効の成否が争点となる。

　第３分類社債に係る請求については，①我が国の国際裁判管轄の有無，②消滅時効の成否が争点となる。

　以上のとおりであり，本件の争点は，(1)第１分類社債に係る請求についての訴えの利益，(2)第２分類社債に係る請求についての訴え却下判決の既判力との抵触，(3)第２分類，第３分類社債に係る請求についての我が国の国際裁判管轄の有無，(4)第２分類，第３分類社債についての消滅時効の成否の点に整理できる。

3　争点についての当事者の主張

(1)　争点(1)（第１分類社債に係る請求についての訴えの利益）について

　　（被告の主張）

　　　原告の請求のうち，第１分類社債に係る合計２億円の償還債務を主債務とする保証債務の履行を求めるものには，平成１２年訴訟において請求を認容した確定判決があり，その口頭弁論終結後の承継人である原告は，同判決の既判力を受けるから，上記請求については，改めて訴えを提起して判決を得る利益に欠ける。

　　（原告の主張）

　　　時効中断の必要がある場合において訴えの利益が肯定されることは明らかであるから，上記請求について，訴えの利益が否定されることはない。

(2)　争点(2)（第２分類社債に係る請求についての訴え却下判決の既判力との抵触）について

（原告の主張）

ア　訴訟要件の存否は，当該訴訟の口頭弁論終結時を基準時として判断されるべきものであり，前訴において，口頭弁論終結時に訴訟要件を欠いているとして訴えが却下されたとしても，後訴において，口頭弁論終結時に訴訟要件を備えていると判断されるのであれば，後訴は当然に適法なものとなる。

　クレッシュによる，第２分類社債に基づく償還債務を主債務とする保証契約に基づく保証債務の履行を求めた訴えは，平成７年訴訟及び平成１１年訴訟において主権免除を理由に却下されたが，主権免除の範囲について大審院決定の解釈を変更した平成１８年判決の判断に照らせば，本件訴訟において，被告が我が国の民事裁判権に服することは明らかである。そうすると，本件訴訟の口頭弁論終結時点において訴訟要件に欠けることはないから，原告の訴えが却下される理由はない。

イ　被告は，本件訴えにつき，再審について定められた出訴期間の潜脱であると主張するが，何らかの訴訟要件を欠くことにより却下の判決がされているとしても，当該判決を再審の手続により争う必要はなく，新たに提起した訴訟の時点において訴訟要件が充足される限り，当該新たな訴訟は適法である。

（被告の主張）

ア　原告の請求のうち，第２分類社債に基づく合計１１億円の償還債務を主債務とする保証債務の履行を求めるものは，平成７年訴訟及び平成１１年訴訟において，主権免除を理由に訴えが却下されており，いずれの判決も確定している。これらの訴訟の口頭弁論後の承継人である原告には，上記判決の既判力が及ぶから，上記請求に係る訴えは，却下判決の既判力に抵触し，却下を免れない。

イ　原告は，平成１８年判決により，上記請求に係る訴えが適法になった旨

　　主張する。しかし，同判決による主権免除の範囲に関する解釈の変更は，

　　平成７年訴訟及び平成１１年訴訟において主権免除を認める判決の基礎と

　　なった事実関係の，口頭弁論終結後の変動に該当し得ない。

　　　原告は，平成１８年判決による判例変更の後に，再審の訴えを提起して

　　平成７年訴訟及び平成１１年訴訟の却下判決の既判力を否定することが可

　　能だったにもかかわらず，これを怠った。再審の訴えには，当事者が再審

　　事由を知った日から３０日の不変期間内に提起しなければならない（民事

　　訴訟法３４２条１項）として，厳格な出訴期間が規定されているのである

　　から，本件において，第２分類社債に係る請求について再び訴えの適法性

　　を争うことを許容することは，上記出訴期間の制限の潜脱を認めることに

　　なり，許されない。

(3)　争点(3)（第２分類，第３分類社債に係る請求についての我が国の国際裁判

　　管轄の有無）について

　（原告の主張）

　ア　被告は，本件Ｂ号債が発行された１９８８年（昭和６３年）５月３１日，

　　　同債券の買受人に対し，同債券の元利金（額面超過額を含む。）及び同債

　　　券の「債券の要項」に従って支払われるべきその他の金員の支払を，同債

　　　券の「保証の要項」に従って，無条件かつ取消不能の条件で連帯保証した。

　イ　被告は，本件Ｃ号債が発行された１９８９年（平成元年）７月２７日，

　　　本件Ｃ号債の元利金（額面超過額を含む。）及び本件Ｃ号債の「債券の要

　　　項」に従って支払われるべきその他の金員の支払を，本件Ｃ号債の「保証

　　　の要項」に従って，無条件かつ取消不能の条件で連帯保証した。

　ウ　本件Ｂ号債と本件Ｃ号債のいずれの保証の要項においても，以下の定め

　　　が存在する。

　　（ア）　７項（準拠法）

　　　　　被告による本保証の授権を除き，本保証（本要項を含む。）並びに本

保証に基づいて生じる本債券の債権者及び利札の所持人並びに銀行を含む関係各当事者の一切の権利義務は，すべて日本国の法律の定めるところに従うものとする。

(イ)　9項（裁判管轄）

　　被告に対する本保証（本要項を含む。）にかかるすべての訴訟は，東京地方裁判所及び日本法上同裁判所からの上訴を審理する権限を有する裁判所に提起することができるものとし，被告はかかるすべての訴訟につきその管轄に明示的かつ取消不能の形でここに服する。

エ　被告は，上記の保証の要項に従った保証契約の成立を否認するが，保証契約の締結を予定していたにもかかわらずこれをしないという異常な事態に至った理由，経緯，背景等を一切説明しない。

　　また，被告は，平成7年訴訟，平成11年訴訟，平成12年訴訟のいずれにおいても，保証契約の成立を争わず，また，国際裁判管轄の不存在を理由とする訴えの却下を求めてもいないのであるから，被告が，保証契約が成立していないという認識を持っていなかったことは明らかである。

　　したがって，被告による，保証要項に従った保証契約は成立しており，我が国の裁判所に本件の管轄を認めることができる。

（被告の主張）

　　本件B号債及び本件C号債の償還債務を主債務とする被告の保証には，金融公社法4条(6)項に基づく保証（法定保証）と，被告を当事者とする保証の要項に従った保証契約の二つを観念することができるところ，被告が法定保証に基づき保証債務を負担することを争うものではないが，保証契約は成立していない。原告が証拠として提出したいずれの書面にも，被告あるいは被告大統領の署名がないのであって，これらの証拠からは保証契約が締結された事実を認めることができない。

　　保証契約が存在しない以上，本件B号債及び本件C号債に関する保証の要

項に規定された，東京地方裁判所を管轄裁判所とする旨の合意も存在しない
のであるから，原告の訴えについて，我が国の裁判所に裁判管轄を認めるこ
とができない。

(4)　争点(4)（第２分類，第３分類社債についての消滅時効の成否）について

　ア　第２分類社債について

　　（被告の主張）

　　(ア)　民法所定の消滅時効期間は１０年であり，債券買受契約証書（甲１，
　　　　甲３）にも，本件Ｂ号債及び本件Ｃ号債に基づく償還請求権の消滅時効
　　　　期間を１０年とする旨規定されているところ，上記償還請求権の消滅時
　　　　効の起算点は，約定の償還日（前提事実等(2)ウ及び(3)ウ約定の償還日）
　　　　であるから，すべての償還債務につき，平成１７年５月３０日の経過を
　　　　もって，１０年の消滅時効期間が満了している。

　　(イ)　被告は，平成２２年９月６日の本件口頭弁論期日において，保証人と
　　　　して，主債務である第２分類社債に基づく償還債務につき，消滅時効を
　　　　援用した。

　　(ウ)　第２分類社債は，商人であるケミカル信託銀行株式会社が発行時に買
　　　　い受けたものであるから，主債務の消滅時効期間が１０年であったとし
　　　　ても，被告との間で成立した保証契約に基づく債務の消滅時効期間につ
　　　　いては，商法５２２条が適用され，５年となる。

　　(エ)　被告は，平成２２年９月６日の本件口頭弁論期日において，ケミカル
　　　　信託銀行株式会社との間の保証契約に基づく保証債務につき，消滅時効
　　　　を援用した。

　　（原告の主張）

　　(ア)　平成７年訴訟及び平成１１年訴訟において，公社に対する請求を認容
　　　　する判決が確定したことにより，公社に対する社債償還請求権の消滅時
　　　　効期間は，判決確定の時から１０年となった。

　　　　これを受けて，被告に対する保証債務履行請求権も，判決確定のとき
　　　から１０年の消滅時効期間に服することとなった。

　　　　平成７年訴訟及び平成１１年訴訟の判決のうち，最も早く確定したと
　　　考えられるのは平成７年訴訟の高等裁判所における判決であり，この判
　　　決が言い渡されたのは，平成１４年３月２９日であるところ，本件訴訟
　　　は平成２１年４月２８日に提起されたのであるから，第２分類社債に基
　　　づく償還請求権及びこれを主債務とする保証契約に基づく保証債務履行
　　　請求権の消滅時効が，期間満了に先立って中断した。

　　(イ)　第２分類社債の引受人が商人であったとしても，保証債務の附従性か
　　　ら，主債務である償還債務と保証契約に基づく保証債務の消滅時効期間
　　　は，当然に一致するものであるし，債券の買受人ごとに保証債務履行請
　　　求権の消滅時効期間が異なるとすることは，債券の流通性にかんがみて
　　　明らかに不適切であるから，このような償還債務の保証債務について，
　　　商法５２２条が適用される余地はない。

　イ　第３分類社債について

　　　　被告は，第３分類社債に基づく償還請求権とこれを主債務とする保証契
　　　約に基づく保証債務履行請求権についても，いずれも，遅くとも平成１７
　　　年５月３０日の経過をもって消滅時効期間が満了していると主張し，平成
　　　２２年９月６日の本件口頭弁論期日において，主債務及び保証債務の消滅
　　　時効を援用した。

第３　争点に対する判断

　１　争点(1)（第１分類社債に係る請求についての訴えの利益）について

　　　　被告は，第１分類社債に基づく合計２億円の償還債務を主債務とする保証契
　　　約に基づく保証債務の履行請求については，平成１２年判決において，請求を
　　　認容する判決が確定している以上，クレッシュの承継人である原告の上記請求
　　　は，訴えの利益を欠くと主張する。

　しかし，時効中断の必要があるときは重ねて給付の訴えを提起することがで
きると解すべきところ（大審院昭和6年(オ)第890号同年11月24日第五民
事部判決・大審院民事判例集10巻12号1096頁参照），本件訴えが提起
された平成21年4月28日では，平成12年訴訟の判決が確定した平成13
年7月25日から，約7年9か月が経過しているにすぎなかったが，本件口頭
弁論終結日では上記判決確定日から既に10年が経過しているのであるから，
原告には，本件訴訟により時効中断の効果を得る必要があると認められる。

　したがって，上記請求部分には訴えの利益が認められ，被告の上記主張は理
由がない。

2　争点(2)（第2分類社債に係る請求についての訴え却下判決の既判力との抵触）
について

　ア　クレッシュが提起した平成7年訴訟及び平成11年訴訟のうち，被告に対
して，第2分類社債に基づく償還債務を主債務とする保証契約に基づく保証
債務の履行を求める請求については，被告の主権免除を理由に，訴えを却下
する判決が言い渡され，いずれの判決も確定している（前提事実(6)ア，イ）。

　　　本件訴えのうち，第2分類社債に基づく償還債務を主債務とする保証債務
の履行を求める部分の訴訟物は，平成7年訴訟及び平成11年訴訟における
訴訟物と同一である（乙1ないし乙4）から，上記訴訟の口頭弁論終結後の
承継人である原告は，平成7年訴訟及び平成11年訴訟における確定判決の
既判力の効力を受ける（民訴法115条1項3号）。

　イ　そこで，本件において，平成7年訴訟及び平成11年訴訟の各口頭弁論終
結後に生じた事由により，上記請求部分の訴えの適法性が認められるかが問
題となる。原告は，平成18年判決の言渡しにより上記請求部分の訴えが適
法とされるに至った事情を主張するところ，被告は，平成18年判決による
解釈の変更が，平成7年訴訟及び平成11年訴訟の判決の基礎となった事実
関係の変動には当たらないと主張している。

　　平成１８年判決は，同判決が制限免除主義を採用するに至った事情として，
①主権免除の範囲に関しては，かつてはいわゆる絶対免除主義が広く受け入
れられ，この考え方を内容とする国際慣習法が存在していたと解されるが，
国家の活動範囲の拡大等に伴い，いわゆる制限免除主義の考え方が徐々に広
がり，現在では多くの国において，この考え方に基づいて，外国国家に対す
る民事裁判権免除の範囲が制限がされるようになってきていること，②平成
１６年１２月２日に国際連合第５９回総会において採択された「国家及び国
家財産の裁判権免除に関する国際連合条約」も，制限免除主義を採用してい
ることを判示している。そうすると，平成７年訴訟及び平成１１年訴訟の判
決確定後，上記①，②の事情，すなわち，国家の活動範囲の拡大等に伴って，
多くの国において，外国国家に対する民事裁判権免除の範囲を制限する考え
方が広まってきていること，平成１６年１２月２日の上記国際連合総会での
条約の採択がされたこと等の事実関係の変動があり，これを前提として，最
高裁判所は，平成１８年判決において，主権免除に関する解釈の変更を行っ
たものということができるのであって，このような事実関係の変動を受けた
平成１８年判決の言渡しは，平成７年訴訟及び平成１１年訴訟の判決との関
係では，口頭弁論終結後に生じた事由に当たるというべきである。これと異
なる見解に立った被告の上記主張は理由がない。

ウ　以上を前提として，制限免除主義に従い，第２分類社債に係る請求につい
て主権免除が認められるかどうかを判断すると，本件における被告による本
件Ｂ号債及び本件Ｃ号債の保証は，私人の経済活動において行われる保証と
何ら異なるものでないから，法定保証に基づくものか，保証の要項に従った
保証契約に基づくものであるかにかかわらず，外国国家による私法的な行為
に該当することは明らかである。そして，我が国による民事裁判権の行使が
被告の主権を侵害するおそれがあるなどの特段の事情の存在を認めることも
できない。

したがって，上記請求について，被告に主権免除を認めることはできず，上記請求に係る訴えは適法である。

なお，被告は，上記請求の適法性を争う方法としては，再審の手続によらなければならないと主張するが，以上によれば，原告は，平成７年訴訟及び平成１１年訴訟の口頭弁論終結後に生じた事由を主張しているから，原告の主張は，上記各訴訟の確定判決の既判力と抵触するものではなく，再審を経なければ上記請求の適法性を主張できないというものでもない。

3  争点(3)（第２分類，第３分類社債に係る請求についての我が国の国際裁判管轄の有無）について

(1)  本件Ｂ号債の発行と国際裁判管轄の合意について

ア  前提事実，証拠（甲１）及び弁論の全趣旨によれば，本件Ｂ号債発行時の買受人であったケミカル信託銀行株式会社は，同債券の発行された１９８８年（昭和６３年）５月３１日に先立つ同月２３日に，公社との間で，債券買受契約証書（甲１）を締結したことが認められる。そして，本件Ｂ号債は，上記債券買受契約証書において予定されていたとおり，同月３１日に発行され，公社はこれに基づく債務を負った（争いがない）。

イ  上記債券買受契約証書（甲１）には，次の(ア)ないし(カ)の条項があり，その別紙には，次の(キ)ないし(コ)の条項がある。

(ア)  １条１項第１文

公社は，大要，本契約に添付した別紙１，３及び４記載の様式の債券の要項，債券及び利札による被告保証Ｂ号円貨債券（１９８８）元本総額４０億円の発行を正当に承認し，かつ，その発行を予定している。

(イ)  １条２項

本債券の元利金（額面超過金を含む。）及び本債券に関し支払われるべきその他の金員の支払は，被告により，改正済の金融公社法第４条第(6)項に基づいて保証され，またかかる支払は大要本契約証書に添付の別

紙2に記載の保証の要項に従い，被告により追加的に保証される。かか
る保証を以下「保証」という。

㈦　2条2項第4段落

　　払込期日において，保証並びに公社による本契約の署名及び交付，本
契約に基づく本債券の発行及び売渡し並びにそれらに基づく義務の履行
に関し必要な被告政府当局，政府機関，その下位機関又は行政区画のす
べての承認，認可，同意及び許可が適法に取得され，かつ，完全な効力
を有している。

㈢　4条1項第2文

　　本買受人が買い受ける本債券の発行価額の総額が本契約第4条第2項
の規定に従い公社に対し支払われることを条件として，公社は1988
年（昭和63年）5月31日（以下「払込期日」という。）に本債券を
発行するものとする。

㈣　4条2項第1文

　　払込期日の午後2時（日本時間）までに，本買受人は公社に対し本買
受人が買受けた本債券の発行価額の総額を支払うものとする。

㈤　5条1項

　　本買受人が払込期日に買受ける元本額の本債券を買い受け，かつ，そ
の代金の支払をなす義務は，本契約第2条の公社による表明・保証が正
確であり，かつ，それらが遵守されていること及び払込期日以前におい
て下記の条件［略］が成就することを停止条件とする。

㈥　別紙1「債券の要項」第5条

　　本債券の元利金（額面超過金を含む。）及び本債券に関し支払われる
べきその他のすべての金員の支払は，被告により，改正済の金融公社法
第4条第⑹項に基づいて保証され，また，かかる支払は，保証の要項に
従い，被告により，追加的に保証される。

　(ク)　別紙２「保証の要項」１条

　　　　本保証の要項は，公社が発行する本件Ｂ号債に対する被告による保証
　　　にこれを適用する。

　　　　被告は，本件Ｂ号債の元利金及び本債券の要項に従って支払われるべ
　　　きその他の金員の満期またはその他の支払期日における公社による確実
　　　な支払を本債券の債権者に対し，無条件かつ取消不能の形で保証する。

　(ケ)　別紙２「保証の要項」７条

　　　　被告による本保証の授権を除き，本保証（本要項を含む。）並びに本
　　　保証に基づいて生じる本債券の債権者及び利札の所持人並びに銀行を含
　　　む関係各当事者の一切の権利義務は，すべて日本国の法律の定めるとこ
　　　ろに従うものとする。

　(コ)　別紙２「保証の要項」９条第１文

　　　　被告に対する本保証（本要項を含む。）にかかるすべての訴訟は，東
　　　京地方裁判所及び日本法上同裁判所からの上訴を審理する権限を有する
　　　裁判所に提起することができるものとし，被告はかかるすべての訴訟に
　　　つきその管轄に明示的かつ取消不能の形でここに服する。

ウ　上記債券買受契約証書（甲１）の別紙３は，被告がする保証に係る保証
　証書の書式である。その本文には，被告は，法律及び１９８８年（昭和６
　３年）５月１８日付被告内閣決定に基づき，保証の要項に従い，本債券の
　元金（額面超過金を含む。）及び利息並びに債券の要項に従って支払われ
　るべきその他の金員の期日における確実な支払を無条件かつ取消不能の形
　で保証するとの記載があり，１９８８年５月３１日の日付の後に，被告大
　統領の署名欄が設けられている（甲１）。

　　　もっとも，本件訴訟においては，上記別紙３の書式に従った被告大統領
　の署名のある保証証書は提出されていない。

エ　被告は，保証契約の成立を争い，上記要項に規定された国際裁判管轄の

合意の成立を否認する。

　　しかしながら，上記アによれば，公社が本件Ｂ号債に関する債券買受契約を締結した当時，本件Ｂ号債に関し，被告による別紙２記載の保証要項に従った追加的な保証が予定されており（１条２項），この追加的な保証に関する被告内閣の決定等の必要な手続は既に完了していた（２条２項第４段落）ことがその契約書の記載からうかがわれる上，公社が，上記契約書において追加的な保証に必要となる被告の承認等を得ている旨を表明保証しており（２条２項第４段落），本件Ｂ号債の効力は，この表明保証が正確であり，かつ，それらが遵守されていること等を停止条件として生じるとされているところ（４条１項第２文），本件Ｂ号債は同証書において予定されていた発行期日において発行されており，本件全証拠によっても，その発行に支障があったことを認めることはできない。そして，これに加えて，本件訴訟に先行する平成１１年訴訟，平成１２年訴訟においては，被告の追加的な保証，ひいては，国際裁判管轄の合意の成否が争われていないこと（甲５，甲６，乙３，乙４）をも考慮すると，被告大統領の署名のある保証証書が現に提出されていないことを斟酌しても，被告は，本件Ｂ号債の発行に際し，上記別紙３の書式により，上記別紙２の保証の要項に従った追加的な保証を行ったことが推認され，本件全証拠によっても，これを覆すに足りない。

　　そうすると，東京地方裁判所は，上記別紙２「保証の要項」９条第１文により，本件Ｂ号債の保証に係る訴訟について，管轄権を有すると認められる。

(2)　本件Ｃ号債の発行と国際裁判管轄の合意について

　ア　本件Ｃ号債については，本件Ｃ号債について債券買受契約を締結する旨記載された１９８９年（平成元年）７月２１日付けの債券買受契約証書（甲３）が存在する。この甲３には，買受人及び公社の署名がないが，被告が

甲３の成立及び債券買受契約の成立を争っていないこと，後記イのとおり
若干の変更があるほか，甲３の記載内容は甲１と同様であり，本件Ｂ号債
とほぼ同一の内容で本件Ｃ号債の発行が企画されたと認められること等に
照らし，上記変更のほかは本件Ｂ号債の債権買受契約証書（別紙１ないし
３を含む）と同一の条項により，債券買受契約が成立したことを認めるこ
とができる。

　　本件Ｃ号債は，上記債券買受契約証書において記載された発行期日のと
おり，１９８９年（平成元年）７月２７日に発行され，公社はこれに基づ
く債務を負った（争いがない）。

イ　上記債券買受契約証書（甲３）には，(ｱ)１条１項第１文のうち，「被告
保証Ｂ号円貨債券（１９８８）元本総額４０億円」を「被告保証Ｃ号円貨
債券（１９８９）元本総額５０億円」に改めること，(ｲ)４条１項第２文の
うち「１９８８年（昭和６３年）５月３１日」を「１９８９年（平成元年）
７月２７日」に改めること，(ｳ)別紙３のうち，「法律及び１９８８年（昭
和６３年）５月１８日付被告内閣決定」を「法及び１９８９年（平成元年）
５月５日及び７月１１日付被告内閣決定」に改めることのほかは，上記本
件Ｂ号債に関する債券買受契約証書と同じ内容が記載されている。

ウ　本件Ｃ号債に関しても，被告は，追加保証の成立，ひいては，国際裁判
管轄の合意の成立を否認する。

　　しかしながら，本件Ｃ号債についても，上記アのとおり，債券買受契約
の成立を認めることができ，本件Ｂ号債と同様の条項のある債券買受契約
証書が存在していることに加え，被告は，本件Ｃ号債に基づく償還債務を
主債務とする保証債務の履行を求められた平成７年訴訟において，保証契
約の存在を争っておらず，争点となった主権免除の主張に関しても，保証
契約が成立していることを前提とした主張をしている（乙２）ことに照ら
せば，被告が，本件Ｃ号債の償還債務についても，上記証書において予定

- 19 -

されたとおり，同証書の別紙２「保証の要項」に従った追加的な保証をし
たと推認することができ，本件全証拠によっても，これを覆すに足りる証
拠はない。

そうすると，東京地方裁判所は，上記別紙２「保証の要項」９条第１文
により，本件Ｃ号債の保証に係る訴訟についても，管轄権を有すると認め
られる。

4　争点(4)（第２分類，第３分類社債についての消滅時効の成否）について

(1)　まず，第３分類社債に係る請求について判断する。

本件Ｂ号債及び本件Ｃ号債に基づく権利義務及び被告による追加的保証の
準拠法は，日本法である（甲１，甲３）。この点は，特に当事者が争うとこ
ろではない。

前提事実によれば，本件Ｂ号債の償還日は，一番遅いもので１９９５年（平
成７年）５月３１日であり，本件Ｃ号債の償還日は，一番遅いもので１９９
５年（平成７年）４月２７日であるから，いずれの債券も，本件訴訟が提起
された平成２１年４月２８日より前の時点で，償還日から起算して１０年を
経過したと認められる。

被告が，平成２２年９月６日の本件第３回口頭弁論において，第３分類社
債に基づく償還請求権及びこれを主債務とする保証債務履行請求権について
消滅時効を援用したことは，当裁判所に顕著である。

第３分類社債に係る請求については，消滅時効の中断等の主張はない。

以上によれば，第３分類社債に基づく５２億円の償還請求権については，
消滅時効が完成したと認めることができ，被告に対する保証債務履行請求権
の消滅時効についても完成したと認めることができるから，被告の消滅時効
の抗弁には理由がある。

(2)　第２分類社債に係る請求について判断する。

ア　被告は，まず，第３分類社債に係る請求と同様に，債券の償還日を起算

点とし，すべての償還債務につき，平成１７年５月３０日の経過により１

０年の消滅時効期間が満了していると主張し，主債務である第２分類社債

に基づく償還債務につき，消滅時効を援用している。

　しかしながら，平成７年訴訟及び平成１１年訴訟において，第２分類社

債に基づく公社に対する償還請求を認容する判決が確定しているところ，

確定判決によって確定した権利の時効期間は１０年となり（民法１７４条

の２），この時効の起算点は，判決確定の日となる。

　そして，平成７年訴訟における控訴審判決の言渡期日が平成１４年３月

２９日であり，平成１１年訴訟における控訴審判決の言渡期日が平成１４

年６月２６日であること（前提事実(6)ア，イ）からすると，これらの判決

が確定した日から本件訴えが提起された平成２１年４月２８日までの間に

１０年が経過していないから，主債務について消滅時効の完成をいう被告

の上記主張は，理由がない。

イ　被告は，第２分類社債が，商人であるケミカル信託銀行株式会社により

引き受けられた社債であることから，主債務の消滅時効が１０年であった

としても，上記会社と被告共和国の間で成立した保証については，商法５

２２条が適用され，その消滅時効は５年であると主張し，保証債務につい

ての時効を援用する。

　しかしながら，上記のとおり，平成７年訴訟及び平成１１年訴訟におい

て，第２分類社債に基づく公社に対する償還請求を認容する判決が確定し

ているところ，確定判決によって確定した権利の時効期間は１０年となり

（民法１７４条の２），同条の適用によって主たる債務者の債務の時効期

間が１０年となったときは，保証人の債務の消滅時効期間も同じく１０年

となる（最高裁昭和４３年(オ)第５１９号同年１０月１７日第一小法廷判

決・裁判集民事９２号６０１頁）。そうすると，第２分類社債に係る公社

の債務を主債務とする被告の保証債務の消滅時効期間は，主たる債務と同

　　　様に１０年となっているのであって，これが５年であるとする被告の主張
　　　も理由がない。
　　ウ　以上によれば，被告の保証債務について期間５年の消滅時効をいう被告
　　　の上記主張も，理由がない。
第４　結論
　　以上によれば，原告の請求は，①第１分類社債と第２分類社債の額面金額の
　合計である１３億円（本件Ｂ号債１０１ないし１２０及び１３１ないし１４０
　の額面金額がいずれも１０００万円，本件Ｃ号債１５０１ないし２５００の額
　面金額がいずれも１００万円。），②元金のうち本件Ｂ号債の額面金額の合計
　である３億円に対する平成７年６月１日から支払済みまで年６．５％の割合に
　よる遅延損害金，③元金のうち本件Ｃ号債の額面金額の合計である１０億円に
　対する平成６年７月２８日から支払済みまで年７％の割合による利息及び遅延
　損害金の支払を求める限度で理由があるからこれを認容し，その余は理由がな
　いのでこれを棄却することとして，主文のとおり判決する。なお，仮執行宣言
　は，事案に照らし相当でないから，これを付さない。


　　　東京地方裁判所民事第４部


　　　　　　　　裁判長裁判官　　　太　　田　　晃　　詳


　　　　　　　　裁判官　　　池　　田　　知　　子


　　　　　　　　裁判官　　　竹　　内　　幸　　伸

906761-01 東重



# APOSTILLE

(Convention de La Haye du  5  octobre 1961)

1. Country:  **JAPAN**

   This public document

2. has been signed by          Naoya ITO

3. acting in the capacity of    Court Clerk,
   The Fourth Civil Division
   of the Tokyo District Court

4. bears the seal/stamp of

Certified

5. at **Tokyo**                     6.  JAN. 2 5. 2012

7. by **the Ministry of Foreign Affairs**

8. No.001197

9. Seal/stamp:



10. Signature:

Kazutoyo OYABE
For the Minister for Foreign Affairs



東京 10-194906



これ は 正本 で あ る。

平成23年 10月 28日

東京地方裁判所民事第4部

裁判所書記官 伊 藤 直 也

# DECLARATION

I, Shinya Tago, do hereby solemnly and sincerely declare:

1. that I am well acquainted with the Japanese and English languages, and

2. that the attached document: Certificate of Judicial Decision

is a true and correct translation into the English language.

And I make this solemn declaration conscientiously believing the same to be true and correct.

Dated   this   31st. JAN  , 2012.

Signature:

Shinya Tago

Name: Shinya Tago



2009 (*Wa*) No. 14156 Case of Request for Bond Redemption

Plaintiff: Firebird Global Master Fund II, Ltd.

Defendants: Republic of Nauru

## Certificate of Judicial Decision

November 15, 2011

To the Tokyo District Court, Civil Affairs No. 4

Lawyer representing the Plaintiff          Shinya Tago

Regarding the above litigation pending at the Tokyo District Court, this is to request a certificate of the confirmation on November 15 2011 of the judgment of October 28 2011 made against the defendants.

I hereby certify the above.

November 17, 2011

Naoya Ito,

Clerk of the Court,

Tokyo District Court, Civil Affairs No. 4





1

平成 21 年（ワ）第 14156 号　社債償還等返還請求事件
原告　ファイヤーバード　グローバル　マスター　ファンド　セカンド　リミテッド
被告　ナウル共和国

<div align="center">判決確定証明申請書</div>

平成 23 年 11 月 15 日

東京地方裁判所民事第４部　御中

原告訴訟代理人弁護士　　田 子 真 也 

　御庁係属の頭書事件につき、平成２３年１０月２８日に言い渡された判決が、被告

に対し、平成２３年 11 月 15 日に確定したことを証明いただきたく申請致します。

以上

前記証明する。
平成 23 年 11 月 17 日
東京地方裁判所民事第 4 部
裁判所書記官 伊 藤 直 也 



# NOTARIAL   CERTIFICATE

This is to certify that Shinya Tago signed the attached document in my presence.

Dated this 31st day of January, 2012.

*Yukio Goto*

Yukio Goto

NOTARY

3-1, Marunouchi 3-chome,

Chiyoda-ku, Tokyo

ATTACHED TO

Tokyo Legal Affairs Bureau



平成２４年登簿第　0178　号

　田子真也は、当職の面前で、添付書面に自ら署名した。

　よって、これを認証する。

　平成２４年１月３１日、本職役場において

　東京都千代田区丸の内三丁目３番１号

　　東京法務局所属

　　　公証人　　五島　幸雄

# DECLARATION

I, Shinya Tago, do hereby solemnly and sincerely declare:

1. that I am well acquainted with the Japanese and English languages, and

2. that the attached document: Decision of the Court

is a true and correct translation into the English language.

And I make this solemn declaration conscientiously believing the same to be true and correct.

Dated   this   31st, JAN , 2012.

Signature:

Name: Shinya Tago

October 28, 2011 Reading of Decision

Receipt of the Written Decision on the same day

Court Clerk

*Heisei* 21, 2009 (*Wa*) No.14156, Case for Claim for Bond Redemption

Conclusion date of oral arguments, August 26, 2011

## Decision of the Court

C/O Trident Trust Company (Cayman) Ltd.

One Capital Place

PO Box 847, George Town, Grand Cayman KY1-1103

Cayman Islands

Plaintiff: Firebird Global Master Fund II Ltd.

Representative Director, Harvey Sawikin

Lawyer representing the Plaintiff: Shinya Tago

Ditto: Yasuhiko Nakayama

Ditto: Koji Usui

Ditto: Keiko Mikuriya

Central Pacific Island of Nauru, Republic of Nauru, Yaren District Government Office

Defendant: Republic of Nauru

President: Marcus Stephen

Lawyer representing the Defendant: Yoshihiro Takatori

Ditto: Shinsuke Yakura

Ditto: Kazuo Isshiki

## Verdict

1.  The Defendant shall pay to the Plaintiff the principal sum of 1,300 million yen and in
    addition to that amount the Defendant shall also pay to the Plaintiff interest on 300 million
    yen calculated at an annual rate of interest of 6.5% from June 1, 1995 until payment of that
    sum is made and also the Defendant shall pay to the Plaintiff interest on 1,000 million yen



calculated at an annual rate of interest of 7% from July 28, 1994 until payment of that sum
is made.

2. All other claims of the Plaintiff shall be summarily dismissed.

3. The Plaintiff shall bear 80% of the costs of this action, and the Defendant the remaining
20%.

## Findings of Fact and Reasons for Decision

Chapter 1. Claims

1. The Plaintiff claims against the Defendant the principal sum of 6,500 million yen and in
addition to that amount interest on 2,100 million yen calculated at an annual rate of interest
of 6.5% from June 1, 1995 until payment of that sum is made, and interest on 4,400 million
yen calculated at an annual rate of interest of 7% from July 28, 1994 until payment of that
sum is made.

2. The Plaintiff claims against the Defendant the costs of this action.

3. The Plaintiff claims a declaration of provisional execution against the Defendant in respect
of one (1) above.

Chapter 2. Outline

In this action, the Plaintiff asserts that it acquired Japanese yen bearer bond certificates issued by the
Republic of Nauru Finance Corporation (hereafter, "RONFIN") guaranteed by the Defendant and
accordingly has made a claim against the Defendant for:

1) Repayment of the principal in the amount of 6,500 million yen;

2) Penalty for delay of payment of 2,100 million yen of the principal calculated at an agreed
annual interest rate of 6.5% from the day following the final redemption date of the Bonds
being June 1, 1995 until payment is made;

3) Penalty for delay of payment of 4,400 million yen of the principal calculated at an agreed
annual interest rate of 7% from the day following the pre-amended redemption date of the
Bonds being July 28, 1994 until the amended redemption date, and at an agreed annual
interest rate of 7% from the day following the amended redemption date until payment is
made.



1.  Facts not in Dispute (Those facts not disputed by the parties or that are clear to this court
    excluding items in brackets contained within exhibits.)

    (1)  The Plaintiff is a limited liability company established under the laws of the Cayman
         Islands.

         The Defendant is sovereign foreign nation that is located approximately 2,150 km east
         of Papua New Guinea. RONFIN is a corporation lawfully established in the Republic of
         Nauru under the Republic of Nauru Finance Corporation Act 1972 (hereafter, the
         "Finance Corporation Act").

    (2)  RONFIN on May 31, 1988 in accordance with the conditions stated below issued B
         numbered bearer bond RONFIN Japanese yen certificates (1988), guaranteed by the
         Republic of Nauru (hereafter, "B Certificate Bonds").

         (i)   Principal: 4,000 million yen

         (ii)  Interest: Annual rate of 6.5%

         (iii) Redemption Dates: May 31, 1992, 400 million yen

                                May 31, 1993, 400 million yen

                                May 31, 1994, 400 million yen

                                May 31, 1995, 2,800 million yen

         (iv)  Penalty Interest for Payment Delay: Annual rate of 6.5%

    (3)  RONFIN on July 27, 1989 in accordance with the conditions stated below issued C
         numbered RONFIN bearer bond Japanese yen certificates (1989), guaranteed by the
         Republic of Nauru (hereafter, "C Certificate Bonds").

         (i)   Principal: 5,000 million yen

         (ii)  Interest: Annual rate of 7%

         (iii) Redemption Dates: July 27, 1994, 5,000 million yen

                                However, on August 12, 1994, based upon an agreement with
                                RONFIN, the Defendant and all other purchasers of the C
                                Certificate Bonds, the redemption dates were altered as stated
                                below. (Plaintiff's Exhibit 4, Brief)

                                August 22, 1994, 500 million yen

                                December 20, 1994, 500 million yen

                                April 27, 1995, 4,000 million yen

         (iv)  Annual interest rate for delay in payment: 7%

    (4)  The Plaintiff holds the bearer bond certificates stated below, and is registered as the
         holder of those bearer bond certificates in the Bonds register.

         (i)   B Certificate Bonds

               a)  Face Value Per Certificate: 10,000,000 yen

- 3 -

      b)  Number of Certificates: 210

      c)  Certificate Numbers: 1 to 30, 41 to 50, 101 to 120, 131 to 170, 181 to 210, 241 to 260, 291 to 300, 311 to 320, 331 to 350, 361 to 370, 381 to 390

(ii) C Certificate Bonds

      a)  Face Value Per Certificate: 1,000,000 yen

      b)  Number of Certificates: 4,400

      c)  Certificate Numbers: 101 to 4100, 4251 to 4650

(5) RONFIN despite the redemption dates in respect of B Certificate Bonds in the amount of 400 million yen with a redemption date of May 31, 1994, and B Certificate Bonds in the amount of 2,800 million yen with a redemption date of May 31, 1995 having been reached has not redeemed these bonds.

Further, RONFIN in respect of C Certificate Bonds despite the redemption date having been reached has not redeemed these bonds.

(6) The previous holder of the B and C Certificate Bonds filed an action against the Defendant for the performance of its guarantee obligations as stated below.

    (i) Klesch and Company Limited (hereafter, "Klesch") in an action dated June 1, 1995, from within the C Certificate Bonds the subject of this action, asserted it was the holder of bearer bond certificates serial numbers 1501 - 2500 (hereafter, in respect of the B Certificate Bonds and C Certificate Bonds held by the Plaintiff, these are identified by the bond certificate serial numbers eg; "C 1501"), and in addition to making a claim against RONFIN for redemption also made a claim against the Defendant for performance of its guarantee obligations arising under a guarantee agreement (Tokyo District Court, 1995 (*Wa*) No.10574, Case for Claim for Japanese Yen Bond Redemption). The Tokyo High Court heard the appeal of the above action (Tokyo High Court, 2001 (*Ne*) No.894) and on March 29, 2002 handed down its decision. In this decision while the court accepted the claims against RONFIN, as regards those against the Defendant it found that as the Defendant is a sovereign foreign nation the Defendant was immune from the jurisdiction of the Japanese civil courts (hereafter, "Sovereign Immunity") and accordingly ruled that the claims against the Defendant be summarily dismissed, thereby affirming the original decision. (hereafter, these actions collectively referred to as the "1995 Actions") (Defendant's Exhibits 1 and 2).

    (ii) Klesch in an action dated May 28, 1999, from within the B Certificate Bonds the subject of this action, asserted it was the holder of B 111-120, and in addition to making a claim against RONFIN for redemption also made a claim against the



Defendant for performance of its guarantee obligations arising under a guarantee agreement (Tokyo District Court, 1999 (*Wa*) No.11707, Case for Claim for Japanese Yen Bond Redemption). The Tokyo High Court heard the appeal of the above action (Tokyo High Court, 2001 (*Ne*) No.3465) and on June 26, 2002 handed down its decision. In this decision while the court accepted the claims against RONFIN, it summarily dismissed those against the Defendant based upon application of the principle of Sovereign Immunity thereby affirming the original decision. (hereafter, these actions collectively referred to as the "1999 Actions") (Defendant's Exhibits 3 and 4).

(iii) Klesch in an action dated May 30, 2000, from within the B Certificate Bonds the subject of this action, asserted it was the holder of B 101-110 and 131-146 and in addition to making a claim against RONFIN for redemption, also made a claim against the Defendant for performance of its guarantee obligations arising under a guarantee agreement (Tokyo District Court, 2000 (*Wa*) No.10799, Case for Claim for Guaranteed Debt Liability, etc.). The Tokyo District Court handed down a decision in which both of these claims were accepted and this decision was finalized on July 24, 2001. Subsequently RONFIN and the Defendant filed an application for a retrial of this decision (Tokyo District Court, 2001 (*Ka*) No.39). However the application and the defense (Tokyo High Court, 2003 (*Ra*) No.1500), upon which it was based were both summarily dismissed (hereafter, the above action, retrial application and defense are collectively referred to as the "2000 Actions") (Plaintiff's Exhibits 5 and 6, Defendant's Exhibit 5).

(iv) Based on the proceedings described above, the B and C Certificate Bonds held by the Plaintiff can be divided into the following three categories according to whether or not a final decision has been made in the prior actions.

    a) Type 1 Bonds

        In respect of B 101 - 110 and 131 - 140 the subject of the 2000 Actions a final decision upholding the claims has been made.

    b) Type 2 Bonds

        In respect of B 111 - 120 and C 1501 - 2500 the subject of the 1995 and 1999 Actions a final decision under which the claims were summarily dismissed based upon application of the principle of Sovereign Immunity has been made.

    c) Type 3 Bonds

        As regards the remaining RONFIN issued bearer bond certificates held by the Plaintiff, no final decision has been made.

(7) In the 1995 and 1999 Actions as regards the extent of Sovereign Immunity the courts applied the principle of absolute sovereign immunity as set forth in *Daishinin* (the highest court under the Meiji Constitution) Decision, December 28, 1928, Civil Code Precedents Vo. 7, No.12, P.1,128 (A foreign sovereign state subject to certain specific exceptions such as actions relating to real estate holdings in Japan is as a general rule immune from the civil jurisdiction of the Japanese courts provided that said sovereign foreign nation has not itself consented to jurisdiction.).

However, the Supreme Court after the conclusion of oral arguments in the 1995 and 1999 Actions handed down a decision on July 21, 2006, that modified the precedent established by the 1928 *Daishinin* Decision referred to above, changing the extent of Sovereign Immunity to one of restrictive immunity. In essence stating that provided it is not an act for the exercise of sovereign rights, activities involving private law or business management, provided there are no special circumstances such as where the exercise of the civil jurisdiction of the Japanese courts would impinge on sovereignty, a sovereign foreign nation is not immune from the civil jurisdiction of the Japanese courts. (Supreme Court 2003 (*Ju*) No.1231. Refers to 2006 July 21, Second Petty Bench Decision, Civil Code Precedents Vo. 60, No.6, P.2,542, hereafter the "2006 Decision").

(8) The Plaintiff commenced this action on April 28, 2009. The Plaintiff subsequent to final decisions being handed down in each of the above actions acquired the B and C Certificate Bonds making it in respect of these bonds a successor subsequent to the conclusion of oral arguments (Article 115.1.3 of Code of Civil Procedure).

2.  Points at Issue

As regards claims concerning Type 1 Bonds, the points at issue are (1) as there has been a final decision in the 2000 Actions, entitlement to benefit of action.

As regards claims concerning Type 2 Bonds, as there have been final decisions in the 1995 and 1999 Actions, the points at issue are (1) a conflict with the principle of judgment judicata given these actions have been summarily dismissed; (2) as the Defendant has denied the formation of any agreement under which it consents to international jurisdiction whether the Japanese courts have jurisdiction; and (3) whether the statute of limitations has expired.

As regards claims concerning Type 3 Bonds, the points at issue are (1) whether the Japanese courts possess international jurisdiction; and (2) whether the statute of limitations has expired.

As described above, the points at issue in this action are (1) for Type 1 Bonds entitlement to benefit of action; (2) for Type 2 Bonds conflict with the principle of judgment judicata



given these actions have been summarily dismissed; (3) for Type 2 and 3 Bonds whether the Japanese court has international jurisdiction; and (4) for Type 2 and 3 Bonds whether the statute of limitations period has expired.

3. Parties Assertions concerning Points at Issue

   (1) Point (1): Entitlement to Benefit of Action for Type 1 Bonds

   (Defendant's Assertion)

   From within the Plaintiff's claims, as regards the 2000 Actions the final decision of the court was an order that the Defendant in performance of its guarantee obligations pay 200 million yen for redemption of Type 1 Bonds. As the Plaintiff is a successor subsequent to the conclusion of oral arguments of those actions the principle of judgment judicata applies and accordingly the Plaintiff has no entitlement to benefit of action.

   (Plaintiff's Assertion)

   It is clear that where there is an interruption of prescription the entitlement to action for benefit remains. Accordingly this claim cannot be denied based on no entitlement to benefit of action.

   (2) Point (2): Conflict with the Principle of Judgment Judicata given the Claims related to Type 2 Bonds have been Summarily Dismissed

   (Plaintiff's Assertions)

   (i) Whether the requirements for bringing an action exist should be considered at the time oral arguments conclude. Even if upon the conclusion of oral arguments prior actions were summarily dismissed based upon a failure to meet such requirements, if upon conclusion of oral arguments in this Action it is decided the requirements for bringing it are satisfied then it is clear that the bringing of this Action is lawful. The 1995 and 1999 Actions brought by Klesch regarding the performance of guarantee obligations arising under a guarantee agreement in respect of the principal redemption liability for Type 2 Bonds were summarily dismissed based upon application of the principle of Sovereign Immunity. However, as it is clear that a 2006 Decision has modified the extent of Sovereign Immunity from that set forth in the original *Daishinin* decision, in this Action it is clear that the Defendant is not immune from the jurisdiction of the Japanese courts. Therefore provided that at the conclusion of oral arguments in this Action the Plaintiff has not failed to meet the requirements for bringing this Action there is no reason why the Plaintiff's claims should be summarily dismissed.

(ii) The Defendant asserts that the bringing of this Action is an attempt to circumvent the law as the time limit for lodging an appeal application has expired. However, despite the previous actions being summarily dismissed due to a failure to satisfy the legal requirements, provided that at the time this Action commenced all legal requirements for the bringing of this Action have been satisfied it is not necessary to make an application for retrial of the previous actions and therefore the bringing of this Action is lawful.

(Defendant's Assertions)

(i) From within the Plaintiff's claims, as regards the claims for performance of guarantee obligations arising under guarantee agreements in respect of the principal redemption liability for Type 2 Bonds totaling 1,100 million yen these were summarily dismissed in the 1995 and 1999 Actions due to the application of the principle of Sovereign Immunity and a final decision was handed down in each of those actions. As the Plaintiff is a successor subsequent to the conclusion of oral arguments in those actions, the principle of judgment judicata applies and the above claims are in conflict with that principle.

(ii) The Plaintiff asserts that based upon the 2006 Decision, it is lawful to bring an action based upon the above claims. However, given that the modifying precedent in respect of the extent of Sovereign Immunity was contained in a decision handed down subsequent to the conclusion of oral arguments in the 1995 and 1999 Actions, this cannot be applied.

Even if the Plaintiff based upon the modifying preceding resulting from the 2006 Decision was subsequently entitled to make an application for retrial denying that the principle of judgment of judicata applied in respect of the summary dismissal of the 1995 and 1999 Actions, it failed to do so. It is strictly stipulated that an action for retrial shall be filed within a non-extendable period of 30 days from the day on which a party has become aware of the grounds for retrial after the judgment became final and binding (Article 342.1, Code of Civil Procedure). Accordingly as regards the claims made in respect of Type 2 Bonds, as the time limit for making an application for retrial has expired this is an attempt to circumvent the law.

(3) Point (3): For Type 2 and 3 Bonds whether the Japanese Court has International Jurisdiction

(Plaintiff's Assertions)

(i) The Defendant provided to the purchasers of the B Certificate Bonds a joint, several and irrevocable guarantee under which in accordance with the "Guarantee Scheme" for the B Certificate Bonds it guaranteed all payments of the principal and interest



of the B Certificate Bonds issued on May 31, 1988 (including amount in excess of face value) together with payment of other amounts payable under the "Bonds Scheme" in respect of those bonds.

(ii) The Defendant provided a joint, several and irrevocable guarantee under which in accordance with the "Guarantee Scheme" for the C Certificate Bonds it guaranteed all payments including but not limited to payment of the principal and interest of the C Certificate Bonds issued on July 27, 1989 (including amount in excess of face value) together with payment of other amounts payable under the "Bonds Scheme" in respect of those bonds.

(iii) The following exist in respect of the guarantees of the Defendant provided for both B and C Certificate Bonds under the Guarantee Scheme.

    a) Item 7 (Applicable Law)

        In respect of the rights and obligations of all concerned parties with the exception of authorization under the guarantee provided by the Defendant including but not limited to the creditors, holders of the coupons, and banks based on the guarantee (including this Guarantee Scheme), and the guarantee itself all shall be decided in accordance with Japanese law.

    b) Item 9 (Jurisdiction)

        All actions against the Defendant in respect of its guarantees (including this Guarantee Scheme) may be filed in the Tokyo District Court or any court of appeal with jurisdiction under Japanese law and the Defendant accepts this as an unequivocal statement of jurisdiction and irrevocably submits to the jurisdiction of the Japanese courts in respect of all such actions.

(iv) While the Defendant has denied that a guarantee has been formed based upon the guarantees contained in the Guarantee Scheme as stated above, it has provided no reasons as to what would lead to this unusual conclusion, how it can be asserted or any background that would justify the conclusion that regardless of its intention to enter into such a guarantee agreement it did not do so.

Further in the 1995, 1999, and 2000 Actions, the Defendant did not dispute the formation of a guarantee agreement or make application for summary dismissal based upon lack of international jurisdiction. Accordingly it is clear that the Defendant had full knowledge that this guarantee agreement had been entered into. Accordingly, it can be found that the Defendant has both entered into a guarantee agreement in accordance with the Guarantee Scheme and has also consented to the jurisdiction of a Japanese court to hear this Action.




(Defendant's Assertions)

As regards the Defendant's guarantee in respect of principal redemption liability for the B and C Certificate Bonds, it is considered that there are two possible types of guarantee. The first is a guarantee pursuant to Article 4 (6) of the Finance Corporation Act ("Legal Guarantee") and the second a guarantee under a guarantee agreement entered into by the Defendant under the Guarantee Scheme. The Defendant does not contest its guarantee obligations pursuant to said "legal guarantee". However, the Defendant denies the formation of any other guarantee agreement. No exhibit submitted by the Plaintiff bears the seal of the Defendant or signature of the President, and accordingly these exhibits in no way prove entry into a guarantee agreement by the Defendant.

Therefore as no such guarantee agreement is in existence the Defendant has not submitted has not consented to the jurisdiction of the Tokyo District Court under the Guarantee Scheme for the B and C Certificate Bonds, therefore the Japanese courts do not have jurisdiction to hear the Plaintiff's claim.

(4) Point (4): For Type 2 and 3 Bonds whether the statute of limitations period has expired

   (i)  Type 2 Bonds

       (Defendant's Assertions)

       a)  The statute of limitations period stipulated under the Civil Code is ten years and further under the bond purchase agreement policies (Plaintiff's Exhibits 1 and 3) it is also stipulated that the statute of limitations for a claim for redemption of B Certificate Bonds and C Certificate Bonds is 10 years. The commencement calculation date for the above claims for redemption are the agreed redemption dates (The agreed redemption dates set forth under Facts not in Dispute (2) (iii) and (3) (iii)). Accordingly the ten-year statute of limitations period for all redemption liabilities expired on May 30, 2005.

       b)  The Defendant during oral arguments in this Action on September 6, 2010, as guarantor in respect of its redemption obligations arising under the principle liability for Type 2 Bonds, asserted its right to rely on the expiry of the statute of limitations.

       c)  As regards the Type 2 Bonds at the time of issue the purchaser was a trader namely the Chemical Trust Bank and even if the statute of limitations in respect of the principal liability is ten years, Article 522 of the Commercial Code applies to guarantees and accordingly the statute of limitations in

- 10 -

respect of the guarantee obligations of the Defendant arising under a
guarantee agreement is five years.

d)   The Defendant during oral arguments in this Action on September 6, 2010
in respect of its guarantee obligations based on a guarantee agreement with
Chemical Trust Bank, asserted its right to rely on the expiry of the statute
of limitations.

(Plaintiff's Assertions)

a)   In respect of the 1995 and 1999 Actions, a final decision was made
upholding the claims against RONFIN. Accordingly in respect of those
actions the statute of limitations period for claims for redemption of bonds
against RONFIN is ten years from the date upon which that final decision
was made.

Taking this into consideration it must be accepted that the statute of
limitations period to make a claim against the Defendant for the
performance of guarantee obligations is also ten years from the date upon
which the final decisions were made.

From within the 1995 and 1999 Actions, the earliest date upon which a
final decision can be considered to be made was when the High Court
handed down its decision on March 29, 2002 in respect of the 1995 Action.
However when this Action commenced on April 28, 2009, there was an
interruption of prescription of the statute of limitations period prior to its
expiry in respect of a claim for redemption of the Type 2 Bonds and also
the corresponding claim for performance of guarantee obligations pursuant
to a guarantee agreement in respect of the principal liability.

b)   Even if the original purchaser of the Type 2 Bonds was a trader, the
assertion that guarantee obligations are of an ancillary and inseparable
nature to the principal liability and therefore that the statute of limitations
period for the guarantee obligations pursuant to the principal redemption
liability are as a matter of course the same period is clearly incorrect, as
considering the liquidity of bearer bond certificates, this would mean that
the statute of limitations period to make a claim for performance of
guarantee obligation would differ for each purchaser of the bonds.
Accordingly in respect of the guarantee obligations arising under the
principal liability Article 522 of the Commercial Code does not apply.

(ii) Type 3 Bonds




The Defendant asserts that in respect of Type 3 Bonds that even if the latest possible date of May 30, 2005 is assumed the statute of limitations period has expired in respect of both a claim for redemption and also a claim for performance of guarantee obligations arising under the principal liability and the Defendant during oral arguments in this Action on September 6, 2010 asserted its right to rely on the expiry of the statute of limitations in respect of both claims.

Chapter 3. Findings on Points at Issue

1.  Point (1): Entitlement to Benefit of Action for Type 1 Bonds

    In respect of the claim for performance of guarantee obligations arising under the principal redemption liability for Type 1 Bonds in a total amount of 200 million yen, the Defendant asserts that in the 2000 decision a final decision was handed down upholding the claims and as the Plaintiff in this Action is a successor to Klesch there is no entitlement to benefit of action.

    However, where an interruption of prescription is required, it should be interpreted that a further claim for benefit of action may be made (*Daishinin* 1931(o) No.890. Refers to November 24, 1931 No.5 Civil Affairs Bureau Decision, *Daishinin* Civil Code Precedents Vol. 10, No.12, P.1,096). While only approximately seven years and nine months had passed between the time this Action was commenced and the final decision was handed down in respect of the 2000 Actions on July 25, 2001, at the date on which oral arguments in this Action concluded more than ten years have passed since the final decision in the 2000 Action. Under these circumstances it is accepted that the Plaintiff must receive the benefit of interruption of prescription in this Action.

    In respect of the above claims the Plaintiff is entitled to benefit of action and accordingly the assertions of the Defendant are without foundation.

2.  Point (2): Conflict with the Principle of Judgment Judicata given the Claims related to Type 2 Bonds have been Summarily Dismissed

    (i)     The 1995 and 1999 Actions brought by Klesh in respect of the claim for performance of guarantee obligations arising under the redemption liability for Type 2 Bonds were both summarily dismissed in the decisions handed down due to application of the principle of Sovereign Immunity to the Defendant and the decisions in both these Actions have been finalized (Facts not in Dispute (6) (i) and (ii)).



The statements of claim in this Action that relate to the performance of guarantee obligations arising under the redemption liability for Type 2 Bonds are identical to the statements of claim in the 1995 and 1999 Actions (Defendant's Exhibits 1 to 4). Accordingly as the Plaintiff is a successor subsequent to the conclusion of oral arguments in the 1995 and 1999 Actions the principle of judgment judicata arising from the final decisions in these actions applies (Article 115.1.3 of Code of Civil Procedure).

(ii)  In this Action a further issue is whether due to circumstances arising subsequent to the conclusion of oral arguments in each of the 1995 and 1999 Actions the bringing of the above claims can be considered lawful. The Plaintiff asserts that as a result of the decision handed down in the 2006 Decision circumstances have arisen making the bringing of the above claims lawful. The Defendant asserts that while the 2006 Decision established a modifying precedent this does not act to change the facts on which the 1995 and 1999 Actions were based.

The 2006 Decision in part outlined the circumstances giving rise to the application of restricted sovereign immunity stating that (1) in respect of the scope of Sovereign Immunity while the so-called principle of absolute sovereign immunity had been widely accepted and was seen as forming the basis of international customary law, in line with an expansion in the scope of activities undertaken by nations, the concept of so-called restricted sovereign immunity has gradually gained acceptance, and presently in many countries based on this concept the scope of immunity of foreign sovereign nations from the jurisdiction of civil courts has become more restricted; (2) At the 59th General Assembly of the United Nations on December 2, 2004, the "United Nations Convention on Jurisdictional Immunities of States and Their Property 2004" was adopted which stipulated the application of the principle of restricted sovereign immunity. As described in (1) and (2) above, that in line with an expansion in the scope of activities undertaken by nations, many countries have adopted the concept of restricted Sovereign Immunity which was formally recognized in the aforementioned convention at the General Assembly of the United Nations on December 2, 2004, there has been a change in facts subsequent to the final decisions in the 1995 and 1999 Actions. As the Supreme Court in handing down the 2006 Decision was able to modify the precedent in respect of Sovereign Immunity based on those changes in facts, and as those circumstances arose subsequent to the conclusion of oral arguments in the 1995 and 1999 Actions, the above assertions of the Defendant in this Action lack foundation as they differ from the decision handed down in the 2006 Decision.



(iii)    Premised on the above and in accordance with the principle of restricted sovereign immunity, the court finds that the guarantees of the Defendant regarding B and C Certificate Bonds do not differ in any respect from any other private guarantee for a financial activity. Regardless of whether those guarantees were Legal Guarantees or guarantees based on a guarantee agreement in accordance with the Guarantee Scheme, it is clear that they were private law activities by a sovereign foreign nation. Given that the court is unable to find the existence of any special circumstances, such as where the exercise of civil jurisdiction may impinge on the Defendant's sovereignty, this defense is denied.

Accordingly in respect of the above claim the court is unable to accept the Defendant's assertion of Sovereign Immunity and therefore bringing of the above claims is lawful.

Further, while the Defendant has asserted that the lawful method to contest the above claims is to bring an action for retrial of the previous actions, the Plaintiff has asserted that new circumstances since the conclusion of oral arguments in the 1995 and 1999 Actions have arisen. The court finds as asserted by the Plaintiff that there is no conflict with the principle of judgment judicata based upon final decisions in each of the above actions, and refutes the Defendant's assertion that without a retrial of the previous actions the bringing of these claims are unlawful.

3.  Point (3): For Type 2 and 3 Bonds whether the Japanese Court has International Jurisdiction

(1)  Issue of B Certificate Bonds and Consent to International Jurisdiction

(i)  According to the Facts not in Dispute, Exhibits (Plaintiff's Exhibit 1) and the Defendant's Brief, Chemical Trust Bank, entered into an agreement with RONFIN on May 23, 1988 prior to the issue of these bonds on May 31, 1988 to purchase B Certificate Bonds in accordance with the Purchase Agreement Policy (Plaintiff's Exhibit 1). Subsequently in accordance with the terms and conditions of the bond purchase agreement policy stated above, these bonds were issued on May 31, 1988 and RONFIN assumed liability in respect of the same. (This fact not in dispute.)

(ii)  In the bond purchase agreement policy stated above (Plaintiff's Exhibit 1) the following conditions (a) to (f) were stated in the main body and (g) to (j) in an attachment to that policy.

a)   1.1 First sentence

RONFIN in accordance with the terms and conditions of this prospectus, the Bonds Scheme as set forth in attachments 1, 3 and 4 of this Agreement, those stated on the bearer bond certificates and coupons confirms that it is entitled to legitimately issue B numbered bearer bond RONFIN Japanese

yen certificates (1988) with a total principal value of 4,000 million yen and further that it shall issue the same in accordance with the stated schedule.

b) 1.2

Payment of the principal and interest on these bonds (including amounts in excess of face value) and other amounts payable in respect of these bonds are guaranteed by the Defendant under Article 4(6) of the amended Finance Corporation Act, and further additional guarantees are provided by the Defendant for other payments as stipulated in attachment 2 of the Guarantee Scheme attached to the prospectus of this agreement policy. These guarantees are collectively referred to below as "the Guarantees".

c) 2.2, Fourth paragraph

RONFIN guarantees that prior to the payment date it has lawfully obtained all necessary permissions, consents, agreements and licenses required from the Defendant's government, its ministries, any other subservient government organizations and the concerned administrative district for the issue, sale and fulfillment of all other obligations arising under this Agreement and that these guarantees are totaling binding and enforceable.

d) 4.1, Second sentence

Conditional upon payment to RONFIN by the purchaser of the total issue price of the bearer bond certificates in accordance with Article 4.2 of this Agreement, RONFIN shall issue to the purchaser those bearer bond certificates on May 31, 1988 (hereafter, "the Payment Date").

e) 4.2, First sentence

The purchaser shall before 2 p.m. on the Payment Date (Japan time) pay to RONFIN the total issue price for purchase of these bearer bonds.

f) 5.1

The conditions precedent under which the Purchaser is under an obligation to purchase the bonds in the principal amount and make payment for the same on the Payment Date are that RONFIN has provided full disclosure regarding the Bonds, ensured that the Guarantees set forth under Article 2 of this Agreement are in place and that RONFIN is in compliance with the same and that RONFIN has complied with the following conditions (omitted) prior to the Payment Date.

g) Attachment 1 "Bonds Scheme" 5

Payment of the principal and interest (including any amount in excess of face value) together with all other monies payable in respect of the bonds,



shall be guaranteed by the Defendant under Article 4(6) of the amended
Finance Corporation Act, and further the Defendant shall provide
additional guarantees in accordance with the Guarantee Scheme.

h)  Attachment 2 "Guarantee Scheme" 1

The Defendant guarantees fulfillment of all liabilities that RONFIN incurs
in respect of the issue of B Certificate Bonds.

The Defendant hereby provides an unconditional and irrevocable guarantee
to the holders of the bonds that RONFIN shall pay the principal and
interest on the B Certificate Bonds together with all other payments due on
the bond redemption date in accordance with the Bonds Scheme.

i)  Attachment 2 "Guarantee Scheme" 7

In respect of the rights and obligations of all concerned parties with the
exception of authorization under the guarantee provided by the Defendant
including but not limited to the creditors, holders of the coupons, and
banks based on the guarantee (including this Guarantee Scheme), and the
guarantee itself all shall be decided in accordance with Japanese law.

j)  Attachment 2 "Guarantee Scheme" 9, First sentence

All actions against the Defendant in respect of its guarantees (including
this Guarantee Scheme) may be filed in the Tokyo District Court or any
court of appeal with jurisdiction under Japanese law and the Defendant
accepts this as an unequivocal statement of jurisdiction and irrevocably
submits to the jurisdiction of the Japanese courts in respect of all such
actions.

(iii) In Attachment 3 to the bond purchase agreement policy (Plaintiff's Exhibit 1)
guarantees are in writing provided by Defendant. It is stated that under the law of
the Defendant and pursuant to a decision of the Defendant's cabinet (May 18, 1988)
that in accordance with the Guarantee Scheme the Defendant provides an
unconditional and irrevocable guarantee that ensures payment of the principal
amount of the bonds (including amount in excess of face value), interest on the
same and all other monies payable on the redemption date. Appearing after the date
of May 31, 1988 a signature section for the Defendant's President was prepared
(Plaintiff's Exhibit 1).

However, in this Action no guarantee policy signed by the President of the
Defendant (Attachment 3) has been submitted.

(iv) The Defendant disputes formation of a guarantee agreement and denies consent to
international jurisdiction as stipulated in the aforementioned Scheme.



However as described above in (i) at the time that RONFIN entered into the bond purchase agreement to provide B Certificate Bonds: the Defendant in accordance with Attachment 2 of the Guarantee Scheme intended to provide additional guarantees (1.2); the Defendant in respect of those additional guarantees had already gained cabinet approval and satisfied all other procedural requirements (2.2, Fourth paragraph); the Defendant as stated in RONFIN's documents had clearly consented to provide additional guarantees (2.2, Fourth paragraph); and to ensure the rights to redemption of B Certificate Bonds, the Defendant provided a clear guarantee in writing stating the above was correct and in compliance with all other conditions precedent (4.1, Second sentence). Accordingly, as the certificates for the B Certificate Bonds were issued on the issue date and there has been no proof provided to this court that there was any other obstacle regarding their issue this claim cannot be supported. In addition the court has also taken into consideration that the Defendant in the 1999 and 2000 Actions that preceded this Action did not deny its additional guarantees or its consent to international jurisdiction (Plaintiff's Exhibits 5 and 6, Defendant's Exhibits 3 and 4). Despite the fact that no exhibit bearing the signature of the President of the Defendant has been submitted, it is considered that the Defendant at the time of issue of B Certificate Bonds in the aforementioned Attachment 3 provided additional guarantees in accordance with aforementioned Attachment 2 Guarantee Scheme. Accordingly based upon the evidence presented before this court, the original findings cannot be overturned. Therefore given the first sentence of Article 9 in the aforementioned Attachment 2 "Guarantee Scheme" it is found that the Tokyo District Court in respect of this Action concerning the B Certificate Bonds guarantees had jurisdiction to hear those claims.

(2) Issue of C Certificate Bonds and Consent to International Jurisdiction

    (i)  A bond purchase agreement policy for C Certificate Bonds dated July 21, 1989 proving entry into a bond purchase agreement (Plaintiff's Exhibit 3) is in existence. While Plaintiff's Exhibit 3 does not bear the signature or seal of either the purchaser or RONFIN, the Defendant has not disputed the contents in Plaintiff's Exhibit 3 or the formation of a bond purchase agreement, and despite minor changes as noted in (ii) below, given that the contents of Plaintiff's Exhibit 3 are almost identical to those of Plaintiff's Exhibit 1 it is clear that it was planned to issue C Certificate Bonds under basically the same terms and conditions that applied to the issue of B Certificate Bonds. Aside from the aforementioned changes

to the bond purchase agreement policy in respect of B Certificate Bonds
(Attachments 1 - 3) it contains the identical terms and conditions.
Accordingly, it is found that a bonds purchase agreement has been entered into for
C Certificate Bonds that were issued on July 27, 1989 as stated on the
aforementioned bond purchase agreement policy (Facts not in dispute).

(ii) The aforementioned bond purchase agreement policy (Plaintiff's Exhibit 3) is
identical in content to the bond purchase agreement policy to the B Certificate
Bonds with the exception of:

    a)  In Article 1.1, first sentence, amending the phrase "B numbered bearer
bond Japanese yen certificates (1988) guaranteed by the Defendant total
principal of 4,000 million" to "C numbered bearer bond Japanese yen
certificates (1989) guaranteed by the Defendant total principal of 5,000
million";

    b)  In Article 4.1, second sentence, amending the date from "May 31, 1988" to
"July 27, 1989";

    c)  In Attachment 3, amending the phrase "under law and a decision of the
Defendant's cabinet (May 18, 1988)" to "under law and a decision of the
Defendant's cabinet (May 5, 1989. July 11, 1989).

(iii) As regards C Certificate Bonds the Defendant denies both the provision of
additional guarantees and the consent to international jurisdiction.
However, in respect of C Certificate Bonds as stated in (i) above, it can be found
that a bond purchase agreement was entered into and under the same terms and
conditions of the bond purchase agreement policy provided for B Certificate Bonds.
Further given that the Defendant does not dispute the existence of a guarantee
agreement in the 1995 Action which claimed performance of guarantee obligations
for the principal redemption liability in respect of C Certificate Bonds and that
regardless of the dispute concerning Sovereign Immunity it is clear that there is a
guarantee agreement (Defendant Exhibit 2), as the C Certificate Bonds were also
issued in accordance with the above policy, the court finds that additional
guarantees were provided in accordance with Attachment 2 of the "Guarantee
Scheme" to that policy. Accordingly based upon the evidence presented before this
court, the original findings cannot be overturned.
Therefore given the first sentence of Article 9 in the aforementioned Attachment 2
"Guarantee Scheme" it is found that the Tokyo District Court in respect of this
Action concerning the C Certificate Bonds guarantees had jurisdiction to hear those
claims.



4.  Point (4): For Type 2 and 3 Bonds whether the statute of limitations period has expired

    (1) Judgment concerning Type 3 Bonds

        The applicable law in respect of rights and obligations in addition to those additional guarantees provided by the Defendant is the law of Japan (Defendant's Exhibits 1 and 3). The parties to this Action have not disputed this point.

        Based upon the facts not in dispute the latest redemption date for B Certificate Bonds was May 31, 1995, and for C Certificate Bonds was April 27, 1995. In respect of both B and C Certificate Bonds when this Action commenced on April 28, 2010 more than ten years had passed since their redemption date.

        The Defendant in its third oral argument on September 6, 2010 asserted its right the statute of limitations period has expired in respect of both a claim for redemption and also a claim for performance of guarantee obligations arising under the principal liability and asserted its right to rely on the expiry of the statute of limitations (A: Need to delete some) in respect of Type 3 Bonds. The court has noted this assertion.

        In respect of the claims regarding Type 3 Bonds, no assertions concerning interruption of prescription in respect of the statute of limitations period have been made.

        Accordingly, in respect of claims for the redemption of Type 3 Bonds in the amount of 5,200 million yen, the court finds that the statute of limitations period for these claims has expired. Accordingly the statute of limitations period for claims against the Defense in respect of performance of guarantee obligations has also expired. The Defendant's defense regarding the expiry of the statute of limitations is therefore accepted.

    (2) Judgment concerning Type 3 Bonds

        (i) The Defendant, just as for the Type 3 Bonds, in respect of the Type 2 Bonds asserts that the ten-year statute of limitations period regarding all redemption liabilities expired on May 30, 2005 as calculated from the bonds redemption date, and has asserted its right to rely on the expiry of the statute of limitations period regarding the principal liability redemption obligations for Type 2 Bonds.

            However, in the 1995 and 1999 Actions, final decisions were made upholding the claims against RONFIN for redemption of the Type 2 Bonds. Accordingly the statute of limitations period is ten years from the date upon which the final decision was made (Civil Code Article 174.2).

            As regards the 1995 Actions, the final decision of the appellate court was handed down on March 29, 2002 and in the 1999 Actions was handed down on June 26, 2002 (Facts not in Dispute (6) (i) and (ii)). As ten years have not passed since the date upon which the final decisions in these Actions were made and the bringing of



this Action on May 28, 2009, the Defendant's assertions denying principal liability due to expiry of the statute of limitations period have no foundation.

(ii) The Defendant in respect of Type 2 Bonds asserts that as they were originally purchased by the trading company Chemical Trust Bank, that even if the statute of limitations period for the principal liability is ten years, the statute of limitations period for any guarantee agreement entered into between the aforementioned company and Defendant, by application of Article 522 of the Commercial Code is five years and the Defendant asserted its right to rely on the expiry of the statute of limitations in respect of its guarantee obligation.

Despite the assertions above, in respect of the 1995 and 1999 Actions final decisions have been made upholding the claims against RONFIN for redemption of the Type 2 Bonds. From the time of these final decisions the prescription rights period is ten years (Civil Code Article 174.2). If this Article applies and the prescription rights period against the principal debtor is ten years then the statute of limitations period in respect of the guarantor is also ten years. (Supreme Court, 1968 (o) No.519, October 17, 1968. First Petty Bench Decision, Civil Code Precedents No.92, P.601). Therefore the statute of limitations period for the Defendant's guarantee obligations as regards RONFIN's principal liability in respect of Type 2 Bonds is ten years. Accordingly, the Defendant's assertion that a five-year statute of limitations period applies is unfounded.

(iii) Therefore, the Defendant's assertion that the statute of limitations period in respect of its guarantee obligations is also unfounded.

Chapter 4. Conclusion

In accordance with the above, the court upholds the Plaintiff's claims for (1) payment of the face value of Type 1 and 2 Bonds totaling 1,300 million yen (B Certificate Bonds 101 - 120, 131 - 140 face value of each certificate 10 million yen, and C Certificate Bonds 1501 - 2500 face value of each certificate 1 million yen), (2) a penalty for delay in payment of interest on 300 million yen calculated at an annual rate of interest of 6.5% from June 1, 1995 until payment of that sum; (3) a penalty for delay in payment of interest on 1,000 million yen calculated at an annual rate of interest of 7% from July 28, 1994 until payment of that sum is made. All other claims of the Plaintiff are summarily dismissed, as stated in the verdict. Further, as regards the declaration of provisional execution against the Defendant, taking into account the facts of this case it is found that such a declaration is not appropriate and accordingly this claim is denied.



Tokyo District Court Civil Affairs No.4

The Chief Judge: Teruyoshi Ota
Judge: Tomoko Ikeda
Judge: Yukinobu Takeuchi

This is the original.

October 28, 2011

Tokyo District Court Civil Affairs No.4

Court Clerk: Naoya Ito

平成２３年１０月２８日判決言渡　同日原本領収　裁判所書記官

平成２１年(ワ)第１４１５６号　社債償還請求事件

口頭弁論終結日　平成２３年８月２６日

<div align="center">判　　　　　決</div>

ケイマン諸島　グランド　ケイマン　ＫＹ１－１１０３

ジョージ　タウン　私書箱８４７　ワンキャピタル　プレイス

トライデント　トラスト　カンパニー（ケイマン）　リミテッド　気付

原　　　告

ファイヤーバード　グローバル　マスター　ファンド　セカンド　リミテッド

同代表者代表取締役　　　　　　　ハーベイ　　ソウイキン

同訴訟代理人弁護士　　　　　田　　子　　真　　也

同　　　　　　　　　　　　　中　　山　　靖　　彦

同　　　　　　　　　　　　　臼　　井　　幸　　治

同　　　　　　　　　　　　　御　　厨　　景　　子

中央太平洋ナウル島ナウル共和国ヤーレン区政府事務所

被　　　　　告　　　　　ナ　ウ　ル　共　和　国

同代表者大統領　　　　　マーカス・スティーブン

同訴訟代理人弁護士　　　高　　取　　芳　　宏

同　　　　　　　　　　　矢　　倉　　信　　介

同　　　　　　　　　　　一　　色　　和　　郎

<div align="center">主　　　　　文</div>

１　被告は，原告に対し，１３億円並びにうち３億円に対する平成７年６月
　　１日から支払済みまで年６．５％の割合による金員及びうち１０億円に対
　　する平成６年７月２８日から支払済みまで年７％の割合による金員を支払
　　え。

２　原告のその余の請求を棄却する。

<div align="center">－ 1 －</div>

　　　　3　訴訟費用は，これを５分し，その４を原告の負担とし，その余は被告の

　　　　　負担とする。

<div align="center">事 実 及 び 理 由</div>

第１　請求

　　１　被告は，原告に対し，６５億円並びにうち２１億円に対する平成７年６月１

　　　日から支払済みまで年６．５％の割合による金員及びうち４４億円に対する平

　　　成６年７月２８日から支払済みまで年７％の割合による金員を支払え。

　　２　訴訟費用は被告の負担とする。

　　３　第１項につき仮執行宣言

第２　事案の概要

　　　　本件は，原告が，被告の保証の下にナウル共和国金融公社（以下「公社」と

　　　いう。）が発行した円貨債券を取得したと主張して，被告に対し，保証契約に

　　　基づき，①元金６５億円，②元金のうち２１億円に対するその債券の最終償還

　　　日の翌日である平成７年６月１日から支払済みまで約定利率年６．５％の割合

　　　による遅延損害金，③元金のうち４４億円に対するその債券の変更前の償還日

　　　の翌日である平成６年７月２８日から変更後の償還日まで約定利率年７％の割

　　　合による利息及び変更後の償還日の翌日から支払済みまで約定利率年７％の割

　　　合による遅延損害金の支払を求めている事案である。

　　１　前提事実等（括弧内に証拠等を記載した事実以外は当事者間に争いがないか，

　　　当裁判所に顕著である。）

　　(1)　原告は，ケイマン法の下で設立された限定責任有限会社である。

　　　　　被告は，パプアニューギニアの東約２１５０キロメートルに位置する外国

　　　国家である。公社は，１９７２年ナウル共和国金融公社法（以下「金融公社

　　　法」という。）に基づいて設立されたナウル共和国法人である。

　　(2)　公社は，１９８８年（昭和６３年）５月３１日，以下の内容で，無記名式

　　　の，ナウル共和国保証Ｂ号ナウル金融公社円貨債券（１９８８）（以下「本

<div align="center">－ 2 －</div>

件Ｂ号債」という。）を発行した。

　　ア　元本　　　　４０億円

　　イ　利率　　　　年６．５％

　　ウ　償還日　　　１９９２年（平成４年）５月３１日　　４億円

　　　　　　　　　　１９９３年（平成５年）５月３１日　　４億円

　　　　　　　　　　１９９４年（平成６年）５月３１日　　４億円

　　　　　　　　　　１９９５年（平成７年）５月３１日　　２８億円

　　エ　遅延損害金　年６．５％

⑶　公社は，１９８９年（平成元年）７月２７日，以下の内容で，無記名式の，

　　ナウル共和国保証Ｃ号ナウル金融公社円貨債券（１９８９）（以下「本件Ｃ

　　号債」という。）を発行した。

　　ア　元本　　　　５０億円

　　イ　利率　　　　年７％

　　ウ　償還日　　　１９９４年（平成６年）７月２７日　　５０億円

　　　　　　　　　　　ただし，１９９４年（平成６年）８月１２日に，公社，

　　　　　　　　　　被告及び本件Ｃ号債の債権者全員との間で，償還日が以下

　　　　　　　　　　のとおりに変更された（甲４，弁論の全趣旨）。

　　　　　　　　　　１９９４年（平成６年）８月２２日　　　５億円

　　　　　　　　　　１９９４年（平成６年）１２月２０日　　５億円

　　　　　　　　　　１９９５年（平成７年）４月２７日　　　４０億円

　　エ　遅延損害金　年７％

⑷　原告は，以下の社債券を保有し，その旨を社債登録簿に登録している。

　　ア　本件Ｂ号債

　　　㋐　券面種類　　１０００万円券

　　　㋑　枚数　　　　２１０枚

　　　㋒　債券番号　　１ないし３０，４１ないし５０，１０１ないし１２０，１



　　　　　　　　　３１ないし１７０，１８１ないし２１０，２４１ないし２

　　　　　　　　　６０，２９１ないし３００，３１１ないし３２０，３３１

　　　　　　　　　ないし３５０，３６１ないし３７０，３８１ないし３９０

　イ　本件Ｃ号債

　　㋐　券面種類　１００万円券

　　㋑　枚数　　　４４００枚

　　㋒　債券番号　１０１ないし４１００，４２５１ないし４６５０

⑸　公社は，本件Ｂ号債につき，４億円の償還日である１９９４年（平成６年）

　５月３１日及び２８億円の償還日である１９９５年（平成７年）５月３１日

　が到来したにもかかわらず，償還を行わなかった。

　　また，公社は，本件Ｃ号債についても，償還日が到来したにもかかわらず，

　償還を行わなかった。

⑹　本件Ｂ号債及び本件Ｃ号債の従前の保有者は，被告に対し次のとおり保証

　債務の履行を求める訴訟を提起していた。

　ア　クレッシュ・アンド・カンパニー・リミテッド（以下「クレッシュ」と

　　いう。）は，平成７年６月１日，本件Ｃ号債のうち債券番号１５０１ない

　　し２５００（以下，原告が保有する本件Ｂ号債及び本件Ｃ号債については，

　　債券番号により「本件Ｃ号債１５０１」などと特定する。）を保有してい

　　ると主張して，公社に対して償還を求めるとともに，被告に対して保証契

　　約に基づく保証債務の履行を求める訴えを提起した（東京地方裁判所平成

　　７年㋻第１０５７４号円建債償還等請求事件）。東京高等裁判所は，平成

　　１４年３月２９日，上記事件の控訴審（同裁判所平成１３年㋵第８９４号

　　事件）の判決を言い渡した。同判決は，公社に対する請求を認容したもの

　　の，被告に対する訴えについては，外国国家として我が国の民事裁判権か

　　らの免除（以下「主権免除」という。）を認めて不適法であると判断して

　　これを却下し，同判決は確定した（以下，当該訴訟を「平成７年訴訟」と



いう。）（乙１，乙２）。

イ　クレッシュは，平成１１年５月２８日，本件Ｂ号債１１１ないし１２０
を保有していると主張して，公社に対して償還を求めるとともに，被告に
対して保証契約に基づく保証債務の履行を求める訴えを提起した（東京地
方裁判所平成１１年(ﾜ)第１１７０７号円建債償還等請求事件），東京高等
裁判所は，平成１４年６月２６日，同事件の控訴審（同裁判所平成１３年
(ﾈ)第３４６５号事件）の判決を言い渡した。同判決も，公社に対する請求
を認容したものの，被告に対する訴えについては，主権免除を認めて不適
法であると判断してこれを却下し，同判決は確定した（以下，当該訴訟を
「平成１１年訴訟」という。）（乙３，乙４）。

ウ　クレッシュは，平成１２年５月３０日，本件Ｂ号債１０１ないし１１０
及び１３１ないし１４０を保有していると主張して，公社に対して償還を
求めるとともに，被告に対して保証契約に基づく保証債務の履行を求める
訴えを提起した（東京地方裁判所平成１２年(ﾜ)第１０７９９号保証債務等
請求事件）。東京地方裁判所は，いずれの請求もこれを認容する判決を言
い渡し，同判決は，平成１３年７月２４日の経過により確定した。その後，
公社と被告は，同判決について，再審を請求したものの（東京地方裁判所
平成１３年(ﾂ)第３９号），同請求は棄却され，これに対する抗告（東京高
等裁判所平成１５年(ﾗ)第１５００号）も棄却された（以下，上記訴訟，再
審及び抗告を併せて「平成１２年訴訟」という。）（甲５，甲６，乙５）。

エ　以上のとおりの経過から，原告が保有している本件Ｂ号債及び本件Ｃ号
債は，前件訴訟の確定判決の有無により，次の三つに分類することができ
る。

(ｱ)　第１分類社債

平成１２年訴訟の対象であった本件Ｂ号債１０１ないし１１０及び１
３１ないし１４０については，請求認容の確定判決がある。



　　(イ)　第2分類社債

　　　　　平成7年訴訟及び平成11年訴訟の対象であった本件B号債111な
　　　　いし120及び本件C号債1501ないし2500は，主権免除により
　　　　訴え却下の判断をした確定判決がある。

　　(ウ)　第3分類社債

　　　　　原告が保有するその余のナウル金融公社債券については，先行する確
　　　　定判決が存在しない。

(7)　主権免除の範囲については，大審院昭和3年12月28日決定・民集7巻
　　12号1128頁が，絶対免除主義（主権国家である外国国家は，我が国に
　　所在する不動産に関する訴訟など特別の理由がある場合を除き，原則として
　　我が国の民事裁判権に服することを免除され，外国国家が自ら進んで我が国
　　の民事裁判権に服する場合に限って例外が認められるとする解釈）を採用し
　　ており，平成7年訴訟及び平成11年訴訟は，これに従ったものである。

　　　最高裁判所は，平成7年訴訟及び平成11年訴訟の口頭弁論終結後である
　　平成18年7月21日，上記昭和3年大審院決定を変更し，主権免除の範囲
　　について，制限免除主義，すなわち，外国国家は，主権的行為以外の私法的
　　ないし業務管理的な行為については，我が国による民事裁判権の行使が当該
　　外国国家の主権を侵害するおそれがあるなどの特段の事情がない限り，我が
　　国の民事裁判権に服することを免除されないとする解釈を採用した（最高裁
　　平成15年(受)第1231号同18年7月21日第二小法廷判決・民集60巻
　　6号2542頁参照。以下「平成18年判決」という。）。

(8)　原告は，平成21年4月28日，本件訴訟を提起した。原告は，上記各訴
　　訟の判決確定後に本件B号債及び本件C号債を取得したものであり，上記各
　　確定判決との関係では，口頭弁論終結後の承継人（民訴法115条1項3号）
　　に当たる。

2　本件の争点

　第１分類社債に係る請求については，平成１２年訴訟の確定判決があり，重ねて訴訟を提起する訴えの利益の点が争点となる。

　第２分類社債に係る請求については，①平成７年訴訟及び平成１１年訴訟の確定判決があることから，訴え却下判決の既判力との抵触が問題となる上，②被告は，国際的管轄合意の成立を否定しており，我が国の国際裁判管轄の有無の点も問題であり，さらに，③消滅時効の成否が争点となる。

　第３分類社債に係る請求については，①我が国の国際裁判管轄の有無，②消滅時効の成否が争点となる。

　以上のとおりであり，本件の争点は，(1)第１分類社債に係る請求についての訴えの利益，(2)第２分類社債に係る請求についての訴え却下判決の既判力との抵触，(3)第２分類，第３分類社債に係る請求についての我が国の国際裁判管轄の有無，(4)第２分類，第３分類社債についての消滅時効の成否の点に整理できる。

3　争点についての当事者の主張

(1)　争点(1)（第１分類社債に係る請求についての訴えの利益）について

　　（被告の主張）

　　　原告の請求のうち，第１分類社債に係る合計２億円の償還債務を主債務とする保証債務の履行を求めるものには，平成１２年訴訟において請求を認容した確定判決があり，その口頭弁論終結後の承継人である原告は，同判決の既判力を受けるから，上記請求については，改めて訴えを提起して判決を得る利益に欠ける。

　　（原告の主張）

　　　時効中断の必要がある場合において訴えの利益が肯定されることは明らかであるから，上記請求について，訴えの利益が否定されることはない。

(2)　争点(2)（第２分類社債に係る請求についての訴え却下判決の既判力との抵触）について




（原告の主張）

ア　訴訟要件の存否は，当該訴訟の口頭弁論終結時を基準時として判断され
るべきものであり，前訴において，口頭弁論終結時に訴訟要件を欠いてい
るとして訴えが却下されたとしても，後訴において，口頭弁論終結時に訴
訟要件を備えていると判断されるのであれば，後訴は当然に適法なものと
なる。

　クレッシュによる，第２分類社債に基づく償還債務を主債務とする保証
契約に基づく保証債務の履行を求めた訴えは，平成７年訴訟及び平成１１
年訴訟において主権免除を理由に却下されたが，主権免除の範囲について
大審院決定の解釈を変更した平成１８年判決の判断に照らせば，本件訴訟
において，被告が我が国の民事裁判権に服することは明らかである。そう
すると，本件訴訟の口頭弁論終結時点において訴訟要件に欠けることはな
いから，原告の訴えが却下される理由はない。

イ　被告は，本件訴えにつき，再審について定められた出訴期間の潜脱であ
ると主張するが，何らかの訴訟要件を欠くことにより却下の判決がされて
いるとしても，当該判決を再審の手続により争う必要はなく，新たに提起
した訴訟の時点において訴訟要件が充足される限り，当該新たな訴訟は適
法である。

（被告の主張）

ア　原告の請求のうち，第２分類社債に基づく合計１１億円の償還債務を主
債務とする保証債務の履行を求めるものは，平成７年訴訟及び平成１１年
訴訟において，主権免除を理由に訴えが却下されており，いずれの判決も
確定している。これらの訴訟の口頭弁論後の承継人である原告には，上記
判決の既判力が及ぶから，上記請求に係る訴えは，却下判決の既判力に抵
触し，却下を免れない。

イ　原告は，平成１８年判決により，上記請求に係る訴えが適法になった旨



主張する。しかし，同判決による主権免除の範囲に関する解釈の変更は，

平成７年訴訟及び平成１１年訴訟において主権免除を認める判決の基礎と

なった事実関係の，口頭弁論終結後の変動に該当し得ない。

　原告は，平成１８年判決による判例変更の後に，再審の訴えを提起して

平成７年訴訟及び平成１１年訴訟の却下判決の既判力を否定することが可

能だったにもかかわらず，これを怠った。再審の訴えには，当事者が再審

事由を知った日から３０日の不変期間内に提起しなければならない（民事

訴訟法３４２条１項）として，厳格な出訴期間が規定されているのである

から，本件において，第２分類社債に係る請求について再び訴えの適法性

を争うことを許容することは，上記出訴期間の制限の潜脱を認めることに

なり，許されない。

(3)　争点(3)（第２分類，第３分類社債に係る請求についての我が国の国際裁判

　管轄の有無）について

（原告の主張）

　ア　被告は，本件Ｂ号債が発行された１９８８年（昭和６３年）５月３１日，

　　同債券の買受人に対し，同債券の元利金（額面超過額を含む。）及び同債

　　券の「債券の要項」に従って支払われるべきその他の金員の支払を，同債

　　券の「保証の要項」に従って，無条件かつ取消不能の条件で連帯保証した。

　イ　被告は，本件Ｃ号債が発行された１９８９年（平成元年）７月２７日，

　　本件Ｃ号債の元利金（額面超過額を含む。）及び本件Ｃ号債の「債券の要

　　項」に従って支払われるべきその他の金員の支払を，本件Ｃ号債の「保証

　　の要項」に従って，無条件かつ取消不能の条件で連帯保証した。

　ウ　本件Ｂ号債と本件Ｃ号債のいずれの保証の要項においても，以下の定め

　　が存在する。

　　(ｱ)　７項（準拠法）

　　　　被告による本保証の授権を除き，本保証（本要項を含む。）並びに本



－ 9 －

保証に基づいて生じる本債券の債権者及び利札の所持人並びに銀行を含む関係各当事者の一切の権利義務は，すべて日本国の法律の定めるところに従うものとする。

(イ) 9項（裁判管轄）

被告に対する本保証（本要項を含む。）にかかるすべての訴訟は，東京地方裁判所及び日本法上同裁判所からの上訴を審理する権限を有する裁判所に提起することができるものとし，被告はかかるすべての訴訟につきその管轄に明示的かつ取消不能の形でここに服する。

エ 被告は，上記の保証の要項に従った保証契約の成立を否認するが，保証契約の締結を予定していたにもかかわらずこれをしないという異常な事態に至った理由，経緯，背景等を一切説明しない。

また，被告は，平成7年訴訟，平成11年訴訟，平成12年訴訟のいずれにおいても，保証契約の成立を争わず，また，国際裁判管轄の不存在を理由とする訴えの却下を求めてもいないのであるから，被告が，保証契約が成立していないという認識を持っていなかったことは明らかである。

したがって，被告による，保証要項に従った保証契約は成立しており，我が国の裁判所に本件の管轄を認めることができる。

（被告の主張）

本件B号債及び本件C号債の償還債務を主債務とする被告の保証には，金融公社法4条(6)項に基づく保証（法定保証）と，被告を当事者とする保証の要項に従った保証契約の二つを観念することができるところ，被告が法定保証に基づき保証債務を負担することを争うものではないが，保証契約は成立していない。原告が証拠として提出したいずれの書面にも，被告あるいは被告大統領の署名がないのであって，これらの証拠からは保証契約が締結された事実を認めることができない。

保証契約が存在しない以上，本件B号債及び本件C号債に関する保証の要



項に規定された，東京地方裁判所を管轄裁判所とする旨の合意も存在しない

のであるから，原告の訴えについて，我が国の裁判所に裁判管轄を認めるこ

とができない。

(4) 争点(4)（第２分類，第３分類社債についての消滅時効の成否）について

　ア　第２分類社債について

　（被告の主張）

　（ア）民法所定の消滅時効期間は１０年であり，債券買受契約証書（甲１，

　　　甲３）にも，本件Ｂ号債及び本件Ｃ号債に基づく償還請求権の消滅時効

　　　期間を１０年とする旨規定されているところ，上記償還請求権の消滅時

　　　効の起算点は，約定の償還日（前提事実等(2)ウ及び(3)ウ約定の償還日）

　　　であるから，すべての償還債務につき，平成１７年５月３０日の経過を

　　　もって，１０年の消滅時効期間が満了している。

　（イ）被告は，平成２２年９月６日の本件口頭弁論期日において，保証人と

　　　して，主債務である第２分類社債に基づく償還債務につき，消滅時効を

　　　援用した。

　（ウ）第２分類社債は，商人であるケミカル信託銀行株式会社が発行時に買

　　　い受けたものであるから，主債務の消滅時効期間が１０年であったとし

　　　ても，被告との間で成立した保証契約に基づく債務の消滅時効期間につ

　　　いては，商法５２２条が適用され，５年となる。

　（エ）被告は，平成２２年９月６日の本件口頭弁論期日において，ケミカル

　　　信託銀行株式会社との間の保証契約に基づく保証債務につき，消滅時効

　　　を援用した。

　（原告の主張）

　（ア）平成７年訴訟及び平成１１年訴訟において，公社に対する請求を認容

　　　する判決が確定したことにより，公社に対する社債償還請求権の消滅時

　　　効期間は，判決確定の時から１０年となった。



これを受けて，被告に対する保証債務履行請求権も，判決確定のとき
から１０年の消滅時効期間に服することとなった。

平成７年訴訟及び平成１１年訴訟の判決のうち，最も早く確定したと
考えられるのは平成７年訴訟の高等裁判所における判決であり，この判
決が言い渡されたのは，平成１４年３月２９日であるところ，本件訴訟
は平成２１年４月２８日に提起されたのであるから，第２分類社債に基
づく償還請求権及びこれを主債務とする保証契約に基づく保証債務履行
請求権の消滅時効が，期間満了に先立って中断した。

(イ)　第２分類社債の引受人が商人であったとしても，保証債務の附従性か
ら，主債務である償還債務と保証契約に基づく保証債務の消滅時効期間
は，当然に一致するものであるし，債券の買受人ごとに保証債務履行請
求権の消滅時効期間が異なるとすることは，債券の流通性にかんがみて
明らかに不適切であるから，このような償還債務の保証債務について，
商法５２２条が適用される余地はない。

イ　第３分類社債について

被告は，第３分類社債に基づく償還請求権とこれを主債務とする保証契
約に基づく保証債務履行請求権についても，いずれも，遅くとも平成１７
年５月３０日の経過をもって消滅時効期間が満了していると主張し，平成
２２年９月６日の本件口頭弁論期日において，主債務及び保証債務の消滅
時効を援用した。

第３　争点に対する判断

１　争点(1)（第１分類社債に係る請求についての訴えの利益）について

被告は，第１分類社債に基づく合計２億円の償還債務を主債務とする保証契
約に基づく保証債務の履行請求については，平成１２年判決において，請求を
認容する判決が確定している以上，クレッシュの承継人である原告の上記請求
は，訴えの利益を欠くと主張する。

　しかし，時効中断の必要があるときは重ねて給付の訴えを提起することがで
きると解すべきところ（大審院昭和６年(オ)第８９０号同年１１月２４日第五民
事部判決・大審院民事判例集１０巻１２号１０９６頁参照），本件訴えが提起
された平成２１年４月２８日では，平成１２年訴訟の判決が確定した平成１３
年７月２５日から，約７年９か月が経過しているにすぎなかったが，本件口頭
弁論終結日では上記判決確定日から既に１０年が経過しているのであるから，
原告には，本件訴訟により時効中断の効果を得る必要があると認められる。

　したがって，上記請求部分には訴えの利益が認められ，被告の上記主張は理
由がない。

２　争点(2)（第２分類社債に係る請求についての訴え却下判決の既判力との抵触）
について

ア　クレッシュが提起した平成７年訴訟及び平成１１年訴訟のうち，被告に対
して，第２分類社債に基づく償還債務を主債務とする保証契約に基づく保証
債務の履行を求める請求については，被告の主権免除を理由に，訴えを却下
する判決が言い渡され，いずれの判決も確定している（前提事実(6)ア，イ）。

　本件訴えのうち，第２分類社債に基づく償還債務を主債務とする保証債務
の履行を求める部分の訴訟物は，平成７年訴訟及び平成１１年訴訟における
訴訟物と同一である（乙１ないし乙４）から，上記訴訟の口頭弁論終結後の
承継人である原告は，平成７年訴訟及び平成１１年訴訟における確定判決の
既判力の効力を受ける（民訴法１１５条１項３号）。

イ　そこで，本件において，平成７年訴訟及び平成１１年訴訟の各口頭弁論終
結後に生じた事由により，上記請求部分の訴えの適法性が認められるかが問
題となる。原告は，平成１８年判決の言渡しにより上記請求部分の訴えが適
法とされるに至った事情を主張するところ，被告は，平成１８年判決による
解釈の変更が，平成７年訴訟及び平成１１年訴訟の判決の基礎となった事実
関係の変動には当たらないと主張している。




　　平成１８年判決は，同判決が制限免除主義を採用するに至った事情として，

①主権免除の範囲に関しては，かつてはいわゆる絶対免除主義が広く受け入

れられ，この考え方を内容とする国際慣習法が存在していたと解されるが，

国家の活動範囲の拡大等に伴い，いわゆる制限免除主義の考え方が徐々に広

がり，現在では多くの国において，この考え方に基づいて，外国国家に対す

る民事裁判権免除の範囲が制限がされるようになってきていること，②平成

１６年１２月２日に国際連合第５９回総会において採択された「国家及び国

家財産の裁判権免除に関する国際連合条約」も，制限免除主義を採用してい

ることを判示している。そうすると，平成７年訴訟及び平成１１年訴訟の判

決確定後，上記①，②の事情，すなわち，国家の活動範囲の拡大等に伴って，

多くの国において，外国国家に対する民事裁判権免除の範囲を制限する考え

方が広まってきていること，平成１６年１２月２日の上記国際連合総会での

条約の採択がされたこと等の事実関係の変動があり，これを前提として，最

高裁判所は，平成１８年判決において，主権免除に関する解釈の変更を行っ

たものということができるのであって，このような事実関係の変動を受けた

平成１８年判決の言渡しは，平成７年訴訟及び平成１１年訴訟の判決との関

係では，口頭弁論終結後に生じた事由に当たるというべきである。これと異

なる見解に立った被告の上記主張は理由がない。

ウ　以上を前提として，制限免除主義に従い，第２分類社債に係る請求につい

て主権免除が認められるかどうかを判断すると，本件における被告による本

件Ｂ号債及び本件Ｃ号債の保証は，私人の経済活動において行われる保証と

何ら異なるものでないから，法定保証に基づくものか，保証の要項に従った

保証契約に基づくものであるかにかかわらず，外国国家による私法的な行為

に該当することは明らかである。そして，我が国による民事裁判権の行使が

被告の主権を侵害するおそれがあるなどの特段の事情の存在を認めることも

できない。

　　したがって，上記請求について，被告に主権免除を認めることはできず，

上記請求に係る訴えは適法である。

　　なお，被告は，上記請求の適法性を争う方法としては，再審の手続によら

なければならないと主張するが，以上によれば，原告は，平成7年訴訟及び

平成11年訴訟の口頭弁論終結後に生じた事由を主張しているから，原告の

主張は，上記各訴訟の確定判決の既判力と抵触するものではなく，再審を経

なければ上記請求の適法性を主張できないというものでもない。

3　争点(3)（第2分類，第3分類社債に係る請求についての我が国の国際裁判管

　轄の有無）について

(1)　本件B号債の発行と国際裁判管轄の合意について

　ア　前提事実，証拠（甲1）及び弁論の全趣旨によれば，本件B号債発行時

　　の買受人であったケミカル信託銀行株式会社は，同債券の発行された19

　　88年（昭和63年）5月31日に先立つ同月23日に，公社との間で，

　　債券買受契約証書（甲1）を締結したことが認められる。そして，本件B

　　号債は，上記債券買受契約証書において予定されていたとおり，同月31

　　日に発行され，公社はこれに基づく債務を負った（争いがない）。

　イ　上記債券買受契約証書（甲1）には，次の(ア)ないし(カ)の条項があり，そ

　　の別紙には，次の(キ)ないし(コ)の条項がある。

　　(ア)　1条1項第1文

　　　　公社は，大要，本契約に添付した別紙1，3及び4記載の様式の債券

　　　の要項，債券及び利札による被告保証B号円貨債券（1988）元本総

　　　額40億円の発行を正当に承認し，かつ，その発行を予定している。

　　(イ)　1条2項

　　　　本債券の元利金（額面超過金を含む。）及び本債券に関し支払われる

　　　べきその他の金員の支払は，被告により，改正済の金融公社法第4条第

　　　(6)項に基づいて保証され，またかかる支払は大要本契約証書に添付の別



－ 15 －

紙2に記載の保証の要項に従い，被告により追加的に保証される。かかる保証を以下「保証」という。

㋑　2条2項第4段落

払込期日において，保証並びに公社による本契約の署名及び交付，本契約に基づく本債券の発行及び売渡し並びにそれらに基づく義務の履行に関し必要な被告政府当局，政府機関，その下位機関又は行政区画のすべての承認，認可，同意及び許可が適法に取得され，かつ，完全な効力を有している。

㋒　4条1項第2文

本買受人が買い受ける本債券の発行価額の総額が本契約第4条第2項の規定に従い公社に対し支払われることを条件として，公社は1988年（昭和63年）5月31日（以下「払込期日」という。）に本債券を発行するものとする。

㋓　4条2項第1文

払込期日の午後2時（日本時間）までに，本買受人は公社に対し本買受人が買受けた本債券の発行価額の総額を支払うものとする。

㋔　5条1項

本買受人が払込期日に買受ける元本額の本債券を買い受け，かつ，その代金の支払をなす義務は，本契約第2条の公社による表明・保証が正確であり，かつ，それらが遵守されていること及び払込期日以前において下記の条件［略］が成就することを停止条件とする。

㋕　別紙1「債券の要項」第5条

本債券の元利金（額面超過金を含む。）及び本債券に関し支払われるべきその他のすべての金員の支払は，被告により，改正済の金融公社法第4条第(6)項に基づいて保証され，また，かかる支払は，保証の要項に従い，被告により，追加的に保証される。



(ク)　別紙２「保証の要項」１条

本保証の要項は，公社が発行する本件Ｂ号債に対する被告による保証
にこれを適用する。

被告は，本件Ｂ号債の元利金及び本債券の要項に従って支払われるべ
きその他の金員の満期またはその他の支払期日における公社による確実
な支払を本債券の債権者に対し，無条件かつ取消不能の形で保証する。

(ケ)　別紙２「保証の要項」７条

被告による本保証の授権を除き，本保証（本要項を含む。）並びに本
保証に基づいて生じる本債券の債権者及び利札の所持人並びに銀行を含
む関係各当事者の一切の権利義務は，すべて日本国の法律の定めるとこ
ろに従うものとする。

(コ)　別紙２「保証の要項」９条第１文

被告に対する本保証（本要項を含む。）にかかるすべての訴訟は，東
京地方裁判所及び日本法上同裁判所からの上訴を審理する権限を有する
裁判所に提起することができるものとし，被告はかかるすべての訴訟に
つきその管轄に明示的かつ取消不能の形でここに服する。

ウ　上記債券買受契約証書（甲１）の別紙３は，被告がする保証に係る保証
証書の書式である。その本文には，被告は，法律及び１９８８年（昭和６
３年）５月１８日付被告内閣決定に基づき，保証の要項に従い，本債券の
元金（額面超過金を含む。）及び利息並びに債券の要項に従って支払われ
るべきその他の金員の期日における確実な支払を無条件かつ取消不能の形
で保証するとの記載があり，１９８８年５月３１日の日付の後に，被告大
統領の署名欄が設けられている（甲１）。

もっとも，本件訴訟においては，上記別紙３の書式に従った被告大統領
の署名のある保証証書は提出されていない。

エ　被告は，保証契約の成立を争い，上記要項に規定された国際裁判管轄の



合意の成立を否認する。

　しかしながら，上記アによれば，公社が本件B号債に関する債券買受契約を締結した当時，本件B号債に関し，被告による別紙２記載の保証要項に従った追加的な保証が予定されており（１条２項），この追加的な保証に関する被告内閣の決定等の必要な手続は既に完了していた（２条２項第４段落）ことがその契約書の記載からうかがわれる上，公社が，上記契約書において追加的な保証に必要となる被告の承認等を得ている旨を表明保証しており（２条２項第４段落），本件B号債の効力は，この表明保証が正確であり，かつ，それらが遵守されていること等を停止条件として生じるとされているところ（４条１項第２文），本件B号債は同証書において予定されていた発行期日において発行されており，本件全証拠によっても，その発行に支障があったことを認めることはできない。そして，これに加えて，本件訴訟に先行する平成１１年訴訟，平成１２年訴訟においては，被告の追加的な保証，ひいては，国際裁判管轄の合意の成否が争われていないこと（甲５，甲６，乙３，乙４）をも考慮すると，被告大統領の署名のある保証証書が現に提出されていないことを斟酌しても，被告は，本件B号債の発行に際し，上記別紙３の書式により，上記別紙２の保証の要項に従った追加的な保証を行ったことが推認され，本件全証拠によっても，これを覆すに足りない。

　そうすると，東京地方裁判所は，上記別紙２「保証の要項」９条第１文により，本件B号債の保証に係る訴訟について，管轄権を有すると認められる。

(2)　本件C号債の発行と国際裁判管轄の合意について

　ア　本件C号債については，本件C号債について債券買受契約を締結する旨記載された１９８９年（平成元年）７月２１日付けの債券買受契約証書（甲３）が存在する。この甲３には，買受人及び公社の署名がないが，被告が




- 18 -

甲３の成立及び債券買受契約の成立を争っていないこと，後記イのとおり
若干の変更があるほか，甲３の記載内容は甲１と同様であり，本件Ｂ号債
とほぼ同一の内容で本件Ｃ号債の発行が企画されたと認められること等に
照らし，上記変更のほかは本件Ｂ号債の債権買受契約証書（別紙１ないし
３を含む）と同一の条項により，債券買受契約が成立したことを認めるこ
とができる。

　本件Ｃ号債は，上記債券買受契約証書において記載された発行期日のと
おり，１９８９年（平成元年）７月２７日に発行され，公社はこれに基づ
く債務を負った（争いがない）。

イ　上記債券買受契約証書（甲３）には，㈠１条１項第１文のうち，「被告
保証Ｂ号円貨債券（１９８８）元本総額４０億円」を「被告保証Ｃ号円貨
債券（１９８９）元本総額５０億円」に改めること，㈡４条１項第２文の
うち「１９８８年（昭和６３年）５月３１日」を「１９８９年（平成元年）
７月２７日」に改めること，㈢別紙３のうち，「法律及び１９８８年（昭
和６３年）５月１８日付被告内閣決定」を「法及び１９８９年（平成元年）
５月５日及び７月１１日付被告内閣決定」に改めることのほかは，上記本
件Ｂ号債に関する債券買受契約証書と同じ内容が記載されている。

ウ　本件Ｃ号債に関しても，被告は，追加保証の成立，ひいては，国際裁判
管轄の合意の成立を否認する。

　しかしながら，本件Ｃ号債についても，上記アのとおり，債券買受契約
の成立を認めることができ，本件Ｂ号債と同様の条項のある債券買受契約
証書が存在していることに加え，被告は，本件Ｃ号債に基づく償還債務を
主債務とする保証債務の履行を求められた平成７年訴訟において，保証契
約の存在を争っておらず，争点となった主権免除の主張に関しても，保証
契約が成立していることを前提とした主張をしている（乙２）ことに照ら
せば，被告が，本件Ｃ号債の償還債務についても，上記証書において予定




されたとおり，同証書の別紙２「保証の要項」に従った追加的な保証をし
たと推認することができ，本件全証拠によっても，これを覆すに足りる証
拠はない。

　そうすると，東京地方裁判所は，上記別紙２「保証の要項」９条第１文
により，本件Ｃ号債の保証に係る訴訟についても，管轄権を有すると認め
られる。

４　争点(4)（第２分類，第３分類社債についての消滅時効の成否）について

(1)　まず，第３分類社債に係る請求について判断する。

　本件Ｂ号債及び本件Ｃ号債に基づく権利義務及び被告による追加的保証の
準拠法は，日本法である（甲１，甲３）。この点は，特に当事者が争うとこ
ろではない。

　前提事実によれば，本件Ｂ号債の償還日は，一番遅いもので１９９５年（平
成７年）５月３１日であり，本件Ｃ号債の償還日は，一番遅いもので１９９
５年（平成７年）４月２７日であるから，いずれの債券も，本件訴訟が提起
された平成２１年４月２８日より前の時点で，償還日から起算して１０年を
経過したと認められる。

　被告が，平成２２年９月６日の本件第３回口頭弁論において，第３分類社
債に基づく償還請求権及びこれを主債務とする保証債務履行請求権について
消滅時効を援用したことは，当裁判所に顕著である。

　第３分類社債に係る請求については，消滅時効の中断等の主張はない。

　以上によれば，第３分類社債に基づく５２億円の償還請求権については，
消滅時効が完成したと認めることができ，被告に対する保証債務履行請求権
の消滅時効についても完成したと認めることができるから，被告の消滅時効
の抗弁には理由がある。

(2)　第２分類社債に係る請求について判断する。

　ア　被告は，まず，第３分類社債に係る請求と同様に，債券の償還日を起算

点とし，すべての償還債務につき，平成１７年５月３０日の経過により１

０年の消滅時効期間が満了していると主張し，主債務である第２分類社債

に基づく償還債務につき，消滅時効を援用している。

　しかしながら，平成７年訴訟及び平成１１年訴訟において，第２分類社

債に基づく公社に対する償還請求を認容する判決が確定しているところ，

確定判決によって確定した権利の時効期間は１０年となり（民法１７４条

の２），この時効の起算点は，判決確定の日となる。

　そして，平成７年訴訟における控訴審判決の言渡期日が平成１４年３月

２９日であり，平成１１年訴訟における控訴審判決の言渡期日が平成１４

年６月２６日であること（前提事実(6)ア，イ）からすると，これらの判決

が確定した日から本件訴えが提起された平成２１年４月２８日までの間に

１０年が経過していないから，主債務について消滅時効の完成をいう被告

の上記主張は，理由がない。

イ　被告は，第２分類社債が，商人であるケミカル信託銀行株式会社により

　引き受けられた社債であることから，主債務の消滅時効が１０年であった

　としても，上記会社と被告共和国の間で成立した保証については，商法５

　２２条が適用され，その消滅時効は５年であると主張し，保証債務につい

　ての時効を援用する。

　　しかしながら，上記のとおり，平成７年訴訟及び平成１１年訴訟におい

　て，第２分類社債に基づく公社に対する償還請求を認容する判決が確定し

　ているところ，確定判決によって確定した権利の時効期間は１０年となり

　（民法１７４条の２），同条の適用によって主たる債務者の債務の時効期

　間が１０年となったときは，保証人の債務の消滅時効期間も同じく１０年

　となる（最高裁昭和４３年(オ)第５１９号同年１０月１７日第一小法廷判

　決・裁判集民事９２号６０１頁）。そうすると，第２分類社債に係る公社

　の債務を主債務とする被告の保証債務の消滅時効期間は，主たる債務と同



　　様に１０年となっているのであって，これが５年であるとする被告の主張
　　も理由がない。

　ウ　以上によれば，被告の保証債務について期間５年の消滅時効をいう被告
　　の上記主張も，理由がない。

第４　結論

　　以上によれば，原告の請求は，①第１分類社債と第２分類社債の額面金額の
　合計である１３億円（本件Ｂ号債１０１ないし１２０及び１３１ないし１４０
　の額面金額がいずれも１０００万円，本件Ｃ号債１５０１ないし２５００の額
　面金額がいずれも１００万円。），②元金のうち本件Ｂ号債の額面金額の合計
　である３億円に対する平成７年６月１日から支払済みまで年６．５％の割合に
　よる遅延損害金，③元金のうち本件Ｃ号債の額面金額の合計である１０億円に
　対する平成６年７月２８日から支払済みまで年７％の割合による利息及び遅延
　損害金の支払を求める限度で理由があるからこれを認容し，その余は理由がな
　いのでこれを棄却することとして，主文のとおり判決する。なお，仮執行宣言
　は，事案に照らし相当でないから，これを付さない。


　　東京地方裁判所民事第４部


　　　　　　裁判長裁判官　　　太　　田　　晃　　詳


　　　　　　裁判官　　　池　　田　　知　　子


　　　　　　裁判官　　　竹　　内　　幸　　伸



これは正本である。

平成２３年 *10* 月 *28* 日

東京地方裁判所民事第４部

裁判所書記官　伊　藤　直　也 

# NOTARIAL  CERTIFICATE

This is to certify that Shinya Tago signed the attached document in my presence.

Dated this 31st day of January, 2012.

Yukio Goto

NOTARY

3-1, Marunouchi 3-chome,

Chiyoda-ku, Tokyo

ATTACHED TO

Tokyo Legal Affairs Bureau



平成２４年登簿第　0177　号

田子真也は、当職の面前で、添付書面に自ら署名した。

よって、これを認証する。

　平成２４年１月３１日、本職役場において

　東京都千代田区丸の内三丁目３番１号

　　東京法務局所属

　　　公証人　　五島幸雄

# EXHIBIT B

(Translation)

REPUBLIC OF NAURU FINANCE CORPORATION

JAPANESE YEN BONDS - SERIES B (1988)

GUARANTEED BY THE REPUBLIC OF NAURU

BOND PURCHASE AGREEMENT



This Bond Purchase Agreement ("Agreement") is entered into in Tokyo on May 23, 1988 between Republic of Nauru Finance Corporation ("Ronfin") and the other party to this Agreement set forth in the signature column at the foot of this Agreement (the "Purchaser").

1.   The Bonds.

1.1   Ronfin has duly authorized and proposes to issue ¥4,000,000,000 aggregate principal amount of Japanese Yen Bonds - Series B (1988) (the "Bonds") Guaranteed by the Republic of Nauru (the "Republic"), the conditions of Bonds (the "Conditions of Bonds"), the Bonds and the interest coupons to be substantially in the forms of Annexes 1, 3 and 4 attached hereto.  The term "Bonds" as used in this Agreement shall include the Bonds delivered to the Purchaser pursuant to this Agreement and to the purchasers thereof pursuant to the other Agreements referred to in Section 2.3 hereof and each Bond delivered in substitution or exchange therefor and where applicable shall include the singular number as well as the plural.

1.2   The payment of principal (including premium, if any) of, and interest on, the Bonds and all other moneys payable in relation to the Bonds is guaranteed by the Republic by virtue of Section 4(6) of the Republic of Nauru Finance Corporation Act 1972, as amended, (the "Act") and such payment is additionally guaranteed by the Republic in accordance with the conditions of guarantee (the "Conditions of Guarantee") substantially in the form of Annex 2 attached hereto.  Such guarantees shall hereinafter be referred to as the "Guarantee".

2.   Certain Representations and Warranties by Ronfin.

Ronfin hereby represents and warrants that:

2.1   Placement Memorandum.  Ronfin has furnished to the Purchaser a copy of its Placement Memorandum dated May 1988. Such Placement Memorandum contains the most recent audited accounts of Ronfin and other pertinent information with respect to Ronfin's financial and operating conditions and economic, monetary, financial and other conditions of the Republic and the information contained in such Placement Memorandum is accurate in all material respects and does not include any

- 2 -

untrue statement of any material fact or omit to state any materi
fact the omission of which would make the statements therein
misleading, in connection with the private placement of the
Bonds.  Subsequent to the respective dates as of which
information is given in such Placement Memorandum, there has
been no material change in the liabilities (direct or
contingent) or obligations of Ronfin and no material adverse
change (financial, economic, political or other) in Ronfin's and
the Republic's conditions, except as contemplated in said Placeme
Memorandum or as disclosed to the Purchaser in writing; and ·Ronfj
is not in default under any of its indebtedness.

      2.2  Legality.  On the Closing Date (as defined below),
the Bonds (i) will be duly and validly authorized, executed,
issued and delivered by Ronfin and will constitute, and all t⁺ɘ
covenants therein contained will constitute, the valid,
legally binding, direct, unconditional and general obligations
of Ronfin in accordance with their terms; and (ii) will rank <u>parj</u>
<u>passu</u>, without any preference one above the other by reasor ⸴f
priority of date of issue, currency of payment or otherwise,
with all other present and future unsecured indebtedness of
Ronfin.

      The execution and delivery of this Agreement and the
issuance and sale of the Bonds pursuant hereto have been duly
authorized by the Board of Directors of Ronfin on May 18, 1988,
and this Agreement constitutes a valid and legally binding
agreement of Ronfin.

      Neither the execution and delivery of this Agreement or
the Bonds by Ronfin, nor the performance by it of any of its
obligations hereunder or thereunder, nor the compliance by it
with the terms and conditions hereof or thereof, will violate,
conflict with or result in any breach of any terms, conditior
or provisions of, or constitute a default under, any law,
administrative regulation or court judgment or decree applicable
to Ronfin or pursuant to which it was organized or any agreement
or instrument to which Ronfin is a party or by which it or ˏ ɪy oɟ
its property is bound, or result in the creation or impositⅰon
of.any lien, pledge or other charge of any nature whatsoever
on.any of the properties or assets of Ronfin.

- 3 -

On the Closing Date, all authorizations, approvals, consents and permissions of governmental bodies and authorities of the Republic, or of any agency, instrumentality or political subdivision thereof (including the Decisions passed by the Cabinet of the Republic on May 18, 1988 in relation to the Cabinet authorization of the Guarantee by the Republic and the consent of the Cabinet to the issue of the Bonds by Ronfin pursuant to Section 4(6) and Section 19(3) of the Act, respectively), required to be obtained in connection with the Guarantee and the execution and delivery by Ronfin of this Agreement and the issuance and sale by it of the Bonds pursuant hereto and the performance by Ronfin of its obligations hereunder and under the Bonds will have been duly obtained and will be in full force and effect.

2.3  Private Placement.  Ronfin represents and warrants that, concurrently with the execution and delivery of this Agreement, Ronfin is executing and delivering agreements identical hereto (except as to the aggregate principal amount of Bonds to be purchased) with each of the other purchasers listed in Annex 5 attached hereto under which each of said other purchasers agrees to purchase from Ronfin the aggregate principal amount of Bonds set forth opposite such purchaser's name in Annex 5.  Each such purchaser makes the same representations as those made by the Purchaser in Section 3 hereof.  The purchase made by each purchaser is to be a separate and several purchase from Ronfin by such purchaser, and the sale and delivery of Bonds to each purchaser is to be a separate and several sale and delivery by Ronfin to such purchaser.  This Agreement and said other agreements are sometimes collectively referred to herein as the "Agreements".  Ronfin's agents in connection with the arrangement of the issuance of the Bonds have been Yamaichi Securities Company, Limited, The Saitama Bank, Ltd., Daihyaku Mutual Life Insurance Company, The Nippon Kangyo Kakumaru Securities Co., Ltd. and New Japan Securities Co., Ltd. which are responsible for the placement of the Bonds in Japan.

Ronfin has not, directly or through any agent, offered any of the Bonds or any substantially similar securities for sale to, or solicited any offers to buy any of them from, or otherwise approached or negotiated in respect thereof with, any person or persons other than not more than forty-nine (49) institutional investors including the Purchaser and other purchasers set forth in Annex 5 hereto.

3.  Representations by the Purchaser.

3.1  (i)  The Purchaser acknowledges that no registration under Article 4 of the Securities and Exchange Law of Japan (Law No. 25, 1948) including amendments thereto (collectively the "Law") has been filed by Ronfin with respect to the Bonds; and

- 4 -

(ii)   The Purchaser warrants and covenants to Ronfin that
the Purchaser's purchase of the Bond or Bonds being purchased
by the Purchaser has been made for investment purposes for
the Purchaser's own account or a trust account and that the
Purchaser will not sell such Bond or Bonds at such time or
in such manner as may be construed as an offering or sale to
the public of the Bonds the registration for which is required
under the Law.

4.   Sale and Purchase of Bonds.

4.1  Ronfin hereby agrees to issue and sell to the Purchase
and, subject to the terms and conditions herein set forth and
in reliance on the representations, warranties and agreements of
Ronfin herein contained, the Purchaser agrees to purchase fr
Ronfin, at an issue price of 100% of the principal amount
thereof, the principal amount of the Bond or Bonds set forth
opposite the Purchaser's name under the heading "Principal Amoun
of Bonds Purchased" in Annex 5 hereto.   The Bond or Bonds   to
be purchased by the Purchaser shall be issued by Ronfin on May
31, 1988 (the "Closing Date") against payment by the Purchaser
of the entire amount of the issue price thereof to Ronfin in
accordance with the provisions of Section 4.2 hereof.

4.2  Before 14:00 hours, Japan time, on the Closing Date th
Purchaser shall pay to Ronfin the entire amount of the issue
price of the Bond or Bonds to be purchased by the Purchaser.
Such payment shall be made in immediately available funds in Yen
by transfer of the amount to the account of Ronfin established
for this purpose with the Tokyo Office of The Saitama Bank, Ltd.

4.3  As soon as practicable after the issue of the Bonds
pursuant to Section 4.1 hereof, Ronfin shall deliver at the
Tokyo Office of The Saitama Bank, Ltd. a Bond certificate or
Bond certificates duly executed on behalf of Ronfin, dated
the Closing Date, and in an aggregate principal amount equal
to the principal amount of the Bond or Bonds being purchased
by the Purchaser.

At the option of the Purchaser, the Bond or Bonds to be
purchased by the Purchaser may be recorded under the Law on
Recording of Bonds, etc. of Japan (Law No.11, 1942) at the
expense of Ronfin, in which event a recording receipt or
recording receipts shall be delivered as soon as practicable
thereafter in lieu of a Bond certificate or Bond certificates.

- 5 -

5.   Conditions.

5.1  The Purchaser's obligation to purchase and pay for the principal amount of the Bonds being purchased by the Purchaser on the Closing Date shall be subject to the accuracy of and compliance with the representations and warranties by Ronfin contained in Section 2 hereof and to the satisfaction, at or prior to the Closing Date, of the following further conditions:

(i)  Opinion of the Secretary for Justice or the senior legal officer of the Department of Justice of the Republic.

Ronfin shall have furnished to the Purchaser the opinion, written in English, of the Secretary for Justice or the senior legal officer of the Department of Justice of the Republic, (which opinion shall be dated the Closing Date and may rely upon the opinion of Messrs. Aoki, Christensen & Nomoto mentioned below as to matters of the laws of Japan) to the effect that:

(a)  The Republic is the sole corporator of Ronfin; Ronfin is validly existing as a body corporate, organized and existing under the laws of the Republic, with full power and authority (corporate and other) to conduct its operations as presently conducted and as described in its Placement Memorandum referred to in Section 2.1 hereof, to enter into this Agreement and to issue the Bonds;

(b)  The Bonds have been duly and validly authorized and assuming the due and valid execution, issuance and delivery of the Bonds under the laws of Japan, the Bonds have been duly and validly executed, issued and delivered by Ronfin; the Bonds, and all the covenants therein contained, constitute the valid, legally binding, direct, unconditional, irrevocable and general obligations of Ronfin in accordance with their terms; and the Bonds rank pari passu, without any preference one above the other by reason of priority of date of issue, currency of payment or otherwise, with all other present and future unsecured indebtedness of Ronfin;

- 6 -

(c)   The Agreements have been duly authorized, executed and delivered by Ronfin and constitute valid and legally binding obligations of Ronfin;

(d)   Neither the execution and delivery of the Agreements or the Bonds by Ronfin, nor the performance by it of any of its obligations thereunder, nor the compliance by it with the terms and conditions thereof, will violate, conflict with or result in any breach of any terms, conditions or provisions of, or constitute a default under, any law, administrative regulation or court judgment or decree applicable to Ronfin or pursuant to which it was organized or any agreement or instrument to which Ronfin is a party or by which it or any of its property is bound, or result in the creation or imposition of any lien, pledge or other charge of any nature whatsoever on any of the properties or assets of Ronfin;

(e)   Ronfin has obtained the prior written consent of the Cabinet of the Republic authorizing the issuance of the Bonds; such consent remains in full force and effect on the Closing Date; and no other authorization, approval, consent or permission of any governmental body or authority of the Republic or the Commonwealth of Australia, or of any agency, instrumentality or political subdivision thereof, is required to be obtained in connection with the execution or delivery by Ronfin of the Agreements or the issuance or sale by it of the Bonds pursuant thereto or the performance by Ronfin of its obligations under the Agreements or the Bonds;

(f)   Under the laws and regulations of the Republic or the Commonwealth of Australia or any political subdivision thereof now in effect, no authorization, approval, consent or permission of any governmental body or authority of the Republic or the Commonwealth of Australia, or of any agency, instrumentality or political subdivision thereof, is required to be obtained by Ronfin to purchase Yen in exchange for Australian Dollars and to make payment of the principal (including premium, if any) of and interest on the Bonds to the holders thereof in accordance with the terms thereof;

- 7 -

(g)   There are no stamp, documentary or other similar taxes or duties assessable or payable in the Republic; the Agreements and the Bonds are admissible into evidence in the courts of the Republic in the form in which they have been delivered to the purchasers of the Bonds;

(h)   Any action by any purchaser based upon the Agreements and any action by a holder of a Bond based upon such Bond may be instituted against Ronfin in the Tokyo District Court in Japan and any Japanese court competent under Japanese law to hear appeals from such court or in any court of competent jurisdiction located in the Republic, and under the laws of the Republic and of all relevant political subdivisions thereof, Ronfin would not be entitled to plead, or cause to be pleaded on its behalf, any immunity from the jurisdiction of any such court in any such action;

(i)   The payment of principal (including premium, if any) of, and interest on, the Bonds and all other moneys payable in relation to the Bonds is guaranteed by the Republic by virtue of Section 4(6) of the Act and such payment is additionally guaranteed by the Republic in accordance with the Conditions of Guarantee; when the Bonds shall have been duly issued in accordance with the Agreements and the Conditions of Bonds, the Guarantee, insofar as all matters of Nauruan law are concerned, will constitute legally valid and binding unsecured obligations of the Republic ranking pari passu with all other unsecured obligations of the Republic for money borrowed and with all of its other unsecured guarantees or indemnities for obligations of others for money borrowed irrespective of date of creation thereof, the currency of payment or otherwise;

(j)   Neither the existence of the Guarantee nor the performance by the Republic of the Guarantee will violate, or will be inconsistent with, any provisions of the constitution, any statutes or other laws or regulations of the Republic or any agreements to which the Republic is a party or by which the Republic is bound, or will constitute a breach of any of the liabilities or obligations of the Republic arising thereunder;

- 8 -

(k)  The Republic will not have a right to claim
immunity based on sovereignty before the courts of
competent jurisdiction in Japan or the Republic in respect
of the obligation arising from the Guarantee;

(1)  If a Bondholder were to take action against
Ronfin or the Republic in Japan to recover the principal
(including premium, if any) of, or interest on, the Bonds
where jurisdiction over Ronfin or the Republic was obtained
by submission to jurisdiction and service of process in
accordance with Section 8.2 of the Agreements or Condition
28 of the Conditions of Bonds or Condition 9 of the
Conditions of Guarantee and were to obtain a final and
conclusive judgement, proceedings could then be brought
in the Supreme Court of the Republic or in any other cou- ·
of competent jurisdiction.  A judgement of that Nauruan
court founded on the Japanese judgement could be obtained
without examining the merits of the Japanese judgement,
provided the Cabinet of the Republic was satisfied tha'
substantial reciprocity of treatment will be assured w_.h
respect to the enforcement in Japan of judgements given in
the Supreme Court of the Republic, and provided further
the Nauruan court was satisfied in respect of the following
principal requirements:  Ronfin or the Republic had
waived its immunity, on the grounds of sovereign immunity
or otherwise, from suit in the actual Japanese proceedings;
the judgement had not been obtained by fraud; and enforcemer
of the judgement would not be contrary to public policy
in the Republic;

- 9 -

(m)   No litigation, arbitration or administrative proceedings are presently current or pending or to the knowledge of Ronfin, threatened, against Ronfin or the Republic which might have a material adverse effect on Ronfin's or the Republic's ability to perform its obligations under the Agreement, the Conditions of Bonds or the Conditions of Guarantee; and

(n)   The statements of a legal nature made under the heading "The Republic of Nauru Finance Corporation" and "The Republic of Nauru" set forth in the Placement Memorandum are correct as set forth therein.

Such opinion shall be accompanied by the texts of relevant provisions of the laws and decrees of the Republic and other relevant documents, under which the issuance of the Bonds and the Guarantee are authorized.

(ii)   Opinion of Japanese Legal Counsel to the Purchasers.

The Purchaser shall have received the opinion of Messrs. Aoki, Christensen & Nomoto, as the purchasers' Japanese legal counsel in connection with the transactions contemplated by the Agreements, the Paying Agent Agreement referred to in subsection (v) of Section 5.1 hereof, the Recording Agency Agreement referred to in subsection (v) of Section 5.1 hereof, the Bonds and the Guarantee (which opinion shall be dated the Closing Date and may rely upon the opinion as mentioned in subsection (i) of Section 5.1 hereof as to matters of the laws of the Republic), as to the validity under the laws of Japan of the Agreements, the Paying Agent Agreement, the Recording Agency Agreement, the Bonds and the Guarantee and as to such other related matters as the purchasers may require; and Ronfin shall have furnished to the purchasers' legal counsel such documents (together with certified English translations thereof where appropriate) as they may reasonably request in connection with such matters.

- 10 -

(iii)  Correctness of Representations.

There has been no event rendering the representations and warranties by Ronfin contained in Section 2 hereof to be untrue or incorrect and they remain true and correct as at the Closing Date as though they had been given on the Closing Date.

(iv)  Prior Notification to Minister of Finance of Japan.

A notification and amendments thereto, if any, required under Japanese foreign exchange control laws and regulations shall have been filed with the Minister of Finance of Japan by Ronfin with respect to the issuance of the Bonds and a notice of the Minister of Finance of Japan authorizing the effecting of the transactions covered by the above notificati and amendments thereto, if any, shall have been issued by the Minister of Finance of Japan and such notice shall remain in full force and effect on the Closing Date.

(v)  The Paying Agent Agreement and the Recording Agency Agreement.

The Paying Agent Agreement and the Recording Agency Agreement shall have been executed by and between Ronfin and The Saitama Bank, Ltd. and shall be in full force and effect as of the Closing Date.

(vi)  Designation by the Competent Minister for Recording of the Bonds.

Designation of the Bonds as bonds to be recorded pursuant to the Ministerial Ordinance Concerning Enforcement of the Law on the Recording of Bonds, etc. (Ministry of Finance and Ministry of Justice Joint Ordinance No.1 of 1942) and designation of The Saitama Bank, Ltd. as the recording agency for the Bonds pursuant to the Ordinance Concerning Enforcement of the Law on the Recording of Bonds, etc. (Imperial Ordinance No.409 of 1942) have been obtained from the Minister of Justice and the Minister of Finance of Japan and notice to that effect has been published in the Official Gazette of Japan.

- 11 -

(vii)  Miscellaneous.

Ronfin shall have taken, on or prior to the Closing Date, all other action, if any, which the Agreements contemplate will be taken by it on or prior to the Closing Date.

5.2  Should any of the conditions in Section 5.1 hereof not have been satisfied prior to payment by the Purchaser pursuant to Section 4.2 hereof of the issue price of the Bond or Bonds being purchased by the Purchaser, the Purchaser may (but is not under obligation to) by telegraphic or telex notice (promptly confirmed in writing) to Ronfin forthwith terminate the Purchaser's commitment to purchase the Bonds unless prior thereto such condition shall have been satisfied or shall have been waived by the Purchaser in writing; thereupon, this Agreement shall forthwith terminate and have no further force and effect and the Purchaser shall be relieved from any of the Purchaser's obligations hereunder while Ronfin shall not be relieved from its obligations under subsection (i) of Section 6.1 hereof (except for fees payable to the agents named in Section 2.3 hereof).

5.3  Ronfin shall not be obligated to sell to the Purchaser the Bonds to be purchased by the Purchaser on the Closing Date unless the purchasers under all the Agreements purchase on the Closing Date the respective principal amounts of the Bonds they have agreed to purchase.

6.  Covenants of Ronfin.

6.1  Ronfin covenants and agrees that:

(i)  Ronfin will pay all costs and expenses incurred by it in connection with the transactions contemplated by the Agreements.  Ronfin will also pay fees and expenses of the agents named in Section 2.3 hereof in connection with the arrangement for the transactions contemplated by the Agreements and costs and expenses for preparing and printing the Placement Memorandum, the Agreements, the Paying Agent Agreement, the Recording Agency Agreement, the Bond certificates, interest coupons and other documents and fees and expenses of the legal counsel referred to in subsection (ii) of Section 5.1 hereof; and reasonable costs and expenses incurred by the Purchaser and the other purchasers under the other Agreements in connection with the transactions contemplated by the Agreements.

- 12 -

    (ii)  Ronfin will not offer or sell simultaneously in Japan any securities substantially similar to the Bonds under circumstances that would cause the offering or sale of the Bonds and such other securities, taken together, to be construed by the Japanese courts or the Minister of Finance of Japan as an offering or sale to the public of the bonds for which registration is required under the Law.

    (iii)  Ronfin will furnish to the Bank (as defined in the Conditions of Bonds) with sufficient copies for the Purchasers as soon as practicable (and in any event not later than six (6) months after the close of each financial year of Ronfin) of the audited annual report of Ronfin containing its balance sheet and statement of profit and loss and provide the Bank with such additional information as the Bank may from time to time reasonably require.

7.    Notices.

    7.1  Unless otherwise specifically provided, any notice or demand to be given to or served upon Ronfin or the Purchaser in connection herewith shall be deemed to have been duly given or served for all purposes (if sent by telex, promptly confirmed in writing sent by registered airmail, postage prepaid), if to Ronfin, addressed:

    if by airmail, to:

        Republic of Nauru Finance Corporation
        Government Offices,
        Yaren District,
        The Republic of Nauru
        Nauru Island
        Central Pacific

        Attention:  Chairman

    if by telex, to:  ZV33081 GOVNARU

or if to the Purchaser, to the Purchaser's address shown in Annex 5 hereto or, if any other address shall at any time be designated by a party hereto in writing to the other party, to such other address.  All such notice or demand shall be in the English language.

- 13 -

8.   Miscellaneous.

8.1   This Agreement shall be governed by and construed in accordance with the laws of Japan, except for matters relating to the authorization of this Agreement by Ronfin which shall be governed by the laws of the Republic.

8.2   Any action against Ronfin arising from or relating to this Agreement may be instituted in the Tokyo District Court and any Japanese court competent under Japanese law to hear appeals from such court, to the jurisdiction of which Ronfin hereby expressly, unconditionally and irrevocably submits. Any such action may also be instituted against Ronfin in any court in the Republic competent under the laws of the Republic to hear such action.  Ronfin (to the extent it has or may hereafter acquire immunity) hereby unconditionally and irrevocably waives, to the fullest extent permitted by applicable laws, any immunity, on the grounds of sovereign immunity or otherwise, from legal process (whether in respect of service of process, obtaining of a judgment, attachment, execution or otherwise) with respect to itself or its property or assets in respect of its obligations under this Agreement which may be instituted against it in any such court in Japan or in the Republic; Ronfin hereby appoints the Consul for Nauru in Japan as its authorized agent upon whom process may be served in any action arising from or relating to this Agreement that may be instituted in Japan; Ronfin hereby designates the Consulate of Nauru in Japan as of the date hereof at 2-6, Kasumigaseki 3-chome, Chiyoda-ku, Tokyo, Japan, as the address to receive such process; and Ronfin hereby undertakes to take, from time to time and so long as any of the Bonds shall remain outstanding, any and all action (including the execution and filing of any and all documents and instruments) that may be necessary to effect and to continue such appointment and designation in full force and effect.  If at any time the Consul for Nauru in Japan should, for any reason, be unwilling or unable to continue to act as such authorized agent, Ronfin shall immediately appoint, and it hereby undertakes to take any and all action that may be necessary to effect the appointment of, a successor authorized agent in Tokyo, Japan and Ronfin shall notify the Bondholders or cause the Bondholders to be notified of such successor agent.

- 14 -

8.3  All of the terms and provisions of this Agreement (including all covenants, agreements, representations and warranties) shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns including the holders from time to time of the Bonds, except that Ronfin may not assign or transfer its rights or obligations hereunder without the prior written consent of the purchasers.

8.4  Notwithstanding any investigation made by any purchaser, all covenants, agreements, representations and warranties made herein and in the Bonds shall survive the issuance and delivery of the Bonds and the payment therefor.

8.5  This Agreement shall be executed in two (2) counterparts in the Japanese language with a translation into the English language attached thereto.  In the event of a dispute or difference as to meaning or intent, the Japanese version shall prevail.

IN WITNESS WHEREOF, the parties hereto have caused their respective representatives to execute this Agreement in the place and on the date as hereinabove stated.

REPUBLIC OF NAURU FINANCE
CORPORATION

By _____

*Chemical Trust and
Banking Co., Ltd. (Japan)*

By _____

Annex 1

(Translation)

CONDITIONS OF BONDS

THESE CONDITIONS OF BONDS (the "Conditions of Bonds") shall
apply to the issue of REPUBLIC OF NAURU FINANCE CORPORATION
JAPANESE YEN BONDS - SERIES B (1988) (the "Bonds") GUARANTEED
BY THE REPUBLIC OF NAURU (the "Republic") pursuant to lawful
authorization by Republic of Nauru Finance Corporation ("Ronfin").

1.    The aggregate principal amount of the Bonds is
¥4,000,000,000.

2.    The Bonds are issued in the denomination of
¥10,000,000 each.  No Bonds shall be split into Bonds of a
smaller denomination or consolidated with any other Bonds.

3.    The Bonds shall bear interest at the rate of 6.5%
per annum.

4.    The Bonds are issued exclusively as bearer bonds
with interest coupons and shall not be exchangeable for
registered bonds.

5.    The payment of principal (including premium, if any)
of and interest on the Bonds and all other moneys payable in
relation to the Bonds is guaranteed by the Republic by virtue
of Section 4(6) of the Republic of Nauru Finance Corporation
Act 1972, as amended, and such payment is additionally guaranteed
by the Republic in accordance with the conditions of guarantee
(the "Conditions of Guarantee").  Such guarantees shall herein-
after be referred to as the "Guarantee".

6.    The period of extinctive prescription shall be ten
(10) years for the principal (including premium, if any) of
the Bonds and five (5) years for the interest on the Bonds.

7.    The Bond certificates and interest coupons shall
bear the facsimile signature of the Chairman of Ronfin.

8.    The Saitama Bank, Ltd. (the "Bank") shall act as
the recording agency for the Bonds.  The holders of the
Bonds (the "Bondholders") shall have the option to record
their Bonds at any time.  The recording of the Bonds at the
request of initial subscribers of the Bonds will be made at
the expense of Ronfin.  Otherwise, the recording of the Bonds
shall be made at the expense of the applicants therefor.  All
expenses for the preparation and delivery of Bond certificates
and interest coupons upon cancellation of the recording of
recorded Bonds shall be for the account of the applicants
therefor.

9.    The registration book for the Bonds (the "Registra-
tion Book") shall be prepared and maintained by the Bank on
behalf of Ronfin.

- 2 -

10.   Payments of principal (including premium, if any) of and interest on the Bonds will be made by Ronfin in lawful Japanese currency at the Tokyo Office of the Bank.

11.   With respect to the Bonds represented by Bond certificates, payment of principal (including premium, if any) shall be made upon the surrender of the relevant Bond certificates, and payment of interest shall be made upon surrender of the relevant interest coupon, except as otherwise provided in Condition 24.

With respect to the recorded Bonds, payment of principal (including premium, if any) shall be made upon surrender of the relevant payment voucher and the recording receipt, and payment of interest shall be made upon surrender of the relevant payment voucher.   The Bank shall confirm that each payment voucher surrendered bears the seal impression of the relevant Bondholder as registered with the Bank.

12.   The Bond certificate surrendered for redemption must be presented together with all unmatured interest coupons appertaining thereto.   The amount equivalent to the face amount of missing unmatured interest coupons shall be deducted from the principal; provided, however, that the holders of any such interest coupons may, upon surrender of such interest coupons within the extinctive prescription period of five (5) years from the date fixed for the redemption of the Bonds to which such interest coupons appertain, receive the amount so deducted.

13.   Upon making payment of principal (including premium, if any) and interest, the Bank shall make proper entries in the Registration Book.

14.   The Bonds shall bear interest from June 1, 1988, payable semi-annually in arrears on May 31 and November 30 of each year commencing on November 30, 1988 in respect of the six months to and including the relevant interest payment date.

15.   The Bonds shall cease to bear interest after the date on which they become due for redemption; provided, however, that should Ronfin fail to redeem the Bonds when due, interest, computed on the basis of a 365-day year at the rate specified in Condition 3, shall be paid for the actual number of days of the period until the actual redemption of the Bonds.   Such period, however, shall not exceed seven (7) bank business days in Japan commencing on the date on which a public notice has been given or a notice by other means has been dispatched to each of the Bondholders by the Bank on behalf of Ronfin to the effect that the necessary funds for the redemption have been received by the Bank.   The Bank shall give or dispatch such notice within fourteen (14) bank business days in Japan after its receipt of such funds.

- 3 -

16.   All payments of principal (including premium, if any)
of and interest on the Bonds will be made without deduction or
withholding for or on account of any present or future taxes or
duties of whatsoever nature imposed or levied by the Republic
or by any authority of or in the Republic having power to tax,
unless Ronfin is compelled by law to deduct or withhold such
Nauruan taxes.   In that event, Ronfin will pay such additional
amounts by way of principal (including premium, if any) or
interest as will result in the receipt by the Bondholders of
the amounts which would otherwise have been receivable in
respect of principal (including premium, if any) or interest,
except that no such additional amount shall be payable with
respect to any Bond presented for payment by or on behalf of
a Bondholder who is liable to Nauruan taxation on such principal
(including premium, if any) or interest by reason of his being
connected with the Republic otherwise than merely by his holding
the Bond.   The principal (including premium, if any) of and
interest on the Bonds, as referred to in the Conditions of
Bonds (other than in this Condition 16), shall each include
the aforesaid additional amount payable with respect to each
of them pursuant to this Condition 16.

17.   The Bonds shall be redeemed at their principal
amount in equal annual installments of ¥400,000,000 each
payable on May 31 in each of the years 1992 through 1994 and
a final installment of ¥2,800,000,000 payable on May 31, 1995.

18.   Ronfin may at its option redeem prior to maturity,
in whole or in part (being integral multiples of ¥1,000,000,000),
the outstanding balance of the Bonds, on May 31, 1992 and on
any subsequent interest payment date at the following redemption
prices:

Redemption Price

1992   at   101.50% of the principal amount to be redeemed
1993   at   101.00% of the principal amount to be redeemed
1994   at   100.50% of the principal amount to be redeemed

In the event of prior redemption pursuant to this Condi-
tion 18, Ronfin shall give notice in writing to the Bank of
the amount, redemption date and other necessary details of
any such redemption at least seventy-five (75) days prior to
the proposed date of redemption; whereupon the Bank shall,
on behalf of Ronfin, give public notice or notice by other
means of such matters at least fourteen (14) days prior to
such redemption date.   The obligation of Ronfin to redeem
the Bonds by the annual redemption installments referred to
in Condition 17 shall continue until all the principal amounts

- 4 -

of the Bonds have been redeemed notwithstanding any optional
redemption of the Bonds pursuant to this Condition 18, any
such optional redemption being credited against future annual
redemption installments in the inverse order in which such
redemption installments become due.

19. The selection of Bonds to be redeemed in part pursuant
to Condition 17 or 18 shall be made by drawing, which shall be
held at the Tokyo Office of the Bank by the Bank on behalf of
Ronfin not later than forty-five (45) days prior to the relevant
redemption date. Promptly after each selection, the Bank shall
give public notice or notice by other means of the Bonds to be
redeemed, determined by such selection.

20. The Bonds constitute the valid, legally binding,
direct, unconditional, irrevocable and general obligations
of Ronfin and rank and will rank at least _pari passu_ without
any preference one above the other by reason of priority of
date of issue, currency of payment or otherwise, with all
other present or future unsecured indebtedness of Ronfin.
So long as any of the Bonds shall be outstanding, Ronfin shall
not, or, as the case may be, shall undertake not to, create
or permit to subsist on the whole or any part of any of its
present or future assets or revenues or on any funds governed
by the Nauru Phosphate Royalties (Payment and Investment) Act
1968, as amended, and the Nauru Phosphate Royalties Trust
Ordinance 1968 any lien, mortgage, pledge or other security
to secure any bonds, now or hereafter existing (except for any
lien, mortgage, pledge or other security on property purchased
by Ronfin as security for all or part of the purchase price
thereof), unless the Bonds shall also be validly secured by
such lien, mortgage, pledge or other security equally and
ratably with such other bonds so secured, and the instrument
or the enactment creating such lien, mortgage, pledge or
other security shall expressly so provide.

21. If any security is provided by Ronfin to the Bond-
holders pursuant to Condition 20, such security rights shall
be held and exercised by the Bank for the benefit of all the
Bondholders. Any expense incurred by the Bank in its holding
and exercise of security rights shall be borne by Ronfin.

- 5 -

Without prejudice to the obligations of Ronfin to pay such expenses unless any then applicable Japanese law provides otherwise, the Bank shall be entitled to charge to the Bondholders, in proportion to their holdings of Bonds, any expenses to the extent that they have not been recovered from Ronfin and to request the advance payment thereof from the Bondholders.

22.   If any of the events of default prescribed in the following paragraphs (a) through (i) shall have occurred and be continuing, the Bank may, pursuant to a resolution of a Bondholders' meeting or at the request in writing of the holders of more than one half (1/2) of the aggregate principal amount of all the Bonds then outstanding made to the Bank, declare all the Bonds then outstanding immediately due and payable by written notice to Ronfin.

(a)   There is default by Ronfin and the Republic for more than five (5) days in the payment of the principal (including premium, if any) or interest in respect of the Bonds or any of them; or

(b)   There is default by Ronfin in the due performance or observance of any other provisions contained in the Bonds and such default continues for more than twenty (20) days after the date on which the Bank shall first have given to Ronfin written notice of such failure, requiring Ronfin to remedy the same; or

(c)   Ronfin becomes bound or becomes capable of being declared to be bound to repay prematurely any indebtedness for money borrowed by reason of a default by Ronfin in its obligations in respect of the same, or fails to repay the principal amount of any such indebtedness or to pay any guarantee in respect of the principal amount of any such indebtedness upon the maturity thereof (and such failure shall continue beyond any applicable grace period); or

(d)   Ronfin shall cease to carry on all or a sub-stantial part of its business or the ownership, possession or control of all or substantially all of the assets, or of any property necessary for the operations, of Ronfin shall have been relinquished voluntarily or involuntarily by Ronfin; or

(e)   Ronfin shall be adjudicated bankrupt or insolvent under any applicable law, or admit in writing its inability to pay its debts as they mature, or make an assignment for the benefit of its creditors generally, or Ronfin shall institute any proceedings for bankruptcy, reorganiza-tion, dissolution or liquidation or similar proceedings relating to it under the laws of any jurisdiction, or if any such proceeding shall be instituted against Ronfin and shall remain undismissed for a period of 30 days, or any judgment or execution or similar process

- 6 -

shall be issued or levied against a substantial part of
the property of Ronfin and such judgment or similar
process shall not be released within 60 days after its
issue or levy; or

(f)  Any governmental or other registration, licence,
authorization or approval necessary to enable Ronfin to
comply with or perform any of its obligations under the
Bonds is revoked, withdrawn or withheld or otherwise fails
to remain in full force and effect; or

(g)  It becomes unlawful for Ronfin to perform any
of its obligations under the Bonds; or

(h)  A moratorium on the payment of any present or
future indebtedness of, or guarantee issued by, Ronfin
or any present or future indebtedness of, or guarantee
of indebtedness issued by, the Republic has been declared
by the Republic or any other governmental authority; or

(i)  The Guarantee by the Republic ceases to be in
full force and effect.

If any of the events specified in paragraphs (c) through
(i) above has occurred, Ronfin shall immediately notify the
Bank of such event, whereupon the Bank shall, on behalf of
Ronfin, immediately give public notice or notice by other
means of such event to the Bondholders.

Upon such declaration by the Bank, all the Bonds then
outstanding shall become due and payable at par immediately
together with accrued interest unless prior thereto Ronfin
shall have cured all such defaults.  For the purpose of this
Condition 22 the Bonds, if any, then held by Ronfin shall be
disregarded and deemed not to be outstanding.  Any expense
reasonably necessary for the procedures under this Condition
22 shall be borne by Ronfin.

23.  When the holders of not less than one-tenth (1/10)
of the aggregate principal amount of the Bonds then outstand-
ing, either acting jointly or individually, make a request
therefor to the Bank in writing or should the Bank deem it
necessary, the Bank shall convene a Bondholders' meeting by
giving at least twenty-one (21) days prior public notice or
notice by other means of the meeting to consider any matters
as the Bank may deem to have serious effect on the interests
of the Bondholders.  At such meeting, each Bondholder shall

- 7 -

have one vote for each ¥10,000,000 of the principal amount
of the Bonds. Resolutions of such meeting shall be adopted
by two-thirds (2/3) or more of the votes of the Bondholders
present at such meeting, which must be attended by the
holders of more than one half (1/2) of the aggregate principal
amount of the Bonds then outstanding and such resolutions
shall be binding on all the Bondholders and shall thereupon
be carried out by the Bank. For the purpose of this Condition
23, the Bonds, if any, then held by Ronfin shall be disregarded
and deemed not to be outstanding. Any expense necessary for
the procedures under this Condition 23 shall be borne by
Ronfin.

24.   The Bank shall deliver substitute Bond certificates
or interest coupons to holders of lost, stolen, destroyed or
damaged Bond certificates or interest coupons, upon application
therefor from them accompanied by a certified transcript of a
judgment of nullification of their Bond certificates or interest
coupons rendered by a Japanese court. Upon presentation of a
certified transcript of such a judgment of nullification of a
Bond certificate or interest coupon, the principal (including
premium, if any) or the interest represented by such Bond
certificate or interest coupon which has then matured shall
be payable by the Bank without surrender of the Bond certificate
or interest coupon. Any court having jurisdiction over the
place in Japan where principal (including premium, if any)
of or interest on the Bonds is payable shall have jurisdiction
concerning the procedures for the judgment of nullification
regarding the Bond certificates and interest coupons. Upon
application by a holder of a Bond certificate or interest
coupon which has been lost, stolen, destroyed or damaged,
the Bank shall prepare and deliver a certificate of Ronfin's
issuance of such Bond certificate or interest coupon to be
used for obtaining from a Japanese court a judgment of
nullification of such Bond certificate or interest coupon.
If it is possible for the Bank to identify damaged Bond
certificates or interest coupons surrendered to it, the Bank
shall deliver substitute Bond certificates or interest coupons
therefor and destroy the surrendered Bond certificates or
interest coupons. Any expenses for the preparation and
delivery of substitute Bond certificates or interest coupons
shall be for the account of the applicant therefor.

25.   If any due date for the payment of principal
(including premium, if any) of or interest on the Bonds
falls on a bank holiday in Japan, such payment shall be made
on the day immediately subsequent thereto which is a bank
business day in Japan.

- 8 -

26.   Except as otherwise provided in the Conditions
of Bonds, the place of performance of obligations pertaining
to the Bonds is Tokyo.

27.   Except as to the authorization relating to the
issuance by Ronfin of the Bonds and as to the matters concerning
the creation, validity and enforcement of security provided
for in Condition 20, the Bonds, the form and substance of
the Bond certificates and all the rights and obligations of
all the parties concerned, including the Bondholders, arising
thereunder shall in all respects be governed by the laws of
Japan.

28.   Any action against Ronfin arising from or relating
to the Bonds, Bond certificates and the Conditions of
Bonds may be instituted in the Tokyo District Court and any
Japanese court competent under Japanese law to hear appeals
from such court, to the jurisdiction of which Ronfin hereby
expressly, unconditionally and irrevocably submits.  Any
such action may also be instituted against Ronfin in any
court in the Republic competent under the laws of the Republic
to hear such action.  To the extent that Ronfin has or may
hereafter acquire any immunity, on the grounds of sovereign
immunity or otherwise, from legal process (whether in respect
of service of process, obtaining of a judgment, attachment,
execution or otherwise) with respect to itself or its property
or assets, Ronfin hereby unconditionally and irrevocably
waives, to the fullest extent permitted by applicable laws,
such immunity from such legal process in respect of its
obligations under the Bonds which may be instituted against
it in any such court in Japan or in the Republic.  Ronfin
hereby appoints the Consul for Nauru in Japan as its authorized
agent upon whom process may be served in any action arising
from or relating to the Bonds, Bond certificates and the
Conditions of Bonds that may be instituted in Japan; Ronfin hereb
designates the Consulate of Nauru in Japan at 2-6, Kasumigaseki
3-chome, Chiyoda-ku, Tokyo, Japan, as the address to receive
such process; and Ronfin hereby undertakes to take, from t.
to time and so long as any of the Bonds shall remain outstanding,
any and all action (including the execution and filing of any
and all documents and instruments) that may be necessary to
effect and to continue such appointment and designation in
full force and effect.  If at any time the Consul for Nauru in
Japan should, for any reason, be unwilling or unable to continue
to act as such authorized agent, Ronfin shall immediately
appoint, and it hereby undertakes to take any and all action
that may be necessary to effect the appointment of, a successor

- 9 -

authorized agent in Tokyo, Japan and Ronfin shall notify the
Bondholders or cause the Bondholders to be notified of such
successor agent.   Nothing in this Condition 28 shall affect
the right of the Bondholders to bring any action against
Ronfin in any competent court of any jurisdiction.

29.   All public notices concerning the Bonds shall be
published once in the Japanese Official Gazette.   If the
Bank deems it appropriate, such public notices need not be
made and the Bank may make direct notices to all the Bond-
holders instead of making public notices.

Annex 2

(Translation)

CONDITIONS OF GUARANTEE

THESE CONDITIONS OF GUARANTEE (the "Conditions of Guarantee") shall apply to the guarantee (the "Guarantee") by the Republic of Nauru (the "Republic") of REPUBLIC OF NAURU FINANCE CORPORATION JAPANESE YEN BONDS - SERIES B (1988) (the "Bonds") issued by Republic of Nauru Finance Corporation ("Ronfin").

1.  The Republic unconditionally and irrevocably guarantees to the holders of the Bonds (the "Bondholders") the due and punctual payment by Ronfin of principal (including premium, if any) of, and interest on, the Bonds and all other moneys payable pursuant to the conditions of Bonds (the "Conditions of Bonds") as and when the same shall be due and payable whether at maturity or otherwise. The Republic covenants that should Ronfin fail to make the due and punctual payment of principal (including premium, if any) of, or interest on, the Bonds or any other moneys payable pursuant to the Conditions of Bonds, the Republic shall make such payment as and when the same shall become due and payable whether at maturity or otherwise, as if such payment were made by Ronfin.

2.  The obligation of the Republic under the Guarantee shall be absolute and unconditional irrespective of, and shall not be affected or impaired by, (i) any lack of validity, legality or enforceability of, or the voidability of, the Bonds or any coupon appertaining thereto, (ii) any merger, reorganization, bankruptcy or dissolution of Ronfin, (iii) any failure or delay of the Bank (as defined in the Conditions of Bonds) or any holder of any Bond or coupon to exercise, or any lack of diligence in exercising, any right or remedy with respect to the Bond or any coupon, (iv) any waiver, consent or indulgence by the Bank or any holder of any Bond or coupon with respect to the provisions of the Conditions of Bonds, (v) any dealings or transactions between Ronfin and the Bank or any holder of any Bond or coupon whether or not the Republic shall be a party to or cognizant of the same, (vi) the exercise of any right or remedy under the Bonds or any coupon, or the obtaining of any judgment against Ronfin or the taking of any action to enforce the same, or (vii) any other circumstances which might in any manner or to any extent constitute a discharge of or defense available to a guarantor.

- 2 -

3.   Neither any holder of any Bond or coupon nor the Bank
shall be required to give any notice to or make any
demand on Ronfin or to proceed against Ronfin's assets
prior to the performance by the Republic of its obliga-
tions provided in the Conditions of Guarantee.   The
Republic agrees that the Republic's obligations provided
in the Conditions of Guarantee will not be discharged
except by complete performance of the monetary obligations
pursuant to the Conditions of Bonds or the Conditions of
Guarantee.

4.   The Republic agrees that it will not exercise any and
all rights of indemnification or subrogation or any other
right relating to the payment of moneys which it may have
under or by virtue of any contract or law against Ronf'
as a result of or in relation to the performance of the
obligations of the Republic in accordance with the
Conditions of Guarantee unless and until the principal
(including premium, if any) of, and interest on, all ].e
Bonds and all other moneys payable pursuant to the
Conditions of Bonds shall have been paid in full.

5.   The obligation of the Republic under the Guarantee shall
rank pari passu with all unsecured indebtedness of the
Republic for money borrowed (including the issue of
bonds, hereinafter the same) and with all unsecured
guarantees of the Republic for indebtedness of others
for money borrowed without any preference one above the
other by reason of priority of the date of issue or
creation thereof, currency of payment or otherwise.

6.   All payments of the principal (including premium, if
any) of, and interest on, the Bonds which will be made
by the Republic in implementation of the Guarantee sha
be made without deduction or withholding for or on account
of any and all present and future taxes, assessments or
other charges imposed by the Republic or any taxing
authority thereof or therein.   If any such taxes, as ]ss-
ments or other charges shall be imposed on any such
payment, the Republic shall pay such additional amounts
as may be necessary in order that every net payment of
the principal (including premium, if any) of, and interest
on, the Bonds after deduction or withholding for or on
account of any present and future taxes, assessments or
other charges imposed upon such payment will not be less
than the amount provided for in the Conditions of Bonds;
provided, however, that the Republic will not be obliged
to pay any such additional amount for or on account of

- 3 -

any such taxes, assessments or other charges imposed on
any holder of any Bond or coupon by reason of his being
connnected with the Republic otherwise than by reason
only of his ownership of such Bond or coupon or the
receipt of principal (including premium, if any) of, or
interest on, such Bond.

7.   Except as to the authorization by the Republic of the
     Guarantee, the Guarantee (including the Conditions of
     Guarantee) and all the rights and obligations of all
     the parties concerned, including the holders of Bonds
     and coupons and the Bank, arising thereunder shall in
     all respects be governed by the laws of Japan.

8.   The place of performance of obligations pertaining to
     the Guarantee (including the Conditions of Guarantee)
     is Tokyo.

9.   Any legal action relating to the Guarantee (including
     the Conditions of Guarantee) may be brought against the
     Republic in the Tokyo District Court or any other court
     of Japan competent under Japanese law to hear appeals
     from such court, to the jurisdiction of which the
     Republic hereby expressly and irrevocably submits for
     purposes of any such action. Any such action may also
     be brought against the Republic in any competent court
     of the Republic. To the extent permitted by applicable
     law the Republic hereby irrevocably waives any immunity
     to which it might otherwise be entitled from jurisdiction,
     suit, attachment, judgment or execution in any such
     action. The Republic hereby designates the Consulate of
     Nauru in Japan at 2-6, Kasumigaseki 3-chome, Chiyoda-ku,
     Tokyo, Japan, as the address to accept any service of
     process in connection with any such action in such courts
     in Japan, and appoints the Consul for Nauru in Japan as
     its authorized agent to accept such service of process.

Annex 3

Form of Bond Certificate

(Translation)

¥10,000,000
No.

REPUBLIC OF NAURU FINANCE CORPORATION

JAPANESE YEN BONDS – SERIES B (1988)

GUARANTEED BY THE REPUBLIC OF NAURU

Amount ¥10,000,000
Interest Rate: 6.5% per annum
Due May 31, 1995

Republic of Nauru Finance Corporation ("Ronfin") hereby promises to pay to the bearer the principal sum of

Ten Million Japanese Yen
(¥10,000,000)

and premium, if any, and interest on the principal amount of this Bond, all in accordance with the Conditions of Bonds appearing on the reverse hereof.  This Bond is one of Japanese Yen Bonds – Series B (1988) of Republic of Nauru Finance Corporation Guaranteed by the Republic of Nauru (the "Republic") in the aggregate principal amount of ¥4,000,000,000 issued on May 31, 1988 by Ronfin pursuant to lawful authorization: the execution, delivery and performance of this Bond has been authorized by the resolutions of the Board of Directors of Ronfin dated May 18, 1988 and by the prior written consent of the Cabinet of the Republic dated May 18, 1988, both pursuant to the Republic of Nauru Finance Corporation Act 1972, as amended (the "Act").

May 31, 1988

Republic of Nauru
Finance Corporation


(Facsimile Signature)
(        Chairman        )

- 2 -

The Republic, pursuant to the Act and the Decision by the Cabinet of the Republic dated May 18, 1988, hereby uncon-ditionally and irrevocably guarantees the due and punctual payment of the principal (including premium, if any) of, and interest on, the Bonds, and all other moneys payable under the Conditions of Bonds, in accordance with the Conditions of Guarantee endorsed on the reverse hereof.

May 31, 1988

The Republic of Nauru

(Facsimile Signature)
President

Annex 4

Form of Interest Coupon

(Translation)

REPUBLIC OF NAURU FINANCE CORPORATION

JAPANESE YEN BONDS - SERIES B (1988)

GUARANTEED BY THE REPUBLIC OF NAURU


Interest Coupon of a ¥10,000,000 Bond

For ¥325,000

Payable on _____

No._____


Republic of Nauru
Finance Corporation


(Facsimile Signature)
(    Chairman    )

Annex 5

(Translation)

| Names and Addresses of Purchasers | | Principal Amount of Bonds Purchased |
|---|---|---|
| Akita Prefectural Credit Federation of Agricultural Co-operatives | 64-2, Inugawara, Aza, Yabase, Akita-shi, Akita | 500,000,000 |
| Deutsche Bank AG Tokyo Branch | ARK Mori Building (23F) 12-32, Akasaka 1-chome, Minato-ku, Tokyo | 500,000,000 |
| Chemical Trust and Banking Co., Ltd. (Japan) | 3-1, Marunouchi 2-chome, Chiyoda-ku, Tokyo | 400,000,000 |
| Daihyaku Mutual Life Insurance Company | 34-1, Kokuryo-cho 4-chome, Chofu-shi, Tokyo | 400,000,000 |
| The Saitama Bank, Ltd. | 4-1, Tokiwa 7-chome, Urawa City, Saitama | 400,000,000 |
| Okinawa Prefectural Credit Federation of Agricultural Co-Operatives | 33-18, Sobe 2-chome, Naha-shi, Okinawa | 200,000,000 |
| Taisho Life Insurance Company Ltd. | 9-1, Yurakucho 1-chome, Chiyoda-ku, Tokyo | 200,000,000 |
| The Nippon Fire & Marine Insurance Co., Ltd. | 2-10, Nihonbashi 2-chome, Chuo-ku, Tokyo | 200,000,000 |
| The Yasauda Mutual Life Insurance Company | 9-1, Nishishinjuku 1-chome, Shinjuku-ku, Tokyo | 200,000,000 |
| The Yonago Shinkin Bank | 338-1, Higashi-fukubara, Yonago-shi, Tottori | 200,000,000 |
| Adachi Sogo Shinyo Kumiai | 50, Hashido-cho, Senju, Adachi-ku, Tokyo | 100,000,000 |
| Fukusen Sogo Shinyo Kumiai | 17-1, Ote 3-chome, Fukui-shi, Fukui | 100,000,000 |
| Gifu Prefectural Mutual Insurance Federation of Agricultural Co-Operatives | 13-1, Usaminami 4-chome, Gifu-shi, Gifu | 100,000,000 |

- 2 -

| Names and Addresses of Purchasers | | Principal Amount of Bonds Purchased |
|---|---|---|
| The Asahi Investment Trust Management Co., Ltd. | 13-1, Nihonbashi Kabuto-cho, Chuo-ku, Tokyo | 100,000,000 |
| The Chiyoda Mutual Life Insurance Company | 19-18, Kamimeguro 2-chome, Meguro-ku, Tokyo | 100,000,000 |
| The Taiyo Investment Trust and Management Co., Ltd. | 7-9, Nihonbashi 1-chome, Chuo-ku, Tokyo | 100,000,000 |
| The Toho Sogo Bank, Ltd. | 5-1, 2-Bancho 4-chome, ··suyama-City, Ehime | 100,000,000 |
| Yamaichi Investment Trust Management Co., Ltd. | ·, Hatchobori 1-chome, uo-ku, Tokyo | 100,000,000 |

Total:     ¥4,000,000,000

原本のとおり

甲第　　号証

*Filed on*
*9/8/2010*
*June 3. 10 p.m.*

ナウル共和国保証

B号ナウル金融公社円貨債券（1988）

債 券 買 受 契 約 証 書

REPUBLIC OF NAURU FINANCE CORPORATION

JAPANESE YEN BONDS—SERIES B (1988)

GUARANTEED BY THE REPUBLIC OF NAURU

BOND PURCHASE AGREEMENT

ナ ウ ル 共 和 国 保 証
B号ナゥル金融公社円貨償券 (1988)

償 券 買 受 契 約 証 書

ナゥル金融公社 (以下「ロンフィン」という。) は、本契約証書末尾の署名欄記載の本契約の
他方の当事者 (以下「本買受人」という。) との間に、東京都において、1988年5月23日、本償
券買受契約 (以下「本契約」という。) を締結する。

1. 償 券
  1.1. ロンフィンは、大要、本契約に添付した別紙1、3及び4記載の様式の償券の要項 (以下
    「償券の要項」という。)、償券及び利札によるナゥル共和国 (以下「共和国」という。)
    保証B号円貨償券 (1988) 元本総額 4,000,000,000円の発行を正当に承認し、かつ、その発
    行を予定している。本契約において用いられる「本償券」という語は、本契約に従い本買受
    人に交付される償券、本契約第2条第3項記載のその他の契約に従い償券の買受人に交付さ
    れる償券及びこれらの償券と代替又は交換に交付される償券を含み、場合により複数と同時
    に単数を意味する。
  1.2. 本償券の元利金 (額面超過金を含む。) 及び本償券に関し支払われるべきその他の金員の
    支払は、共和国により、改正済の1972年ナゥル金融公社法 (以下「法」という。) 第4条第
    (6)項に基づいて保証され、またかかる支払は大要本契約証書に添付の別紙2に記載の保証の
    要項 (以下「保証の要項」という。) に従い、共和国により追加的に保証される。かかる保
    証を以下「保証」という。

2. ロンフィンによる表明及び保証
  ロンフィンはここに以下の如く表明し、かつ、保証する。
  2.1. 販売説明書
    ロンフィンは、その1988年5月付販売説明書を本買受人に交付した。その販売説明書には、
    ロンフィンの直近の監査済財務諸表及びロンフィンの財務及び運営状態並びに共和国の経済、
    通貨、金融等の状況についての関連情報が含まれており、本償券の私募に関連して、当該販
    売説明書の情報は、すべての重要な点につき正確で、重要な事項についての虚偽の記載がな
    く、当該販売説明書中の記述が誤解を招くこととなるような重要な事実の記載の欠如はない。
    販売説明書に記載された情報提供の日付以降、ロンフィンの (直接的又は偶発的) 負債又は
    償務に重要な変更はなく、また、上記販売説明書中に予定されているもの及び本買受人に書
    面で開示されたものを除き、ロンフィン又は共和国の財務上、経済上、政治上その他の状態
    に悪影響を及ぼすような重要な変更はない。また、ロンフィンはその如何なる負債について
    もその履行を怠っていない。

## 2.2. 適 法 性

払込期日（以下に定義される。）において本償券は、（ｉ）ロンフィンにより正当かつ有効に承認、作成、発行、交付され、本償券及びそこに含まれるすべての約束は、その条項に従い、ロンフィンの有効にして法的拘束力のある直接的、無条件かつ一般的債務となり、（ｉｉ）ロンフィンの現在及び将来の他のすべての無担保の債務と同順位のものとなり、発行日の前後、支払通貨、その他の理由による優劣はない。

本契約の署名及び交付並びに本償券の本契約に基づく発行及び売渡しは、1988年5月18日付ロンフィンの理事会により適法に承認されており、本契約は有効かつ法的拘束力のあるロンフィンの契約を構成する。

ロンフィンによる本契約又は本償券の作成、交付あるいはロンフィンによる本契約上又は本償券上の義務の履行もしくはそれらの条項・条件の遵守は、ロンフィンに適用され又はロンフィンが設立にあたり準拠した法律、行政規則、裁判所の判決もしくは命令又はロンフィンが当事者となっているか又はロンフィンもしくはその財産が拘束されている契約もしくは証書のいかなる条項もしくは規定にも違背、抵触せず、またそれらの不履行ともならン、かつ、ロンフィンの財産もしくは資産に対する先取特権、質権、その他性質の如何を問わず何らの負担をも発生させ又は課することにならない。

払込期日において、保証並びにロンフィンによる本契約の署名及び交付、本契約に基づく本償券の発行及び売渡し並びにそれらに基づく義務の履行に関し必要な共和国政府当局、政府機関、その下位機関又は行政区画のすべての承認、認可、同意及び許可（それぞれ法第4条(6)項及び法第19条(3)項に従った共和国による保証及びロンフィンによる償券の発行に対する内閣の同意に関する1988年5月18日付の共和国内閣の決定を含む。）が適法に取得され、かつ、完全な効力を有している。

## 2.3. 私 募

ロンフィンは、本契約の署名及び交付と同時に、本契約添付別紙5記載の他の各買受人がそれぞれロンフィンから別紙5の当該買受人氏名欄に対応して記載されている元本総額の本償券を本契約と（買受元本総額の点を除いては）同一内容で買受ける契約を上記各ディ・との間で署名及び交付することを表明し、保証する。各買受人は、本契約第3条により本買受人が行った表明と同一の表明を行う。各買受人による買受けは、各買受人によるロンフィンからのそれぞれ別個独立の買受であり、各買受人への本償券の売渡し及び交付は、ロンフィンによる各買受人へのそれぞれ別個独立の売渡し及び交付である。本契約及び上記他の契約は、本契約中において「買受契約」と総称されることがある。

本償券発行の斡旋に関するロンフィンの代理人は、山一證券株式会社、株式会社埼玉銀行、第百生命保険相互会社、日本勧業角丸証券株式会社及び新日本証券株式会社であり、本償券の日本における販売については、これらが責任をもってこれを行う。

ロンフィンは、直接的であると代理人を通じてであるとを問わず、本買受人及び本契約添付別紙5記載の他の買受人を含む49人以内の機関投資家以外の者に対して本償券又はこれに

— 2 —

実質的に類似した証券の売付の申込をしたり、買付の申込を勧誘したり、あるいはその他の方法でこれらに関して折衝したり交渉したことはない。

3．本買受人による表明

3.1．（ⅰ）本買受人は、本債券に関して日本国証券取引法（昭和23年法律第25号、改正を含み「証券取引法」と総称する。）第4条に基づく届出をロンフィンが行っていないことを確認する。

（ⅱ）本買受人は、本債券を投資目的のために本買受人自身の勘定又は信託勘定により買受けるものであって、かかる債券を証券取引法上届出が必要とされる募集又は売出しと解されるような時期又は方法で売付けないことをロンフィンに対して保証し、かつ約束する。

4．本債券の売却及び買受

4.1．ロンフィンは本契約添付別紙5の本買受人名に対置した「買受債券元本額」欄記載の本債券の元本額を額面の 100％の発行価額にて本買受人に対し発行し売却することに同意し、本買受人は本契約に規定された条項・条件に従い、かつ本契約上のロンフィンの事実の表明、保証及び合意に基づき、ロンフィンから当該本債券を上記発行価額にて買受けることに同意する。本買受人が買受ける本債券の発行価額の総額が本契約第4条第2項の規定に従いロンフィンに対し支払われることを条件として、ロンフィンは1988年5月31日（以下「払込期日」という。）に本債券を発行するものとする。

4.2．払込期日の午後2時（日本時間）までに、本買受人はロンフィンに対し本買受人が買受けた本債券の発行価額の総額を支払うものとする。当該支払は、株式会社埼玉銀行東京営業部にあるこの目的のために開設されたロンフィン名義の口座に即時現金化可能な円で振込むことにより行うものとする。

4.3．本契約第4条第1項に基づく本債券の発行後可能な限り速やかにロンフィンは株式会社埼玉銀行東京営業部において、ロンフィンのために適法に署名された払込期日付の本買受人が買受けた元本額相当の本債券の債券を交付するものとする。

本買受人は買受けた本債券を本買受人の選択により、ロンフィンの費用負担で社債等登録法（昭和17年法律第11号）に基づき登録することができる。この場合、本債券の債券の代りに登録済証が本債券の発行後可能な限り速やかに交付されるものとする。

5．停止条件

5.1．本買受人が払込期日に買受ける元本額の本債券を買受け、かつ、その代金の支払をなす義務は、本契約第2条のロンフィンによる表明・保証が正確であり、かつ、それらが遵守されていること及び払込期日以前において下記の条件が成就することを停止条件とする。

（ⅰ）共和国の法務長官又は法務省の法務担当高官の意見書

ロンフィンが、共和国の法務長官又は法務省の法務担当高官の下記の趣旨の英文の意見
書を本買受人に交付していること。（この意見書は払込期日付とし、日本法上の問題に関し
ては以下に記載の青木・クリステンセン・野本法律事務所の意見に依拠することができる）

(a) 共和国はロンフィンの単独構成員である。ロンフィンは、共和国法に基づいて設立さ
れ、現存する法人として有効に存続しており、現在行っている業務及び本契約第２条第
１項所定の販売説明書において記載されている業務を行ない、また、本契約を締結し本
償券を発行する（法人としての、及びその他の）完全な権利、権限を有する。

(b) 本償券は、ロンフィンにより正当かつ有効に承認されており、日本法に基づき本償券
が正当かつ有効に署名、発行、交付されれば、本償券はロンフィンにより正当かつ有効
に署名、発行、交付される。本償券及びそこに含まれるすべての約束は、その条項に従
いロンフィンの有効にして法的拘束力のある直接的、無条件かつ取消不能の一般的償務
を構成する。本償券は、ロンフィンの現在及び将来のその他のすべての無担保の償務と
同順位であり、発行日の前後、支払通貨、その他の理由による優劣はない。

(c) 買受契約は、ロンフィンにより適法に承認、署名、交付されており、ロンフィンの有
効かつ法的拘束力のある義務を構成する。

(d) ロンフィンによる買受契約又は本償券の署名、交付、ロンフィンによるそれらに基づ
く義務の履行、あるいはロンフィンによるそれらの条項・条件の遵守は、ロンフィンに
適用される又はロンフィンが設立にあたり準拠した法律、行政規則、裁判所の判決もし
くは命令、又はロンフィンが当事者となっているか、あるいはロンフィン又はその財産
が拘束されている契約もしくは証書の如何なる条項もしくは規定にも違背、抵触せず、
またそれらの不履行ともならず、ロンフィンの財産もしくは資産に対する先取特権、質
権その他性質の如何を問わず何らの負担をも発生させ又は課することにならない。

(e) ロンフィンは本償券の発行を授権する旨記載された共和国内閣の事前の書面による同
意を取得している。この同意は払込期日において完全な効力を有する。これ以外にはロ
ンフィンによる買受契約の署名、交付及び買受契約に基づく本償券の発行、販売、又は
買受契約もしくは本償券に基づくその償務の履行に関して共和国又はオーストラリア連
邦の政府当局、政府機関、その下位機関又は行政区画のなんらの承認、認可、同意、許
可も要しない。

(f) 現在施行されている共和国又はオーストラリア連邦又はそれらの行政区画の法律、規
則によれば、ロンフィンが、オーストラリア・ドルと交換に日本円を買入れ、本償券の
保有者に対し本償券の元金、額面超過金（もしあれば）及び利息をその条項に従って支
払うことにつき共和国又はオーストラリア連邦の政府当局、政府機関、その下位機関又
は行政区画のなんらの承認、認可、同意、許可も要しない。

(g) 共和国において課せられるか又は支払うべき印紙税、文書税その他の類似の租税、負
担金は存在しない。買受契約及び本償券は本償券の買受人に交付された様式において共
和国の裁判所において証拠能力を有している。

— 4 —

(h) 本償券の買受人が買受契約に基づきロンフィンに対して提起する訴訟及び本償券の保有者が本償券に基づきロンフィンに対して提起する訴訟は、日本の東京地方裁判所、日本法上当該裁判所からの上訴を審理する権限を有する日本の裁判所又は共和国の管轄裁判所にこれを提起することができる。共和国及びその関係行政区画の法律によれば、ロンフィンはかかる訴訟においてかかる裁判所の裁判権からの裁判免除の抗弁を自ら主張し、又は自己に代って他人に主張させることはできない。

(i) 本償券の元利金（額面超過金を含む。）及び本償券に関し支払われるべきあらゆるその他の金員の支払は、共和国により、法第４条(5)項に基づいて保証され、又、かかる支払は保証の要項に従って追加的に保証される。本償券が本契約及び償券の要項に従って適法に発行されたときは、保証はナウル法上の問題に関する限りにおいて、法的に有効かつ拘束力のある共和国の無担保の債務となり、その成立の日、支払通貨その他理由のいかんを問わず、共和国の借入金にかかるすべての無担保債務及び第三者の借入金に対するその他のすべての無担保の保証債務又は補償債務と同順位であること。

(j) 保証の成立及び共和国による保証の履行は、共和国の憲法をはじめとする成文法もしくは法令規則並びに共和国が当事者であるか、あるいは拘束される契約のいずれの条項にも違背せず、かつ、これらから発生する共和国の債務又は義務に一切抵触しないこと。

(k) 共和国は、保証に基づく義務に関して、管轄権を有する日本もしくは共和国の裁判所における訴訟においては、主権を理由とする免責特権を主張する権利を有しないこと。

(l) 本償券の償権者は、買取契約第８条第２項又は償券の要項第28項又は保証の要項第９項に従い管轄権及び訴状送達に服することによりロンフィン又は共和国に対し管轄権が取得された場合、本償券の元利金（額面超過金を含む。）の支払を求める訴訟を日本国においてロンフィンまたは共和国に対して提起し最終判決を得た場合には、それから訴訟手続を共和国最高裁判所もしくはその他の管轄裁判所に申立てることができる。日本の判決に基づく上記共和国裁判所の判決は、共和国内閣が、共和国最高裁判所においてなされた判決の日本における執行に関し、実質的に相互主義的取扱がなされることが保証されていると納得できる場合は、更に次の主たる要件が充たされていると共和国裁判所が判断した場合には、日本の判決の実体審理を行うことなく、取得され得る。主たる要件は、ロンフィン又は共和国が実際の日本の訴訟手続において、訴訟に関する主権その他に基づく免責特権を放棄していること、日本の判決が詐欺により取得されたものではないこと及びその判決の執行が共和国の公序に反しないことである。

(m) ロンフィンあるいは共和国の本契約、本償券の要項もしくは保証の要項の下に債務を履行する能力に重大な悪影響を及ぼすおそれのある、ロンフィンあるいは共和国に対しての訴訟、仲裁もしくは行政手続は、ロンフィンの知る限りにおいて、現在行われておらず、審理中でなく、又そのおそれもない。

(n) 販売説明書中の「The Republic of Nauru Finance Corporation 」及び「The Republic of Nauru」という見出しの下の法的性質を有する記載は、当該販売説明書中にある通り正確である。

— 5 —

上記法律意見書には、本償券を発行し及び保証を付与することについての根拠となる共和国の法令の関係条文、その他関連書類を添付しなければならない。

（ii）買受人の日本の法律顧問の意見書

本買受人が、買受契約、第5条第1項第5号に記載の元利金支払事務取扱契約、第5条第1項第5号に記載の登録事務取扱契約、本償券及び本保証で予定された取引に関する本買受人の日本の法律顧問である青木・クリステンセン・野本法律事務所の意見書で、買受契約、元利金支払事務取扱契約、登録事務取扱契約、本償券及び本保証が日本法上有効である旨並びに本買受人が要求するその他の関連事項について記載したもの（同意見書は払込期日付とし、共和国法に関しては第5条第1項第1号記載の意見書に依拠することができる。）を受領し、ロンフィンは本買受人の法律顧問が上記事項に関し合理的範囲内で要求する書類（必要な場合には証明書付英語訳を添付して）を同法律顧問に対し提出していること。

（iii）事実の表明の正確性

本契約第2条記載のロンフィンによる事実の表明及び保証を、虚偽もしくは不正確なしめるような事由はなく、かつそれらは払込期日になされたものであるごとく同日現在真実かつ正確であること。

（iv）日本国大蔵大臣への事前届出

本償券の発行に関し、日本の外国為替管理法令上要求される届出及びその変更届出（もしあれば）がロンフィンにより日本の大蔵大臣になされており、上記届出及びその変更届出（もしあれば）に係る取引を行うことを承認する旨の日本の大蔵大臣の通知が当該大臣よりなされており、当該通知は払込期日において完全に有効であること。

（v）元利金支払事務取扱契約及び登録事務取扱契約

元利金支払事務取扱契約及び登録事務取扱契約がロンフィン及び株式会社埼玉銀行との間で締結済であり、払込期日現在完全な効力を有していること。

（vi）本償券の登録のための主務大臣の指定

社債等登録法施行規則（昭和17年大蔵、司法省令第1号）に従い、登録償としての本券の指定、及び社債等登録法施行令（昭和17年勅令第409号）に従い、本償券の登録機関としての株式会社埼玉銀行の指定を日本国法務大臣及び大蔵大臣から取得しており、その旨日本国官報に公告されていること。

（vii）その他

ロンフィンは買受契約において払込期日以前にロンフィンが行うものとされているその他の一切の行為（もしあれば）を、払込期日以前に完了していること。

5.2. 本第5条第1項の諸条件のいずれかが、本買受人の買受けるべき本償券の発行価額の本契約第4条第2項に従った本買受人による支払までに充足されていない場合、本買受人はロンフィンへの電信又はテレックスによる通知（速やかに書面により確認すること。）により、それ以前に当該条件が充足されない限り又は本買受人が当該条件を書面で放棄しない限り、

本債券の買受の約束をただちに解除できるものとする（但し、かかる解除をする義務を負うものではない。）。この場合、本契約はただちに解除されて効力を失い、本買受人はその債務を免れるものとする。但し、ロンフィンは、本契約第6条第1項第1号に基づく債務を免れるものではない(但し、本契約第2条第3項に規定の代理人に支払うべき手数料を除く。)。

5.3.買受契約に基づくすべての買受人がそれぞれ買受けることを約した額面額の本債券を払込期日に買受けなかった場合には、ロンフィンは、払込期日に本買受人が買受ける本債券を本買受人に売渡す義務はない。

6. ロンフィンの約束

6.1.ロンフィンは以下の如く約束し、かつ合意する。

（ⅰ）ロンフィンは、買受契約上の取引に関してロンフィンが負担した一切の費用を支払う。ロンフィンは又、本契約第2条第3項に規定された代理人の買受契約上の取引の幹旋に関する手数料及び実費、販売説明書、買受契約証書、元利金支払事務取扱契約証書、登録事務取扱契約証書、本債券の債券、利札、その他の書類の作成及び印刷の費用及び本契約第5条第1項第2号に規定された弁護士への報酬及び実費、並びに買受契約上の取引に関して本買受人及び他の買受契約上の他の買受人が負担した合理的範囲の費用を支払うものとする。

（ⅱ）ロンフィンは、本債券と実質的に類似した有価証券を、本債券と当該有価証券を一体としてみた場合に、その募集又は売出しが証券取引法に基づく届出が必要とされる不特定多数の投資家への募集又は売出しと日本の裁判所または日本国大蔵大臣により解釈されるような方法で、同時に日本において募集又は売出しをしないものとする。

（ⅲ）ロンフィンは、買受人のためにできるだけ速やかに（いかなる場合においてもロンフィンの各会計年度終了後6ヶ月を超えないものとする。）貸借対照表と損益計算書を含むロンフィンの監査済の年次報告書の十分な部数を銀行（債券の要項に定義される。）に対して提出するものとし、又、銀行が随時合理的に要求する追加の情報を銀行に対して提供するものとする。

7. 通　知

7.1.別段の定めがない限り、本契約に関するロンフィン又は本買受人に対する通知もしくは請求は、下記の宛先へ送付した場合に、すべての目的のために正当に通知もしくは請求されたものとみなす（但し、テレックスの場合は、郵便料前払の書留航空郵便により書面にて遅滞なく確認すること。）。ロンフィンに対しては、以下の宛先に行う。

航空郵便の場合は、

> Republic of Nauru Finance Corporation
> Government Offices,
> Yaren District,
> The Republic of Nauru

— 7 —

　　　　　Nauru Island
　　　　　Central Pacific
　　　　　Attention : Chairman
　テレックスの場合は、
　　　　　ZV 33081 GOVNARU
とする。
　　本買受人に対しては、本契約証書添付の別紙５記載の本買受人の住所宛に行う。本契約の
一方の当事者が他方の当事者に対し書面により他の宛先を指定した場合には当該宛先に対し
通知もしくは請求するものとする。通知もしくは請求はすべて英語により行うものとする。

8. そ の 他
　8.1. 本契約は日本法に準拠し、日本法に従って解釈されるものとする。ただし、ロンフィンに
　　よる本契約の授権に関する事項は共和国法に準拠する。
　8.2. 本契約から生ずるか又はこれに関するロンフィンに対する一切の訴訟は、東京地方裁判所、
　　及び日本法上当該裁判所からの上訴を審理する権限を有する日本の裁判所に対して提起する
　　ことができ、ロンフィンはここにかかる裁判所の管轄権に明示的、無条件かつ取消不能″形
　　で服する。ロンフィンに対するかかる訴訟は共和国法に基づき管轄権を有する共和国の裁判
　　所に対しても提起することができる。ロンフィンが、それ自身もしくはその財産又は資産に
　　関し、司法上の手続（送達、判決の取得、差押え、強制執行又はその他に関するものである
　　か否かを問わない。）からの免責特権（主権に基づくか否かを問わない。）を有し又は将来
　　取得する範囲において、ロンフィンは本契約に基づくロンフィンの債務に関してロンフィン
　　に対し日本もしくは共和国の上記裁判所において提起されるかかる司法上の手続からのかか
　　る免責特権を、適用法上可能な限度まで、無条件かつ取消不能の形でここに放棄する。ロン
　　フィンは、ここに本契約から生ずるか又はこれに関して日本において提起されることのある
　　一切の訴訟につき、ロンフィンの権限ある送達受領代理人として日本における共和国領事を
　　指名し、かかる送達を受けるべき宛先として本締結日現在、日本国東京都千代田区霞が関″
　　丁目２番６号に所在するナウル共和国領事館をここに指定する。ロンフィンは、本債券の未
　　償還残高が存する限りいつでも、当該指名及び指定が完全な効力を有するのに必要な一切の
　　行為（あらゆる書類の作成及び提出を含む。）をなすことをここに約束する。日本に．．る
　　共和国領事が何らかの理由によりロンフィンのかかる権限ある代理人として行為する意思が
　　なく、又は行為することが不可能なナウル共和国領事館を指名し、かつ当該指名が効力を有するのに必要な一切の行為をな
　　る後任の権限ある代理人を指名し、かつ当該指名が効力を有するのに必要な一切の行為をな
　　すことをここに約束する。またロンフィンは本債券の債権者に対し、当該後任の代理人を通
　　知し又は通知させるものとする。
　8.3. 本契約のすべての条項及び規定（一切の約束、合意、事実の表明及び保証を含む。）は、
　　本契約の当事者並びにそれぞれの承継人及び譲受人（その時々の本債券の債権者を含む。）

を拘束し、これらの者はその利益を享受することができるものとする。ただし、ロンフィン
は、買受人の書面による事前の同意を得なければ本契約上のロンフィンの権利又は義務を譲
渡又は移転することができない。

8.4. いずれかの買受人によりなされた調査がある場合にもそれにかかわらず、本契約及び本債
券においてなされたすべての約束、合意、事実の表明及び保証は、本債券の発行及び交付並
びにそれに対する払込後も引続きその効力を有するものとする。

8.5. 本契約証書は日本語により2部作成され、英語訳をこれに添付する。本契約につき意味又
は意図に疑義ある場合には日本語による本契約証書が優先するものとする。

以上の契約の証として、本契約証書冒頭に記載された場所及び日付において、両当事者の代表
はそれぞれここに調印する。

ナウル金融公社

ケミカル信託銀行株式会社

― 9 ―

別紙 1

債　券　の　要　項

　　本債券の要項（以下「本債券の要項」という。）は、ナウル金融公社（以下「ロンフィン」という。）
が、適法な授権に基づき発行するナウル共和国（以下「共和国」という。）保証Ｂ号ナウル金融公社
円貨債券（1988）（以下「本債券」という。）に適用する。
1．本債券の額面総額は、金40億円とする。
2．本債券の券面の種額は、1,000万円の1種とし、分割又は併合はしない。
3．本債券の利率は、年6.5パーセントとする。
4．本債券は無記名式利札付に限るものとし、記名式への変更はしない。
5．本債券の元利金（額面超過金を含む。）および本債券に関し支払われるべきその他のすべての金
　　員の支払は、共和国により、改正済の1972年ナウル金融公社法第4条第6項に基づいて保証され、
　　また、かかる支払は、保証の要項（以下「保証の要項」という。）に従い、共和国により、追加的
　　に保証される。当該保証は、以下「本保証」という。
6．本債券の消滅時効は、元金（額面超過金を含む。）について10年、利息については5年とする。
　　本債券の債券及び利札にはロンフィン会長の複写方式による署名を付す。
　　本債券の登録機関は、株式会社埼玉銀行（以下「銀行」という。）とする。本債券の債権者（以
　下「本債券の債権者」という。）は、いつでもその本債券を登録することができる。本債券の応募
　者登録の費用はロンフィンの負担とし、その他の登録の費用は請求する者の負担とする。登録債の
　登録抹消による本債券の債券及びこれに付属する利札の作成及び交付に要する一切の費用は、請求
　する者の負担とする。
9．本債券の債券原簿（以下「債券原簿」という。）の作成及びその管理は、ロンフィンに代り銀行
　が行う。
10．本債券の元金（額面超過金を含む。）及び利息の支払は、ロンフィンにより銀行の東京営業部に
　　おいて、日本国法定通貨によってなされる。
11．現物債の場合、元金（額面超過金を含む。）の支払は、本債券の債券と引換にこれを行い、利息
　　の支払は利札と引換にこれを行う。ただし、本債券の要項第24項に別段の定めがある場合を除く。
　　　登録債の場合、元金（額面超過金を含む。）の支払は、元金領収書及び登録済証と引換にこれを
　　行い、利息の支払は利息領収書と引換にこれを行う。銀行は提出された元金領収書及び元金領収書
　　に債権者が銀行に登録している印影と同一の印影が付されていることを確認するものとする。
12．本債券の債券の償還には、支払期日未到来の利札全部を付した本債券の債券の提出を要するもの
　　し、支払期日未到来の利札で欠缺したものがあるときは、償還金額からその欠缺した利札額面金
　　に相当する金額を控除してその残額を支払う。ただし、その欠缺した利札の所持人は、当該利札
　　の付されていた本債券の債券の償還期日から5年の消滅時効期間内にこれを提出して、その控除金
　　額の支払を受けることができる。
13．元金（額面超過金を含む。）及び利息の支払に際しては、銀行は、債券原簿に適切な記載を行う。
14．本債券の利息は、1988年6月1日から付し、最初の利払期日を1988年11月30日とし、以降毎年
　　5月31日及び11月30日の2回に、おのおのその日までの（その日を含む。）6か月分を支払う。
15．本債券の利息は、償還期日後はこれを付さない。ただし、ロンフィンが償還期日に償還を怠った
　　ときは、償還が実際に行われるまでの期間につき本債券の要項第3項に定める本債券の利率に基づ
　　く日割利息（365日日割計算による。）を支払う。ただし、その期間は、銀行が償還資金を受領した
　　旨の通知をロンフィンに代り銀行が公告すれば又は他の方法により本債券の各債権者に対し通知を
　　発送した日から日本における7銀行営業日を超えないものとする。銀行は、償還資金を受領した後
　　日本における14銀行営業日以内に当該公告をするか当該通知を発送する。
16．本債券の元金（額面超過金を含む。）及び利息の支払はすべて、共和国又は共和国のもしくはそ

－ 1 －

の国内の課税当局により課されることのある現在又は将来の公租公課を控除もしくは源泉徴収されることなく、支払われるものとする。ただし、ロンフィンが法によると、当該共和国の税につき控除又は源泉徴収を強制された場合はこの限りでない。この場合、ロンフィンは、本債券の債権者の受領する元金（額面超過金を含む。）もしくは利息の金額が、これらについて当該控除又は源泉徴収を行わなかった場合に受領されるべき金額となるよう追加額を支払う。ただし、かかる追加額は、本債券を所有しているという以外の理由で共和国に関係があるために、元金（額面超過金を含む。）もしくは利息について共和国に納税義務のある本債券の債権者により又はそのために支払のため提示された本債券については支払われないものとする。本債券の要項（第第16項を除く。）において元金（額面超過金を含む。）及び利息は、おのおのにつき本第16項の規定に基づき支払われるべき上記追加額をそれぞれ含むものとする。

17. 本債券は、1992年から1994年まで毎年5月31日に各 400,000,000円を、1995年5月31日に残額 2,800,000,000円を額面金額で償還する。

18. ロンフィンは、1992年5月31日及びその後の各利払期日に、本債券の未償還額の全部又は一部（但し 1,000,000,000円の整数倍とする。）を次の価格で任意に繰上償還することができる。

|  | 償還価格 |
|---|---|
| 1992年 | 償還される額面の101.50% |
| 1993年 | 償還される額面の101.00% |
| 1994年 | 償還される額面の100.50% |

本第18項に基づく繰上償還の場合、ロンフィンは、償還予定日の少なくとも75日前に、償還額及び償還期日その他必要事項を書面により銀行に通知する。銀行は、ロンフィンに代り、当該期日の少なくとも14日前に当該事項を公告するか又はその他の方法により通知する。本要項第17項所定の定時償還により本債券を償還すべきロンフィンの義務は、本第18項に基づく本債券の任意償還にかかわらず本債券の総額が償還されるまで継続し、本債券の任意償還額は、最終定時償還所要額より順次遡って定時償還所要額に充当される。

19. 本要項第17項又は第18項に従い償還すべき本債券の決定は抽選により行うものとし、かかる抽選は、当該償還期日の45日前までに、ロンフィンに代って銀行がその東京営業部でこれを行う。各抽選の後直ちに銀行は、かかる抽選により償還が確定した本債券を公告するか又はその他の方法により通知するものとする。

20. 本債券は、ロンフィンの有効な、法的拘束力のある、直接、無条件、取消不能の一般債務であり、その発行日、支払通貨、その他を理由として優先もしくは劣後することなく、ロンフィンの他のすべての現在又は将来の無担保の債務と同順位の債務である。ロンフィンは、本債券につき未償還残高が存する限り、現在又は将来のロンフィンの債務を担保するためにロンフィンの現在又は将来の資産又は収入の全部もしくは一部または1968年ナウル燐鉱収入（支払及び投資）法（改正済）および1968年ナウル燐鉱入信託基金法によって規律されるいずれの基金にも先取特権、抵当権、質権その他の担保権を設定し、また存続させないものとする（但し、ロンフィンの購入財産上の先取特権、抵当権、質権その他の担保権でかかる購入財産の価額の一部もしくは全部を担保している場合を除く。）。但し、本債券に対し、かかる他の債券と同等の順位、比率をもって先取特権、抵当権、質権その他の担保権が有効に付され、かつその先取特権、抵当権、質権その他の担保権を設定する証書又は法令が明示的にその旨規定する場合はこの限りでない。

21. 本要項第20項に基づきロンフィンが本債券の債権者に対し担保を提供する場合、銀行はすべての本債券の債権者のためにその担保権を保有し実行する。銀行が担保権を保有し実行するにあたって要するすべてロンフィンの負担とする。銀行は、その際適用を受ける日本法に別段の定めがない限り、上記費用がロンフィンにより支払われていない限度において本債券の債権者に対し、その本債券の保有高の割合に応じてこれを請求し、かつ当該費用の前払を求めることができる。ただし、この規定はロンフィンの上記費用負担義務に影響を与えるものではない。

22. 下記(a)から(i)までに記載された債務不履行事由のいずれかが生じ、かつそれが継続している場合には、銀行は、本債券の債権者集会の決議又は本債券の未償還額面総額の過半数にあたる本債券を有する債権者の書面による銀行への請求により、ロンフィンに対し書面で通知することにより本債券の未償還総額について期限の利益の喪失を宣言することができる。

   (a)　本債券又はそのいずれかの元金（額面超過金を含む。）又は利息を5日を超えて、ロンフィン及び共和国が支払わなかったとき。

   (b)　ロンフィンが、本債券の他の条項を遅滞なく履行、遵守せず、当該債務不履行が、銀行がロンフィンに対し、当該債務不履行を治癒するよう要求して、かかる債務不履行の書面による通知を最初にした日から20日を超えて、なお継続したとき。

   (c)　ロンフィンが、その義務の不履行により借入金にかかる債務につき期限前に支払を義務づけられたとき又は義務づけられる可能性が生じたとき、又は満期に、債務の元本の返済を怠るか又は債務の元本に関する保証の支払を怠ったとき（かつ当該不履行が該当する猶予期間を超えてなお継続しているとき）。

   (d)　ロンフィンが、その業務のすべてもしくは実質的な部分を行うことを停止したとき、又は業務遂行に必要なすべてのもしくは実質上すべてのロンフィンの資産もしくは財産の所有、占有又は管理を自発的もしくは強制的に放棄し又は放棄を余儀なくされたとき。

   (e)　ロンフィンが、適用ある法の下で破産もしくは支払不能を宣言されたとき、ロンフィンが、支払期日の到来する債務を支払えないことを書面で認めたとき、債権者のために包括的に譲渡を行ったとき、管轄地の法律に基づき、ロンフィンが破産、更生、解散もしくは清算のための手続又はこれと類似の手続を開始したとき、又はロンフィンに対してかかる手続が提起され30日間却下されないでいたとき、又はロンフィンの財産の実質的な部分について、判決、強制執行等の令状が発せられるかもしくは課され、これがその後60日以内に解除されなかったとき。

   (f)　ロンフィンが、本債券に基づく義務を遵守し履行するために必要な行政上その他の登録、許可、認可又は承認が、取消され、撤回され、保留されれば又は、その他完全な効力を有しなくしたとき。

   (g)　ロンフィンが、本債券に基づく義務のいずれかを履行することが不適法になったとき。

   (h)　現在又は将来のロンフィンの債務もしくはロンフィンの債務保証あるいは現在又は将来の共和国の債務もしくは共和国の債務保証の支払猶予令（モラトリアム）が共和国又はその他政府機関によって宣言されたとき。

   (i)　共和国による本保証が、完全な効力を有しなくなったとき。

   上記(c)ないし(i)の各項に定めた事由が発生したときは、ロンフィンは直ちにこれを銀行に通知するものとし、銀行はロンフィンに代って直ちにこれを公告するか又はその他の方法により本債券の債権者に通知するものとする。

   銀行による上記宣言がなされたときには、本債券の未償還総額につき期限の利益を喪失し、経過利息とともに額面価額で直ちに支払われるものとする。ただし、かかる宣言前にロンフィンが当該債務不履行をすべて治癒した場合はこの限りでない。本第22項の規定の適用に関しては、ロンフィンの保有する本債券がある場合にはこれを無視し、未償還でないものと看做す。本第22項の手続に要する合理的範囲の費用はこれをロンフィンの負担とする。

23.　銀行は、本債券の未償還額面総額の10分の1以上にあたる本債券を有する債権者から、共同又は単独で、書面による請求を受けたとき、又は自ら必要と認めたときは、本債券の債権者の利益に重大な影響を有すると銀行が認めた事項を議題とする本債券の債権者集会の招集を行う。この場合、銀行は、債権者集会の招集通知を公告又はその他の方法で開催日の少なくとも21日前までに行う。当該債権者集会においては、本債券の各債権者は、本債券の額面 1,000万円毎に1個の議決権を有する。当該債権者集会の決議は、本債券の未償還額面総額の過半にあたる本債券を有する債権者が出席し、その議決権の3分の2以上にあたる多数をもって行ない、その決議はすべての本債券の債権者を拘束し、またその実行には銀行があたる。本第23項の規定の適用に関しては、ロン

フィンの保有する本債券がある場合にはこれを無視し、未償還でないものと看做す。本第23項の手続に要する費用は、ロンフィンの負担とする。

24. 銀行は、本債券の債券又は利札を紛失し、盗取され、滅失し又は汚損した者が、日本国の裁判所によりなされた除権判決の確定謄本を添えて代り債券又は代り利札の交付を請求したときは、これを交付するものとする。支払期日の到来したものについては、かかる除権判決の確定謄本の提示があったときは、本債券の債券又は利札の引渡を受けずにその元金（額面超過金を含む。）又は利息を支払うものとする。本債券の債券又は利札の除権判決のための手続は、本債券の元金（額面超過金を含む。）又は利息の支払場所を管轄する日本国の裁判所がこれを管轄する。本債券の債券又は利札を紛失し、盗取され、滅失し又は汚損した者が、日本国の裁判所からかかる除権判決を得るため、その本債券の債券又は利札をロンフィンが発行した旨の証明書を請求したときは、銀行はこれを作成して交付するものとする。汚損した本債券の債券又は利札で、銀行が真偽を鑑別し得るものについては、銀行は、その債券又は利札の引渡を受けたときは、代り債券又は代り利札を交付し、引渡を受けた本債券の債券又は利札を廃消するものとする。代り債券又は代り利札の作成及び交付に要する費用は、これを請求する者の負担とする。

25. 本債券の元金（額面超過金を含む。）又は利息の支払期日が日本における銀行休業日にあたるときは、かかる支払は日本におけるその翌銀行営業日にこれを行う。

26. 本債券の要項において別段の定めがある場合を除き、本債券に基づく義務の履行地は、東京都とする。

27. ロンフィンによる本債券の発行に関する授権及び本要項第20項所定の担保権の設定、効力及び実行に関する事項を除き、本債券、本債券の債券の様式及び内容、並びにそれらに基づく本債券の債権者を含むすべての当事者の一切の権利及び義務は、すべての点において日本法に従うものとする。

28. 本債券、本債券の債券及び本債券の要項から生ずるか又はこれらに関するロンフィンに対する一切の訴訟は、東京地方裁判所及び日本法上当該裁判所からの上訴を審理する権限を有する日本の裁判所に対して提起することができ、ロンフィンはかかる裁判所の管轄権に明示的、無条件かつ取消不能の形で服する。ロンフィンに対するかかる訴訟は共和国法に基づき管轄権を有する共和国の裁判所に対しても提起することができる。ロンフィンは、それ自身もしくはその財産又は資産に関し司法上の手続（送達、判決の取得、差押え、強制執行又はその他に関するものであるか否かを問わない。）からの免責特権（主権に基づくか否かを問わない。）を有し又は将来取得する範囲において、ロンフィンは本債券に基づくロンフィンに関してロンフィンに対し日本もしくは共和国の上記裁判所において提起されるかかる司法上の手続からのかかる免責特権を、適用法上可能な限度まで、無条件かつ取消不能の形でここに放棄する。ロンフィンは、ここに本債券、本債券の債券及び債券の要項から生ずるか又はこれらに関して日本において提起されることのある一切の訴訟につき、ロンフィンの権限ある送達受領代理人として日本における共和国領事を指名し、かかる送達を受けるべき宛先として、日本国東京都千代田区霞が関3丁目2番6号に所在するナウル共和国領事館をここに指定する。ロンフィンは、本債券の未償還残高が存する限りいつでも、当該指名及び指定が完全な効力を有するために必要な一切の行為（あらゆる書類の作成及び提出を含む。）をなすことをここに約束する。日本における共和国領事が何らかの理由によりロンフィンのかかる限りある代理人として行為する意思がなく、又は行為することが不可能な場合には、ロンフィンはただちに日本国東京都に所在する後任の権限ある代理人を指名し、かつ当該指名が効力を有するのに必要な一切の行為をなすことをここに約束する。またロンフィンは本債券の債権者に対し、かかる後任の代理人を通知し又は通知させるものとする。本第28項の規定は、本債券の債権者が管轄権を有するすべての裁判所においてロンフィンに対し訴訟を提起する権利を制限するものではない。

29. 本債券に関するすべての公告は日本国官報に1回掲載されるものとする。銀行が適当と認めるときは、官報に掲載することを要せず、銀行が本債券の全債権者に対し直接通知することをもって公告に代えることができる。

別紙 2

保　証　の　要　項

　本保証の要項（以下「本要項」という。）は、ナウル金融公社（以下「ロンフィン」という。）が発行するＢ号ナウル金融公社円貨債券（1988）（以下「本債券」という。）に対するナウル共和国（以下「共和国」という。）による保証（以下「本保証」という。）にこれを適用する。

1．共和国は本債券の元利金（額面超過金を含む。）および本債券の要項（以下「債券の要項」という。）に従って支払われるべきその他の金員の満期またはその他の支払期日におけるロンフィンによる確実な支払を本債券の債権者（以下「本債券の債権者」という。）に対し、無条件かつ取消不能の形で保証する。共和国は、ロンフィンが本債券の元利金（額面超過金を含む。）または債券の要項に従って支払われるべきその他の金員をその支払期日に確実に支払うことを怠った場合には、かかる支払がロンフィンによって行われた場合と全く同様に、これらの金員を満期またはその他の支払期日に支払うことを約束する。

2．本保証に基づく共和国の義務は、絶対・無条件の義務であって、次に掲げるいかなる事由によっても影響されまたは阻害されないものとする。
　（イ）本債券またはそれに添付の利札の有効性、違法性もしくは強制力の欠如またはそれらが取消し得べきものであること。
　　　ロ）ロンフィンの合併、更生、破産または解散。
　（ハ）本債券もしくは利札に関する権利もしくは救済手段の行使について銀行（債券の要項に定義される。）または本債券の債権者もしくは利札の所持人がこれを懈怠しもしくは遅延させることまたは当該権利もしくは救済手段を行使する努力を欠くこと。
　（ニ）銀行、本債券の債権者もしくは利札の所持人による債券の要項の規定の放棄、同意または猶予。
　（ホ）共和国が当事者であるかまたはその存在を認知していたか否かを問わず、ロンフィンと銀行または本債券の債権者または利札の所持人との間の取引。
　（ヘ）本債券もしくは利札に基づく権利もしくは救済手段の行使またはロンフィンに対する判決の取得もしくはかかる判決の執行のための手続の実行。
　（ト）その他、その方法もしくは程度の如何を問わず、一般に保証人の責任を解除し、または保証人の抗弁となし得る事態の存在。

3．本債券の債権者もしくは利札の所持人または銀行は、共和国による本要項に規定された義務の履行に先立ってロンフィンに対し通知もしくは請求を行いまたはロンフィンの資産に対し法的手段をとることを要しない。共和国は、本要項に規定された共和国の義務は、債券の要項または本要項に基づく金銭債務の完全な履行によってのみ消滅するものであることに同意する。
　　共和国は、本要項に従った共和国の義務の履行の結果としてまたはそれに関連して共和国がロンフィンに対して何らかの契約上または法律上有することとなる求償権、代位権その他の金銭債権を、本債券すべての元利金（額面超過金を含む。）および債券の要項に従って支払われるべきその他の金員が完全に支払われない限り、一切行使しないことを約束する。

5．本保証に基づく共和国の義務は、共和国の借入金（債券の発行を含む。以下同じ。）にかかるすべての無担保保証債務および第三者の借入金債務に対する共和国のすべての無担保保証債務と、その発行もしくは成立の日、支払通貨その他の事由のいかんを問わず同順位の債務である。

6．共和国が本保証の実行として行う本債券の元利金（額面超過金を含む。）の支払は、共和国または共和国のもしくは共和国内の徴税機関によって現在または将来課されることのある公租公課を控除または徴収されることなく行われるものとする。かかる支払につきかかる公租公課が課される場合には、共和国は、現在または将来の公租公課を控除または徴収した後の本債券の元利金（額面超過金を含む。）すべての純支払額が、債券の要項に定める金額を下回らないよう必要な追加額を支払うものとする。ただし、共和国は、本債券の債権者または利札の所持人が本債券もしくは利札の

－ 1 －

所有または本償券の元利金（額面超過金を含む。）の受領以外の事由により共和国と関連を有する
との事由でかかる公租公課の賦課が行われる場合には、上記追加額の支払義務を負わない。

７．共和国による本保証の授権を除き、本保証（本要項を含む。）ならびに本保証に基づいて生じる
本償券の償還者および利札の所持人ならびに銀行を含む関係各当事者の一切の権利義務は、すべて
日本国の法律の定めるところに従うものとする。

８．本保証（本要項を含む。）に基づく義務の履行地は東京都とする。

９．共和国に対する本保証（本要項を含む。）にかかるすべての訴訟は、東京地方裁判所および日本
法上同裁判所からの上訴を審理する権限を有する裁判所に提起することができるものとし、共和国
はかかるすべての訴訟につきその管轄に明示的かつ取消不能の形でここに服する。なお、上記の訴
訟は、共和国の管轄裁判所に対しても提起することができる。共和国は法律上可能な限り、かかる
訴訟に関して享受し得ることあるべき裁判管轄権、訴訟手続、差押え、判決または執行からの免責
特権をここに取消不能の形で放棄する。

共和国は、上記の日本の裁判所に提起されたかかる訴訟に関し、訴状送達を受けるための住所を
日本国東京都千代田区霞が関３丁目２番６号の共和国領事館に定め、その駐在日本国領事をもって
訴状送達の受取人とする。

別紙3

¥10,000,000

No._____

ナウル共和国保証

B 号

ナウル金融公社

円貨債券 (1988)

# 金 壱 千 萬 円

利 率 年 6.5%

1995年5月31日 満期

ナウル金融公社（「ロンフィン」）は、本債券の裏面記載の本債券の要項に
従い、本債券の所持人に対し、元本金額壱千万円（額面超過金を含む。）およ
び本債券の元本金額に対する利息を支払うことをここに約束する。

本債券は、ロンフィンが適法な授権に基づき1988年5月31日に発行したナウ
ル共和国保証B号ナウル金融公社円貨債券（1988）額面総額40億円の一つであ
る。なお、本債券の署名、交付および履行は、共に1972年ナウル金融公社法
（改正済）（「法律」）に基づく1988年5月18日付ロンフィン理事会決議および
1988年5月18日付共和国内閣の書面による事前同意によって授権されている。

1988年5月31日

ナウル金融公社

会 長

(複写方式による署名)
_____

ナウル共和国（「共和国」）は、法律および1988年5月18日付共和国内閣決
定に基づき、裏面記載の保証の要項に従い、本債券の元金（額面超過金を含む。）
および利息ならびに債券の要項に従って支払われるべきその他の金員の期日に
おける確実な支払を無条件かつ取消不能の形で保証する。

1988年5月31日

ナウル共和国

大 統 領

(複写方式による署名)
_____

別紙 4

ナウル共和国保証
B　　号
ナウル金融公社、
円貨債券 (1988)

金壱千万円券利札

半

年
￥　325,000

利
年　月　日渡

金
No.

ナウル金融公社
会　長

(複写方式による署名)

別紙 5

| 買 受 人 の 名 称 | 住　　　　所 | 買受債券額面金額 |
|---|---|---|
| 秋田県信用農業協同組合連合会 | 秋田県秋田市八橋字戌川原64番地の2 | 500,000,000 |
| ドイチェ・バンク・アクチエンゲゼルシャフト（ドイツ銀行） | 東京都港区赤坂1丁目12番32号アーク森ビル | 500,000,000 |
| ケ ミ カ ル 信 託 銀 行 株 式 会 社 | 東京都千代田区丸の内2丁目3番1号 | 400,000,000 |
| 第 百 生 命 保 険 相 互 会 社 | 東京都調布市国領町4丁目34番1 | 400,000,000 |
| 株式会社 埼 玉 銀 行 | 埼玉県浦和市常盤7丁目4番1号 | 400,000,000 |
| 沖縄県信用農業協同組合連合会 | 沖縄県那覇市楚辺2丁目33番18号 | 200,000,000 |
| 大 正 生 命 保 険 株 式 会 社 | 東京都千代田区有楽町1丁目9番1号 | 200,000,000 |
| 日 本 火 災 海 上 保 険 株 式 会 社 | 東京都中央区日本橋2丁目2番10号 | 200,000,000 |
| 安 田 生 命 保 険 相 互 会 社 | 東京都新宿区西新宿1丁目9番1号 | 200,000,000 |
| 米 子 信 用 金 庫 | 鳥取県米子市東福原338番地1 | 200,000,000 |
| 足 立 綜 合 信 用 組 合 | 東京都足立区千住橋戸町50番地 | 100,000,000 |
| 福 泉 信 用 組 合 | 福井県福井市大手3丁目17番1号 | 100,000,000 |
| 岐阜県共済農業協同組合連合会 | 岐阜県宇佐南4丁目13番1号 | 100,000,000 |
| 朝 日 投 信 委 託 株 式 会 社 | 東京都中央区日本橋兜町13番1号 | 100,000,000 |
| 千 代 田 生 命 保 険 相 互 会 社 | 東京都目黒区上目黒2丁目19番18号 | 100,000,000 |
| 太 陽 投 信 委 託 株 式 会 社 | 東京都中央区日本橋1丁目7番9号 | 100,000,000 |
| 株式会社 東 邦 相 互 銀 行 | 愛媛県松山市二番町4丁目5番地1 | 100,000,000 |
| 山 一 証 券 投 資 信 託 委 託 株 式 会 社 | 東京都中央区八丁堀1丁目5番1号 | 100,000,000 |

合　　　　計　　　　　　　　　　　　　　　　4,000,000,000円



81355707987-on)

REPUBLIC OF NAURU FINANCE CORPORATION

JAPANESE YEN BONDS – SERIES C (1989)

GUARANTEED BY THE REPUBLIC OF NAURU

BOND PURCHASE AGREEMENT

This Bond Purchase Agreement ("Agreement") is entered into in Tokyo on July 21, 1989 between Republic of Nauru Finance Corporation ("Ronfin") and the other party to this Agreement set forth in the signature column at the foot of this Agreement (the "Purchaser").

1.  The Bonds.

1.1  Ronfin has duly authorized and proposes to issue ¥5,000,000,000 aggregate principal amount of Japanese Yen Bonds – Series C (1989) (the "Bonds") Guaranteed by the Republic of Nauru (the "Republic"), the conditions of Bonds (the "Conditions of Bonds"), the Bonds and the interest coupons to be substantially in the forms of Annexes 1, 3 and 4 attached hereto.  The term "Bonds" as used in this Agreement shall include the Bonds delivered to the Purchaser pursuant to this Agreement and to the purchasers thereof pursuant to the other Agreements referred to in Section 2.3 hereof and each Bond delivered in substitution or exchange therefor and where applicable shall include the singular number as well as the plural.

1.2  The payment of principal (including premium, if any) of, and interest on, the Bonds and all other moneys payable in relation to the Bonds is guaranteed by the Republic by virtue of Section 4(6) of the Republic of Nauru Finance Corporation Act 1972, as amended (the "Act"), and such payment is additionally guaranteed by the Republic in accordance with the conditions of guarantee (the "Conditions of Guarantee") substantially in the form of Annex 2 attached hereto.  Such guarantees shall hereinafter be referred to as the "Guarantee".

2.  Certain Representations and Warranties by Ronfin.

Ronfin hereby represents and warrants that:

2.1  Placement Memorandum.  Ronfin has furnished to the Purchaser a copy of its Placement Memorandum dated July 1989. Such Placement Memorandum contains the most recent audited accounts of Ronfin and other pertinent information with respect to Ronfin's financial and operating conditions and economic, monetary, financial and other conditions of the Republic and the information contained in such Placement Memorandum is accurate in all material respects and does not include any

untrue statement of any material fact or omit to state any material fact the omission of which would make the statements there in misleading, in connection with the private placement of the bonds. Subsequent to the respective dates as of which information is given in such Placement Memorandum, there has been no material change in the liabilities (direct or contingent) or obligations of Ronfin and no material adverse change (financial, economic, political or other) in Ronfin's and the Republic's conditions, except as contemplated in said Placement Memorandum or as disclosed to the Purchaser in writing: and Ronfin is not in default under any of its indebtedness.

2.2 Legality.

81355707987

– 3 –

On the Closing Date, all authorizations, approvals, consents
and permissions of governmental bodies and authorities of the
Republic, or of any agency, instrumentality or political sub-
division thereof (including the Decisions passed by the Cabinet
of the Republic on May 5, 1989 and July 11, 1989 in relation
to the Cabinet authorization of the Guarantee by the Republic
and the consent of the Cabinet to the issue of the Bonds by
Ronfin pursuant to Section 4(b) and Section 19(3) of the
Act, respectively), required to be obtained in connection
with the Guarantee and the execution and delivery by Ronfin
of this Agreement and the issuance and sale by it of the
Bonds pursuant hereto and the performance by Ronfin of its
obligations hereunder and under the Bonds will have been
duly obtained and will be in full force and effect.

2.3   Private Placement.   Ronfin represents and warrants
that, concurrently with the execution and delivery of this
Agreement, Ronfin is executing and delivering agreements
identical hereto (except as to the aggregate principal amount
of Bonds to be purchased) with each of the other purchasers
listed in Annex 5 attached hereto under which each of said other
purchasers agrees to purchase from Ronfin the aggregate principal
amount of Bonds set forth opposite such purchaser's name in
Annex 5.   Each such purchaser makes the same representations as
those made by the Purchaser in Section 3 hereof.   The purchase
made by each purchaser is to be a separate and several purchase
from Ronfin by such purchaser, and the sale and delivery of Bonds
to each purchaser is to be a separate and several sale and delivery
by Ronfin to such purchaser.   This Agreement and said other
agreements are sometimes collectively referred to herein as the
"Agreements".   Ronfin's agents in connection with the arrangement
of the issuance of the Bonds have been Daiwa Securities Co. Ltd.,
The Sumitomo Trust and Banking Company, Limited, The Chiyoda
Mutual Life Insurance Company and Nippon Dantai Life Insurance
Co., Ltd. which are responsible for the placement of the Bonds
in Japan.

Ronfin has not, directly or through any agent, offered any
of the Bonds or any substantially similar securities for sale to,
or solicited any offers to buy any of them from, or otherwise
approached or negotiated in respect thereof with, any person
or persons other than not more than forty-nine (49) institutional
investors including the Purchaser and other purchasers set forth
in Annex 5 hereof.

3.   Representations by the Purchaser.

3.1   (i)   The purchaser acknowledges that no registration
under Article 4 of the Securities and Exchange Law of Japan
(Law No.25, 1948) including amendments thereto (collectively
the "Law") has been filed by Ronfin with respect to the Bonds;
and

81355707987

(ii)  The Purchaser warrants and covenants to Ronfin that the Purchaser's purchase of the Bond or Bonds being purchased by the Purchaser has been made for investment purposes for the Purchaser's own account or a trust account and that the Purchaser will not sell such Bond or Bonds at such time or in such manner as may be construed as an offering or sale to the public of the Bonds the registration for which is required under the Law.

4.   Sale and Purchase of Bonds.

4.1  Ronfin hereby agrees to issue and sell to the Purchaser and; subject to the terms and conditions herein set forth and in reliance on the representations, warranties and agreements of Ronfin herein contained, the Purchaser agrees to purchase from Ronfin, at an issue price of 100% of the principal amount thereof, the principal amount of the Bond or Bonds set forth opposite the Purchaser's name under the heading "Principal Amount of Bonds Purchased" in Annex 5 hereto.   The Bond or Bonds so to be purchased by the Purchaser shall be issued by Ronfin on July 27, 1989 (the "Closing Date") against payment by the Purchaser of the entire amount of the issue price thereof to Ronfin in accordance with the provisions of Section 4.2 hereof.

4.2  Before 14:00 hours, Japan time, on the Closing Date the Purchaser shall pay to Ronfin the entire amount of the issue price of the Bond or Bonds to be purchased by the Purchaser. Such payment shall be made in immediately available funds in Yen by transfer of the amount to the account of Ronfin established for this purpose with

4.3  As soon as practicable after the issue of the Bonds pursuant to Section 4.1 hereof, Ronfin shall deliver at the Tokyo Business Department of The Sumitomo Trust and Banking Company, Limited a Bond certificate or Bond certificates duly executed on behalf of Ronfin, dated the Closing Date, and in an aggregate principal amount equal to the principal amount of the Bond or Bonds being purchased by the Purchaser.

At the option of the Purchaser, the Bond or Bonds to be purchased by the Purchaser may be recorded under the Law on Recording of Bonds, etc. of Japan (Law No.11, 1942) at the expense of Ronfin, in which event a recording receipt or recording receipts shall be delivered as soon as practicable thereafter in lieu of a Bond certificate or Bond certificates.

81355707987 5 –

5.   Conditions.

5.1  The Purchaser's obligation to purchase and pay for the principal amount of the Bonds being purchased by the Purchaser on the Closing Date shall be subject to the accuracy of and compliance with the representations and warranties by Ronfin contained in Section 2 hereof and to the satisfaction, at or prior to the Closing Date, of the following further conditions:

(i)   Opinion of the Secretary for Justice or the senior legal officer of the Department of Justice of the Republic.

Ronfin shall have furnished to the Purchaser the opinion, written in English, of the Secretary for Justice or the senior legal officer of the Department of Justice of the Republic, (which opinion shall be dated the Closing Date and may rely upon the opinion of Messrs. Aoki, Christensen & Nomoto mentioned below as to matters of the laws of Japan), to the effect that:

(a)   The Republic is the sole corporator of Ronfin; Ronfin is validly existing as a body corporate, organized and existing under the laws of the Republic, with full power and authority (corporate and other) to conduct its operations as presently conducted and as described in its Placement Memorandum referred to in Section 2.1 hereof, to enter into this Agreement and to issue the Bonds;

(b)   The Bonds have been duly and validly authorized and assuming the due and valid execution, issuance and delivery of the Bonds under the laws of Japan, the Bonds have been duly and validly executed, issued and delivered by Ronfin; the Bonds, and all the covenants therein contained, constitute the valid, legally binding, direct, unconditional, irrevocable and general obligations of Ronfin in accordance with their terms; and the Bonds rank pari passu, without any preference one above the other by reason of priority of date of issue, currency of payment or otherwise, with all other present and future unsecured indebtedness of Ronfin;

81355707987

− 6 −

(c)  The Agreements have been duly authorized, executed and delivered by Ronfin and constitute valid and legally binding obligations of Ronfin;

(d)  Neither the execution and delivery of the Agreements or the Bonds by Ronfin, nor the performance by it of any of its obligations thereunder, nor the compliance by it with the terms and conditions thereof, will violate, conflict with or result in any breach of any terms, conditions or provisions of, or constitute a default under, any law, administrative regulation or court judgment or decree applicable to Ronfin or pursuant to which it was organized or any agreement or instrument to which Ronfin is a party or by which it or any of its property is bound, or result in the creation or imposition of any lien, pledge or other charge of any nature whatsoever on any of the properties or assets of Ronfin;

(e)  Ronfin has obtained the prior written consent of the Cabinet of the Republic authorizing the issuance of the Bonds; such consent remains in full force and effect on the Closing Date; and no other authorization, approval, consent or permission of any governmental body or authority of the Republic or the Commonwealth of Australia, or of any agency, instrumentality or political subdivision thereof, is required to be obtained in connection with the execution or delivery by Ronfin of the Agreements or the issuance or sale by it of the Bonds pursuant thereto or the performance by Ronfin of its obligations under the Agreements or the Bonds;

(f)  Under the laws and regulations of the Republic or the Commonwealth of Australia or any political subdivision thereof now in effect, no authorization, approval, consent or permission of any governmental body or authority of the Republic or the Commonwealth of Australia, or of any agency, instrumentality or political subdivision thereof, is required to be obtained by Ronfin to purchase Yen in exchange for Australian Dollars and to make payment of the principal (including premium, if any) of and interest on the Bonds to the holders thereof in accordance with the terms thereof;

81355707987

- 7 -

(g)  There are no stamp, documentary or other
similar taxes or duties assessable or payable in the
Republic; the Agreements and the Bonds are admissible
into evidence in the courts of the Republic in the form
in which they have been delivered to the purchasers of
the Bonds;

(h)  Any action by any purchaser based upon the
Agreements and any action by a holder of a Bond based upon
such Bond may be instituted against Ronfin in the Tokyo
District Court in Japan and any Japanese court competent
under Japanese law to hear appeals from such court or in
any court of competent jurisdiction located in the Republic,
and under the laws of the Republic and of all relevant
political subdivisions thereof, Ronfin would not be entitled
to plead, or cause to be pleaded on its behalf, any immunity
from the jurisdiction of any such court in any such action;

(i)  The payment of principal (including premium,
if any) of, and interest on, the Bonds and all other moneys
payable in relation to the Bonds is guaranteed by the
Republic by virtue of Section 4(6) of the Act and such
payment is additionally guaranteed by the Republic in
accordance with the Conditions of Guarantee; when the Bonds
shall have been duly issued in accordance with the Agreements
and the Conditions of Bonds, the Guarantee, insofar as all
matters of Nauruan law are concerned, will constitute legally
valid and binding unsecured obligations of the Republic
ranking pari passu with all other unsecured obligations
of the Republic for money borrowed and with all of its
other unsecured guarantees or indemnities for obligations
of others for money borrowed irrespective of date of creation
thereof, the currency of payment or otherwise;

(j)  Neither the existence of the Guarantee nor the
performance by the Republic of the Guarantee will violate,
or will be inconsistent with, any provisions of the
constitution, any statutes or other laws or regulations
of the Republic or any agreements to which the Republic is
a party or by which the Republic is bound, or will constitute
a breach of any of the liabilities or obligations of the
Republic arising thereunder;

81355707987 .

- 8 -

(k)   The Republic will not have a right to claim immunity based on sovereignty before the courts of competent jurisdiction in Japan or the Republic in respect of the obligation arising from the Guarantee;

(l)   If a Bondholder were to take action against Ronfin or the Republic in Japan to recover the principal (including premium, if any) of, or interest on, the Bonds where jurisdiction over Ronfin or the Republic was obtained by submission to jurisdiction and service of process in accordance with Section 8.2 of the Agreements or Condition 26 of the Conditions of Bonds or Condition 9 of the Conditions of Guarantee and were to obtain a final and conclusive judgement, proceedings could then be brought in the Supreme Court of the Republic or in any other court of competent jurisdiction.   A judgement of that Nauruan court founded on the Japanese judgement could be obtained without examining the merits of the Japanese judgement, provided the Cabinet of the Republic was satisfied that substantial reciprocity of treatment will be assured with respect to the enforcement in Japan of judgements given in the Supreme Court of the Republic, and provided further the Nauruan court was satisfied in respect of the following principal requirements:   Ronfin or the Republic had waived its immunity, on the grounds of sovereign immunity or otherwise, from suit in the actual Japanese proceedings; the judgement had not been obtained by fraud; and enforcement of the judgement would not be contrary to public policy in the Republic;

81355707987
- 9 -

(m)  No litigation, arbitration or administrative
proceedings are presently current or pending or to the
knowledge of Ronfin, threatened, against Ronfin or the
Republic which might have a material adverse effect
on Ronfin's or the Republic's ability to perform its
obligations under the Agreement, the Conditions of Bonds
or the Conditions of Guarantee; and

(n)  The statements of a legal nature made under the
heading "The Republic of Nauru Finance Corporation" and
"The Republic of Nauru" set forth in the Placement Memorandum
are correct as set forth therein.

Such opinion shall be accompanied by the texts of
relevant provisions of the laws and decrees of the Republic
and other relevant documents, under which the issuance of the
Bonds and the Guarantee are authorized.

(ii)  Opinion of Japanese Legal Counsel to the Purchasers.

The Purchaser shall have received the opinion of Messrs. Aoki,
Christensen & Nomoto, as the purchasers' Japanese legal counsel
in connection with the transactions contemplated by the Agreements,
the Paying Agent Agreement referred to in subsection (v) of
Section 5.1 hereof, the Recording Agency Agreement referred to
in subsection (v) of Section 5.1 hereof, the Bonds and the
Guarantee (which opinion shall be dated the Closing Date and
may rely upon the opinion as mentioned in subsection (i) of
Section 5.1 hereof as to matters of the laws of the Republic),
as to the validity under the laws of Japan of the Agreements,
the Paying Agent Agreement, the Recording Agency Agreement,
the Bonds and the Guarantee and as to such other related
matters as the purchasers may require; and Ronfin shall have
furnished to the purchasers' legal counsel such documents
(together with certified English translations thereof where
appropriate) as they may reasonably request in connection
with such matters.

81355707987 10

(iii)   Correctness of Representations.

There has been no event rendering the representations
and warranties by Ronfin contained in Section 2 hereof to be
untrue or incorrect and they remain true and correct as at
the Closing Date as though they had been given on the Closing
Date.

(iv)   Prior Notification to Minister of Finance of Japan.

A notification and amendments thereto, if any, required
under Japanese foreign exchange control laws and regulations
shall have been filed with the Minister of Finance of Japan
by Ronfin with respect to the issuance of the Bonds and a
notice of the Minister of Finance of Japan authorizing the
effecting of the transactions covered by the above notification
and amendments thereto, if any, shall have been issued by the
Minister of Finance of Japan and such notice shall remain in
full force and effect on the Closing Date.

(v)   The Paying Agent Agreement and the Recording Agency
      Agreement.

The Paying Agent Agreement and the Recording Agency
Agreement shall have been executed by and between Ronfin and
The Sumitomo Trust and Banking Company, Limited and shall be in
full force and effect as of the Closing Date.

(vi)   Designation by the Competent Minister for Recording
       of the Bonds.

Designation of the Bonds as bonds to be recorded pursuant
to the Ministerial Ordinance Concerning Enforcement of the Law
on the Recording of Bonds, etc. (Ministry of Finance and Ministry
of Justice Joint Ordinance No.1 of 1942) and designation of
The Sumitomo Trust and Banking Company, Limited as the recording
agency for the Bonds pursuant to the Ordinance Concerning
Enforcement of the Law on the Recording of Bonds, etc. (Imperial
Ordinance No.409 of 1942) have been obtained from the Minister
of Justice and the Minister of Finance of Japan.

81355707987
_11 _

(vii)  Miscellaneous.

Ronfin shall have taken, on or prior to the Closing Date,
all other action, if any, which the Agreements contemplate
will be taken by it on or prior to the Closing Date.

5.2   Should any of the conditions in Section 5.1 hereof
not have been satisfied prior to payment by the Purchaser
pursuant to Section 4.2 hereof of the issue price of the
Bond or Bonds being purchased by the Purchaser, the Purchaser
may (but is not under obligation to) by telegraphic or telex
notice (promptly confirmed in writing) to Ronfin forthwith
terminate the Purchaser's commitment to purchase the Bonds
unless prior thereto such condition shall have been satisfied
or shall have been waived by the Purchaser in writing;
thereupon, this Agreement shall forthwith terminate and have
no further force and effect and the Purchaser shall be
relieved from any of the Purchaser's obligations hereunder
while Ronfin shall not be relieved from its obligations
under subsection (i) of Section 6.1 hereof (except for fees
payable to the agents named in Section 2.3 hereof).

5.3   Ronfin shall not be obligated to sell to the Purchaser
the Bonds to be purchased by the Purchaser on the Closing Date
unless the purchasers under all the Agreements purchase on the
Closing Date the respective principal amounts of the Bonds they
have agreed to purchase.

6.   Covenants of Ronfin.

6.1   Ronfin covenants and agrees that:

(i)   Ronfin will pay all costs and expenses incurred by
it in connection with the transactions contemplated by the
Agreements.  Ronfin will also pay fees and expenses of the
agents named in Section 2.3 hereof in connection with the
arrangement for the transactions contemplated by the Agreements
and costs and expenses for preparing and printing the Placement
Memorandum, the Agreements, the Paying Agent Agreement, the
Recording Agency Agreement, the Bond certificates, interest
coupons and other documents and fees and expenses of the legal
counsel referred to in subsection (ii) of Section 5.1 hereof;
and reasonable costs and expenses incurred by the Purchaser
and the other purchasers under the other Agreements in connection
with the transactions contemplated by the Agreements.

81355707987
- 12 -

(ii)  Ronfin will not offer or sell simultaneously in Japan any securities substantially similar to the Bonds under circumstances that would cause the offering or sale of the Bonds and such other securities, taken together, to be construed by the Japanese courts or the Minister of Finance of Japan as an offering or sale to the public of the bonds for which registration is required under the Law.

(iii)  Ronfin will furnish to the Bank (as defined in the Conditions of Bonds) with sufficient copies for the Purchasers as soon as practicable (and in any event not later than six (6) months after the close of each financial year of Ronfin) of the audited annual report of Ronfin containing its balance sheet and statement of profit and loss and provide the Bank with such additional information as the Bank may from time to time reasonably require.

7.    Notices.

7.1  Unless otherwise specifically provided, any notice or demand to be given to or served upon Ronfin or the Purchaser in connection herewith shall be deemed to have been duly given or served for all purposes (if sent by telex, promptly confirmed in writing sent by registered airmail, postage prepaid), if to Ronfin, addressed:

if by airmail, to:

    Republic of Nauru Finance Corporation
    Government Offices,
    Yaren District,
    The Republic of Nauru
    Nauru Island
    Central Pacific

    Attention:  Chairman

if by telex, to:  ZV33081 GOVNARU

or if to the Purchaser, to the Purchaser's address shown in Annex 5 hereto or, if any other address shall at any time be designated by a party hereto in writing to the other party, to such other address.  All such notice or demand shall be in the English language.

813557079B7
- 13 -

8.   Miscellaneous.

8.1   This Agreement shall be governed by and construed in accordance with the laws of Japan, except for matters relating to the authorization of this Agreement by Ronfin which shall be governed by the laws of the Republic.

8.2   Any action against Ronfin arising from or relating to this Agreement may be instituted in the Tokyo District Court and any Japanese court competent under Japanese law to hear appeals from such court, to the jurisdiction of which Ronfin hereby expressly, unconditionally and irrevocably submits. Any such action may also be instituted against Ronfin in any court in the Republic competent under the laws of the Republic to hear such action.  Ronfin (to the extent it has or may hereafter acquire immunity) hereby unconditionally and irrevocably waives, to the fullest extent permitted by applicable laws, any immunity, on the grounds of sovereign immunity or otherwise, from legal process (whether in respect of service of process, obtaining of a judgment, attachment, execution or otherwise) with respect to itself or its property or assets in respect of its obligations under this Agreement which may be instituted against it in any such court in Japan or in the Republic; Ronfin hereby appoints the Consul for Nauru in Japan as its authorized agent upon whom process may be served in any action arising from or relating to this Agreement that may be instituted in Japan; Ronfin hereby designates the Consulate of Nauru in Japan as of the date hereof at Fukuoka Dentaru Building, 12-13, Kajiyacho, Kagoshima-shi, Kagoshima-ken, Japan, as the address to receive such process; and Ronfin hereby undertakes to take, from time to time and so long as any of the Bonds shall remain outstanding, any and all action (including the execution and filing of any and all documents and instruments) that may be necessary to effect and to continue such appointment and designation in full force and effect.  If at any time the Consul for Nauru in Japan should, for any reason, be unwilling or unable to continue to act as such authorized agent, Ronfin shall immediately appoint, and it hereby undertakes to take any and all action that may be necessary to effect the appointment of, a successor authorized agent in Japan and Ronfin shall notify the Bondholders or cause the Bondholders to be notified of such successor agent.

81365707987
- 14 -

8.3  All of the terms and provisions of this Agreement (including all covenants, agreements, representations and warranties) shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns including the holders from time to time of the Bonds, except that Ronfin may not assign or transfer its rights or obligations hereunder without the prior written consent of the purchasers.

8.4  Notwithstanding any investigation made by any purchaser, all covenants, agreements, representations and warranties made herein and in the Bonds shall survive the issuance and delivery of the Bonds and the payment therefor.

8.5  This Agreement shall be executed in two (2) counterparts in the Japanese language with a translation into the English language attached thereto.  In the event of a dispute or difference as to meaning or intent, the Japanese version shall prevail.

IN WITNESS WHEREOF, the parties hereto have caused their respective representatives to execute this Agreement in the place and on the date as hereinabove stated.

REPUBLIC OF NAURU FINANCE
CORPORATION

By_____

By_____

813557D7987

Annex 1

(Translation)

CONDITIONS OF BONDS

THESE CONDITIONS OF BONDS (the "Conditions of Bonds") shall apply to the issue of REPUBLIC OF NAURU FINANCE CORPORATION JAPANESE YEN BONDS - SERIES C (1989) (the "Bonds") GUARANTEED BY THE REPUBLIC OF NAURU (the "Republic") pursuant to lawful authorization by Republic of Nauru Finance Corporation ("Ronfin").

1.    The aggregate principal amount of the Bonds is ¥5,000,000,000.

2.    The Bonds are issued in the denomination of ¥10,000,000 each.  No Bonds shall be split into Bonds of a smaller denomination or consolidated with any other Bonds.

3.    The Bonds shall bear interest at the rate of 7.0% per annum.

4.    The Bonds are issued exclusively as bearer bonds with interest coupons and shall not be exchangeable for registered bonds.

5.    The payment of principal (including premium, if any) of and interest on the Bonds and all other moneys payable in relation to the Bonds is guaranteed by the Republic by virtue of Section 4(6) of the Republic of Nauru Finance Corporation Act 1972, as amended (the "Ronfin Act"), and such payment is additionally guaranteed by the Republic in accordance with the conditions of guarantee (the "Conditions of Guarantee").  Such guarantees shall hereinafter be referred to as the "Guarantee".

6.    The period of extinctive prescription shall be ten (10) years for the principal (including premium, if any) of the Bonds and five (5) years for the interest on the Bonds.

7.    The Bond certificates and interest coupons shall bear the facsimile signature of the Chairman of Ronfin.

8.    The Sumitomo Trust and Banking Company, Limited (the "Bank") shall act as the recording agency for the Bonds.  The holders of the Bonds (the "Bondholders") shall have the option to record their Bonds at any time.  The recording of the Bonds at the request of initial subscribers of the Bonds will be made at the expense of Ronfin.  Otherwise, the recording of the Bonds shall be made at the expense of the applicants therefor.  All expenses for the preparation and delivery of Bond certificates and interest coupons upon cancellation of the recording of recorded Bonds shall be for the account of the applicants therefor.

01355707987

- 2 -

9.   The registration book for the Bonds (the "Registra-
tion Book") shall be prepared and maintained by the Bank on
behalf of Ronfin.

10.   Payments of principal (including premium, if any)
of and interest on the Bonds will be made by Ronfin in lawful
Japanese currency at the Tokyo Business Department of the Bank.

11.   With respect to the Bonds represented by Bond
certificates, payment of principal (including premium, if
any) shall be made upon the surrender of the relevant Bond
certificates, and payment of interest shall be made upon
surrender of the relevant interest coupon, except as other-
wise provided in Condition 22.

With respect to the recorded Bonds, payment of principal
(including premium, if any) shall be made upon surrender of the
relevant payment voucher and the recording receipt, and payment
of interest shall be made upon surrender of the relevant payment
voucher.   The Bank shall confirm that each payment voucher
surrendered bears the seal impression of the relevant Bond-
holder as registered with the Bank.

12.   The Bond certificate surrendered for redemption must
be presented together with all unmatured interest coupons
appertaining thereto.   The amount equivalent to the face amount
of missing unmatured interest coupons shall be deducted from
the principal; provided, however, that the holders of any such
interest coupons may, upon surrender of such interest coupons
within the extinctive prescription period of five (5) years
from the date fixed for the redemption of the Bonds to which
such interest coupons appertain, receive the amount so deducted.

13.   Upon making payment of principal (including premium,
if any) and interest, the Bank shall make proper entries in
the Registration Book.

14.   The Bonds shall bear interest from July 28, 1989,
payable semi-annually in arrears on January 27 and July 27 of
each year commencing on January 27, 1990 in respect of the six
months to and including the relevant interest payment date.

81355707987

- 3 -

15.   The Bonds shall cease to bear interest after the date on which they become due for redemption; provided, however, that should Ronfin fail to redeem the Bonds when due; interest, computed on the basis of a 365-day year at the rate specified in Condition 3, shall be paid for the actual number of days of the period until the actual redemption of the Bonds. Such period, however, shall not exceed seven (7) bank business days in Japan commencing on the date on which a public notice has been given or a notice by other means has been dispatched to each of the Bondholders by the Bank on behalf of Ronfin to the effect that the necessary funds for the redemption have been received by the Bank.   The Bank shall give or dispatch such notice within fourteen (14) bank business days in Japan after its receipt of such funds.

16.   All payments of principal (including premium, if any) of and interest on the Bonds will be made without deduction or withholding for or on account of any present or future taxes or duties of whatsoever nature imposed or levied by the Republic or by any authority of or in the Republic having power to tax, unless Ronfin is compelled by law to deduct or withhold such Nauruan taxes.   In that event, Ronfin will pay such additional amounts by way of principal (including premium; if any) or interest as will result in the receipt by the Bondholders of the amounts which would otherwise have been receivable in respect of principal (including premium, if any) or interest, except that no such additional amount shall be payable with respect to any Bond presented for payment by or on behalf of a Bondholder who is liable to Nauruan taxation on such principal (including premium, if any) or interest by reason of his being connected with the Republic otherwise than merely by his holding the Bond.   The principal (including premium, if any) of and interest on the Bonds, as referred to in the Conditions of Bonds (other than in this Condition 16), shall each include the aforesaid additional amount payable with respect to each of them pursuant to this Condition 16.

17.   The Bonds shall be redeemed at a price equal to the principal amount on July 27, 1994.

- 4 -

81355707987

18.   The Bonds constitute the valid, legally binding,
direct, unconditional, irrevocable and general obligations
of Ronfin and rank and will rank at least pari passu without
any preference one above the other by reason of priority of
date of issue, currency of payment or otherwise, with all
other present or future unsecured indebtedness of Ronfin.
So long as any of the Bonds shall be outstanding, Ronfin shall
not, or, as the case may be, shall undertake not to, create
or permit to subsist on the whole or any part of any of its
present or future assets or revenues or on any funds governed
by the Nauru Phosphate Royalties (Payment and Investment) Act
1968, as amended, and the Nauru Phosphate Royalties Trust
Ordinance 1968 any lien, mortgage, pledge or other security
to secure any bonds, now or hereafter existing (except for any
lien, mortgage, pledge or other security on property purchased
by Ronfin as security for all or part of the purchase price
thereof), unless the Bonds shall also be validly secured by
such lien, mortgage, pledge or other security equally and
ratably with such other bonds so secured, and the instrument
or the enactment creating such lien, mortgage, pledge or
other security shall expressly so provide.

19.   If any security is provided by Ronfin to the Bond-
holders pursuant to Condition 18, such security rights shall
be held and exercised by the Bank for the benefit of all the
Bondholders.  Any expense incurred by the Bank in its holding
and exercise of security rights shall be borne by Ronfin.
Without prejudice to the obligations of Ronfin to pay such
expenses unless any then applicable Japanese law provides
otherwise, the Bank shall be entitled to charge to the
Bondholders, in proportion to their holdings of Bonds, any
expenses to the extent that they have not been recovered
from Ronfin and to request the advance payment thereof from
the Bondholders.

81355707987 5 -

20. If any of the events of default prescribed in the following paragraphs (a) through (i) shall have occurred and be continuing, the Bank may, pursuant to a resolution of a Bondholders' meeting or at the request in writing of the holders of more than one half (1/2) of the aggregate principal amount of all the Bonds then outstanding made to the Bank, declare all the Bonds then outstanding immediately due and payable by written notice to Ronfin.

(a) There is default by Ronfin and the Republic for more than five (5) days in the payment of the principal (including premium, if any) or interest in respect of the Bonds or any of them; or

(b) There is default by Ronfin in the due performance or observance of any other provisions contained in the Bonds and such default continues for more than twenty (20) days after the date on which the Bank shall first have given to Ronfin written notice of such failure, requiring Ronfin to remedy the same; or

(c) Ronfin becomes bound or becomes capable of being declared to be bound to repay prematurely any indebtedness for money borrowed by reason of a default by Ronfin in its obligations in respect of the same, or fails to repay the principal amount of any such indebtedness or to pay any guarantee in respect of the principal amount of any such indebtedness upon the maturity thereof (and such failure shall continue beyond any applicable grace period); or

(d) Ronfin shall cease to carry on all or a sub-stantial part of its business or the ownership, possession or control of all or substantially all of the assets, or of any property necessary for the operations, of Ronfin shall have been relinquished voluntarily or involuntarily by Ronfin; or

(e) Ronfin shall be adjudicated bankrupt or insolvent under any applicable law, or admit in writing its inability to pay its debts as they mature, or make an assignment for the benefit of its creditors generally, or Ronfin shall institute any proceedings for bankruptcy, reorganiza-tion, dissolution or liquidation or similar proceedings relating to it under the laws of any jurisdiction, or if any such proceeding shall be instituted against Ronfin and shall remain undismissed for a period of 30 days, or any judgment or execution or similar process

81355707987
- 6 -

shall be issued or levied against a substantial part of
the property of Ronfin and such judgment or similar
process shall not be released within 60 days after its
issue or levy; or

(f) Any governmental or other registration, licence,
authorization or approval necessary to enable Ronfin to
comply with or perform any of its obligations under the
Bonds is revoked, withdrawn or withheld or otherwise fails
to remain in full force and effect; or

(g) It becomes unlawful for Ronfin to perform any
of its obligations under the Bonds; or

(h) A moratorium on the payment of any present or
future indebtedness of, or guarantee issued by, Ronfin
or any present or future indebtedness of, or guarantee
of indebtedness issued by, the Republic has been declared
by the Republic or any other governmental authority; or

(i) The Guarantee by the Republic ceases to be in
full force and effect, or as a result of change in Section
30 of the Ronfin Act the Cabinet of the Republic comes to
have no full power and authority to direct that the assets
of any one or more of the funds as referred to in Condition
18 are to be charged or deposited to secure the repayment
of any moneys borrowed by Ronfin or any credit granted to it.

If any of the events specified in paragraphs (c) through
(i) above has occurred, Ronfin shall immediately notify the
Bank of such event, whereupon the Bank shall, on behalf of
Ronfin, immediately give public notice or notice by other
means of such event to the Bondholders.

Upon such declaration by the Bank, all the Bonds then
outstanding shall become due and payable at par immediately
together with accrued interest unless prior thereto Ronfin
shall have cured all such defaults. For the purpose of this
Condition 20 the Bonds, if any, then held by Ronfin shall be
disregarded and deemed not to be outstanding. Any expense
reasonably necessary for the procedures under this Condition
20 shall be borne by Ronfin.

21. When the holders of not less than one-tenth (1/10)
of the aggregate principal amount of the Bonds then outstand-
ing, either acting jointly or individually, make a request
therefor to the Bank in writing or should the Bank deem it
necessary, the Bank shall convene a Bondholders' meeting by
giving at least twenty-one (21) days prior public notice or
notice by other means of the meeting to consider any matters
as the Bank may deem to have serious effect on the interests
of the Bondholders. At such meeting, each Bondholder shall

- 7 -

have one vote for each ¥10,000,000 of the principal amount of the Bonds. Resolutions of such meeting shall be adopted by two-thirds (2/3) or more of the votes of the Bondholders present at such meeting, which must be attended by the holders of more than one half (1/2) of the aggregate principal amount of the Bonds then outstanding and such resolutions shall be binding on all the Bondholders and shall thereupon be carried out by the Bank. For the purpose of this Condition 21, the Bonds, if any, then held by Ronfin shall be disregarded and deemed not to be outstanding. Any expense necessary for the procedures under this Condition 21 shall be borne by Ronfin.

22. The Bank shall deliver substitute Bond certificates or interest coupons to holders of lost, stolen, destroyed or damaged Bond certificates or interest coupons, upon application therefor from them accompanied by a certified transcript of a judgment of nullification of their Bond certificates or interest coupons rendered by a Japanese court. Upon presentation of a certified transcript of such a judgment of nullification of a Bond certificate or interest coupon, the principal (including premium, if any) or the interest represented by such Bond certificate or interest coupon which has then matured shall be payable by the Bank without surrender of the Bond certificate or interest coupon. Any court having jurisdiction over the place in Japan where principal (including premium, if any) of or interest on the Bonds is payable shall have jurisdiction concerning the procedures for the judgment of nullification regarding the Bond certificates and interest coupons. Upon application by a holder of a Bond certificate or interest coupon which has been lost, stolen, destroyed or damaged, the Bank shall prepare and deliver a certificate of Ronfin's issuance of such Bond certificate or interest coupon to be used for obtaining from a Japanese court a judgment of nullification of such Bond certificate or interest coupon. If it is possible for the Bank to identify damaged Bond certificates or interest coupons surrendered to it, the Bank shall deliver substitute Bond certificates or interest coupons therefor and destroy the surrendered Bond certificates or interest coupons. Any expenses for the preparation and delivery of substitute Bond certificates or interest coupons shall be for the account of the applicant therefor.

23. If any due date for the payment of principal (including premium, if any) of or interest on the Bonds falls on a bank holiday in Japan, such payment shall be made on the day immediately subsequent thereto which is a bank business day in Japan.

81355707987

– B –

24.  Except as otherwise provided in the Conditions of Bonds, the place of performance of obligations pertaining to the Bonds is Tokyo.

25.  Except as to the authorization relating to the issuance by Ronfin of the Bonds and as to the matters concerning the creation, validity and enforcement of security provided for in Condition 18, the Bonds, the form and substance of the Bond certificates and all the rights and obligations of all the parties concerned, including the Bondholders, arising thereunder shall in all respects be governed by the laws of Japan.

26.  Any action against Ronfin arising from or relating to the Bonds, Bond certificates and the Conditions of Bonds may be instituted in the Tokyo District Court and any Japanese court competent under Japanese law to hear appeals from such court, to the jurisdiction of which Ronfin hereby expressly, unconditionally and irrevocably submits.  Any such action may also be instituted against Ronfin in any court in the Republic competent under the laws of the Republic to hear such action.  To the extent that Ronfin has or may hereafter acquire any immunity, on the grounds of sovereign immunity or otherwise, from legal process (whether in respect of service of process, obtaining of a judgment, attachment, execution or otherwise) with respect to itself or its property or assets, Ronfin hereby unconditionally and irrevocably waives, to the fullest extent permitted by applicable laws, such immunity from such legal process in respect of its obligations under the Bonds which may be instituted against it in any such court in Japan or in the Republic.  Ronfin hereby appoints the Consul for Nauru in Japan as its authorized agent upon whom process may be served in any action arising from or relating to the Bonds, Bond certificates and the Conditions of Bonds that may be instituted in Japan; Ronfin hereby designates the Consulate of Nauru in Japan at Fukuoka Dentaru Building, 12-13, Kajiyacho, Kagoshima-shi, Kagoshima-ken, Japan, as the address to receive such process; and Ronfin hereby undertakes to take, from time to time and so long as any of the Bonds shall remain outstanding, any and all action (including the execution and filing of any and all documents and instruments) that may be necessary to effect and to continue such appointment and designation in full force and effect.  If at any time the Consul for Nauru in Japan should, for any reason, be unwilling or unable to continue to act as such authorized agent, Ronfin shall immediately appoint, and it hereby undertakes to take any and all action that may be necessary to effect the appointment of, a successo

81355707987
- 9 -

authorized agent in Japan and Ronfin shall notify the
Bondholders or cause the Bondholders to be notified of such
successor agent.  Nothing in this Condition 26 shall affect
the right of the Bondholders to bring any action against
Ronfin in any competent court of any jurisdiction.

    27.  All public notices concerning the Bonds shall be
published once in the Japanese Official Gazette.  If the
Bank deems it appropriate, such public notices need not be
made and the Bank may make direct notices to all the Bond-
holders instead of making public notices.

81355707987

(Translation)

CONDITIONS OF GUARANTEE

THESE CONDITIONS OF GUARANTEE (the "Conditions of Guarantee") shall apply to the guarantee (the "Guarantee") by the Republic of Nauru (the "Republic") of REPUBLIC OF NAURU FINANCE CORPORATION JAPANESE YEN BONDS - SERIES C (1989) (the "Bonds") issued by Republic of Nauru Finance Corporation ("Ronfin").

1.   The Republic unconditionally and irrevocably guarantees to the holders of the Bonds (the "Bondholders") the due and punctual payment by Ronfin of principal (including premium, if any) of, and interest on, the Bonds and all other moneys payable pursuant to the conditions of Bonds (the "Conditions of Bonds") as and when the same shall be due and payable whether at maturity or otherwise. The Republic covenants that should Ronfin fail to make the due and punctual payment of principal (including premium, if any) of, or interest on, the Bonds or any other moneys payable pursuant to the Conditions of Bonds, the Republic shall make such payment as and when the same shall become due and payable whether at maturity or otherwise, as if such payment were made by Ronfin and that the Cabinet of the Republic shall, if necessary, direct that the assets of any one or more of the funds as referred to in Condition 18 of the Bonds are to be charged or deposited to secure the repayment of any moneys borrowed by Ronfin or any credit granted to it.

2.   The obligation of the Republic under the Guarantee shall be absolute and unconditional irrespective of, and shall not be affected or impaired by, (i) any lack of validity, legality or enforceability of, or the voidability of, the Bonds or any coupon appertaining thereto, (ii) any merger, reorganization, bankruptcy or dissolution of Ronfin, (iii) any failure or delay of the Bank (as defined in the Conditions of Bonds) or any holder of any Bond or coupon to exercise, or any lack of diligence in exercising, any right or remedy with respect to the Bond or any coupon, (iv) any waiver, consent or indulgence by the Bank or any holder of any Bond or coupon with respect to the provisions of the Conditions of Bonds, (v) any dealings or transactions between Ronfin and the Bank or any holder of any Bond or coupon whether or not the Republic shall be a party to or cognizant of the same, (vi) the exercise of any right or remedy under the Bonds or any coupon, or the obtaining of any judgment against Ronfin or the taking of any action to enforce the same, or (vii) any other circumstances which might in any manner or to any extent constitute a discharge of or defense available to a guarantor.

81355707987.

- 2 -

3.  Neither any holder of any Bond or coupon nor the Bank
    shall be required to give any notice to or make any
    demand on Ronfin or to proceed against Ronfin's assets
    prior to the performance by the Republic of its obliga-
    tions provided in the Conditions of Guarantee.   The
    Republic agrees that the Republic's obligations provided
    in the Conditions of Guarantee will not be discharged
    except by complete performance of the monetary obligations
    pursuant to the Conditions of Bonds or the Conditions of
    Guarantee.

4.  The Republic agrees that it will not exercise any and
    all rights of indemnification or subrogation or any other
    right relating to the payment of moneys which it may have
    under or by virtue of any contract or law against Ronfin
    as a result of or in relation to the performance of the
    obligations of the Republic in accordance with the
    Conditions of Guarantee unless and until the principal
    (including premium, if any) of, and interest on, all the
    Bonds and all other moneys payable pursuant to the
    Conditions of Bonds shall have been paid in full.

5.  The obligation of the Republic under the Guarantee shall
    rank pari passu with all unsecured indebtedness of the
    Republic for money borrowed (including the issue of
    bonds, hereinafter the same) and with all unsecured
    guarantees of the Republic for indebtedness of others
    for money borrowed without any preference one above the
    other by reason of priority of the date of issue or
    creation thereof, currency of payment or otherwise.

6.  All payments of the principal (including premium, if
    any) of, and interest on, the Bonds which will be made
    by the Republic in implementation of the Guarantee shall
    be made without deduction or withholding for or on account
    of any and all present and future taxes; assessments or
    other charges imposed by the Republic or any taxing
    authority thereof or therein.  If any such taxes, assess-
    ments or other charges shall be imposed on any such
    payment, the Republic shall pay such additional amounts
    as may be necessary in order that every net payment of
    the principal (including premium, if any) of, and interest
    on, the Bonds after deduction or withholding for or on
    account of any present and future taxes, assessments or
    other charges imposed upon such payment will not be less
    than the amount provided for in the Conditions of Bonds;
    provided, however, that the Republic will not be obliged
    to pay any such additional amount for or on account of

81355707987

- 3 -

any such taxes, assessments or other charges imposed on any, holder of any Bond or coupon by reason of his being connnected with the Republic otherwise than by reason only of his ownership of such Bond or coupon or the receipt of principal (including premium, if any) of, or interest on, such Bond.

7.   Except as to the authorization by the Republic of the Guarantee, the Guarantee (including the Conditions of Guarantee) and all the rights and obligations of all the parties concerned, including the holders of Bonds and coupons and the Bank, arising thereunder shall in all respects be governed by the laws of Japan.

8.   The place of performance of obligations pertaining to the Guarantee (including the Conditions of Guarantee) is Tokyo.

9.   Any legal action relating to the Guarantee (including the Conditions of Guarantee) may be brought against the Republic in the Tokyo District Court or any other court of Japan competent under Japanese law to hear appeals from such court, to the jurisdiction of which the Republic hereby expressly and irrevocably submits for purposes of any such action.   Any such action may also be brought against the Republic in any competent court of the Republic.   To the extent permitted by applicable law the Republic hereby irrevocably waives any immunity to which it might otherwise be entitled from jurisdiction, suit, attachment, judgment or execution in any such action.   The Republic hereby designates the Consulate of Nauru in Japan at Fukuoka Dentaru Building, 12-13, Kajiyacho, Kagoshima-shi, Kagoshima-ken, Japan, as the address to accept any service of process in connection with any such action in such courts in Japan, and appoints the Consul for Nauru in Japan as its authorized agent to accept such service of process.

81365707987

Annex 3

Form of Bond Certificate

(Translation)

¥10,000,000
No.

## REPUBLIC OF NAURU FINANCE CORPORATION

### JAPANESE YEN BONDS - SERIES C (1989)

### GUARANTEED BY THE REPUBLIC OF NAURU

Amount ¥10,000,000
Interest Rate: 7.0% per annum
Due July 27, 1994

Republic of Nauru Finance Corporation ("Ronfin") hereby promises to pay to the bearer the principal sum of

Ten Million Japanese Yen
(¥10,000,000)

and premium, if any, and interest on the principal amount of this Bond, all in accordance with the Conditions of Bonds appearing on the reverse hereof. This Bond is one of Japanese Yen Bonds — Series C (1989) of Republic of Nauru Finance Corporation Guaranteed by the Republic of Nauru (the "Republic") in the aggregate principal amount of ¥5,000,000,000 issued on July 27, 1989 by Ronfin pursuant to lawful authorization: the execution, delivery and performance of this Bond has been authorized by the resolutions of the Board of Directors of Ronfin dated April 13, 1989 and by the prior written consent of the Cabinet of the Republic dated May 5, 1989 and July 11, 1989 both pursuant to the Republic of Nauru Finance Corporation Act 1972, as amended (the "Act").

July 27, 1989

Republic of Nauru
Finance Corporation

(Facsimile Signature)
(        Chairman        )

81355707987

- 2 -

The Republic, pursuant to the Act and the Decision by
the Cabinet of the Republic dated May 5, 1989 and July 11, 1989
hereby unconditionally and irrevocably guarantees the due and
punctual payment of the principal (including premium, if any)
of, and interest on, the Bonds, and all other moneys payable
under the Conditions of Bonds, in accordance with the Conditions
of Guarantee endorsed on the reverse hereof.

July 27, 1989

The Republic of Nauru

(Facsimile Signature)
(          President          )

81355707987

Annex 4

Form of Interest Coupon

(Translation)

REPUBLIC OF NAURU FINANCE CORPORATION

JAPANESE YEN BONDS – SERIES C (1989)

GUARANTEED BY THE REPUBLIC OF NAURU

S
e
m
·i     Interest·Coupon of a ¥10,000,000 Bond

A     For ¥
n
n     Payable on _____
u
a     No. _____
l

I
.n
t
e                        Republic of Nauru
r                        Finance Corporation
e
s
t                        (Facsimile Signature)
                         (     Chairman          )

81355707987

Annex 5

(Translation)

| Names and Addresses of Purchasers | | Principal Amount of Bonds Purchased |
|---|---|---|
| The Sumitomo Trust and Banking Company, Limited | 4-4, Marunouchi 1-chome, Chiyoda-ku, Tokyo | ¥500,000,000 |
| The Chiyoda Mutual Life Insurance Company | 19-18, Kamimeguro 2-chome, Meguro-ku, Tokyo | 500,000,000 |
| Nippon Dantai Life Insurance Co., Ltd. | 2-19, Higashi 1-chome, Shibuya-ku, Tokyo | 500,000,000 |
| Chemical Trust and Banking Company, Limited (Japan) | Mitsubishishoji Building Bekkan, 3-1, Marunouchi 2-chome, Chiyoda-ku, Tokyo | 1,000,000,000 |
| The Arashin Bank | 79-7, Arakawa 3-chome, Arakawa-ku, Tokyo | 500,000,000 |
| Tsuru Credit Association | 1729, Shimoyoshida, Fujiyoshida-shi, Yamanashi | 500,000,000 |
| The Furano Shinkin Bank | 8-1, Motomachi, Furano-shi, Hokkaido | 200,000,000 |
| The Heiwa Life Insurance Company Limited | 2-16, Ginza 3-chome, Chuo-ku, Tokyo | 200,000,000 |
| The Mitoshinkin Bank | 2-41, Daikumachi 1-chome, Mito-shi, Ibaraki | 200,000,000 |
| The Hongkong and Shanghai Banking Corporation | Chiyoda Building, 1-2, Marunouchi 2-chome, Chiyoda-ku, Tokyo | 150,000,000 |
| Aichiken Police Credit Association | 1-1, Sannomaru 2-chome, Naka-ku, Nagoya-shi, Aichi | 100,000,000 |
| The Onga Shinkin Bank | 1020-4, Oaza-Korosue, Mizumakicho, Onga-gun, Fukuoka | 100,000,000 |
| The Kagoshima Bank, Limited | 6-6, Kinseicho, Kagoshima-shi, Kagoshima | 100,000,000 |

81355707987

- 2 -

| Names and Addresses of Purchasers | | Principal Amount of Bonds Purchased |
|---|---|---|
| Takamatsu Shinkin Bank | 9-2, Kawaramachi 1-chome, Takamatsu-shi, Kagawa | ¥100,000,000 |
| The Nakatsu Shinkin Bank | 2-528, Toyodamachi, Nakatsu-shi, Oita | 100,000,000 |
| Matsuzawa Shinyo Kinko | 32-13, Kamikitazawa 3-chome, Setagaya-ku, Tokyo | 100,000,000 |
| Aichi Iryo Credit Association | 5-18, Marunouchi 3-chome, Naka-ku, Nagoya-shi, Aichi | 50,000,000 |
| The Shinagawa Shinkin Bank | 6-53, Minamishinagawa 3-chome, Shinagawa-ku, Tokyo | 50,000,000 |
| Fukuiken Tabako Shinyoukumiai | 4-3, Hoei 2-chome, Fukui-shi, Fukui | 50,000,000 |

Total: ¥5,000,000,000

甲第　号証

81355707987

Filed on 9/8/2010 Time 3:10 p.m.

ナウル共和国保証
C号ナウル金融公社円貨債券（1989）

債券買受契約証書

ナウル金融公社（以下「ロンフィン」という。）は、本契約証書末尾の署名欄記載の本契約の他方の当事者（以下「本買受人」という。）との間に、東京都において、1989年7月21日、本債券買受契約（以下「本契約」という。）を締結する。

1．債　券

1.1. ロンフィンは、大要、本契約に添付した別紙1、3及び4記載の様式の債券の要項（以下「債券の要項」という。）、債券及び利札によるナウル共和国（以下「共和国」という。）保証C号円貨債券（1989）元本総額 5,000,000,000円の発行を正当に承認し、かつ、その発行を予定している。本契約において用いられる「本債券」という語は、本契約に従い本買受人に交付される債券、本契約第2条第3項記載のその他の契約に従い債券の買受人に交付される債券及びこれらの債券と代替又は交換に交付される債券を含み、場合により複数と同時に単数を意味する。

1.2. 本債券の元利金（額面超過金を含む。）及び本債券に関し支払われるべきその他の金員の支払は、共和国により、改正済の1972年ナウル金融公社法（以下「法」という。）第4条第(6)項に基づいて保証され、またかかる支払は大要本契約証書に添付の別紙2に記載の保証の要項（以下「保証の要項」という。）に従い、共和国により追加的に保証される。かかる保証を以下「保証」という。

2．ロンフィンによる表明及び保証

ロンフィンはここに以下の如く表明し、かつ、保証する。

2.1. 販売説明書

ロンフィンは、その1989年　月付販売説明書を本買受人に交付した。その販売説明書には、ロンフィンの直近の監査済財務諸表及びロンフィンの財務及び運営状態並びに共和国の経済、通貨、金融等の状況についての関連情報が含まれており、本債券の私募に関連して、当該販売説明書の情報は、すべての重要な点につき正確で、重要な事項についての虚偽の記載がなく、当該販売説明書中の記述が誤解を招くこととなるような重要な事実の記載の欠如はない。販売説明書に記載された情報提供の日付以降、ロンフィンの（直接的又は偶発的）負債又は債務に重要な変更はなく、また、上記販売説明書中に予定されているもの及び本買受人に書面で開示されたものを除き、ロンフィン又は共和国の財務上、経済上、政治上その他の状態に悪影響を及ぼすような重要な変更はない。また、ロンフィンはその如何なる負債についてもその履行を怠っていない。

81355707987

2.2. 適法性

　払込期日（以下に定義される。）において本債券は、（ⅰ）ロンフィンにより正当かつ有効に承認、作成、発行、交付され、本債券及びそこに含まれるすべての約束は、その条項に従い、ロンフィンの有効にして法的拘束力のある直接的、無条件かつ一般的債務となり、（ⅱ）ロンフィンの現在及び将来の他のすべての無担保の債務と同順位のものとなり、発行日の前後、支払通貨、その他の理由による区別はない。

　本契約の署名及び交付並びに本債券の本契約に基づく発行及び売渡しは、1989年4月13日付ロンフィンの理事会により適法に承認されており、本契約は有効かつ法的拘束力のあるロンフィンの契約を構成する。

　ロンフィンによる本契約又は本債券の作成、交付あるいはロンフィンによる本契約上又は本債券上の義務の履行もしくはそれらの条項・条件の遵守は、ロンフィンに適用され又はロンフィンが設立にあたり準拠した法律、行政規則、裁判所の判決もしくは命令又はロンフィンが当事者となっているか又はロンフィンもしくはその財産が拘束されている契約もしくは証書のいかなる条項もしくは規定にも違背、抵触せず、またそれらの不履行ともならず、かつ、ロンフィンの財産もしくは資産に対する先取特権、質権、その他性質の如何を問わず何らの負担をも発生させ又は課することにならない。

　払込期日において、保証並びにロンフィンによる本契約の署名及び交付、本契約に基づく本債券の発行及び売渡し並びにそれらに基づく義務の履行に関し必要な共和国政府当局、政府機関、その下位機関又は行政区画のすべての承認、認可、同意及び許可（それぞれ法第4条(6)項及び法第19条(3)項に従った共和国による保証及びロンフィンによる債券の発行に対する内閣の同意に関する1989年5月5日及び7月11日付の共和国内閣の決定を含む。）が適法に取得され、かつ、完全な効力を有している。

2.3. 私募

　ロンフィンは、本契約の署名及び交付と同時に、本契約添付別紙5記載の他の各買受人がそれぞれロンフィンから別紙5の当該買受人氏名欄に対応して記載されている元本総額の本債券を本契約と（買受元本総額の点を除いては）同一内容で買受ける契約を、ロンフィンとの間で署名及び交付することを表明し、保証する。各買受人は、本契約第3条により本買受人が行った表明と同一の表明を行う。各買受人による買受けは、各買受人によるロンフィンからのそれぞれ別個独立の買受であり、各買受人への本債券の売渡し及び交付は、ロンフィンによる各買受人へのそれぞれ別個独立の売渡し及び交付である。本契約及び上記他の契約は、本契約中において「買受契約」と総称されることがある。

　本債券発行の斡旋に関するロンフィンの代理人は、大和證券株式会社、住友信託銀行株式会社、千代田生命保険相互会社及び日本団体生命保険株式会社であり、本債券の日本における販売については、これらが責任をもってこれを行う。

　ロンフィンは、直接的であると代理人を通じてであるとを問わず、本買受人及び本契約添付別紙5記載の他の買受人を含む49人以内の機関投資家以外の者に対して本債券又はこれに

— 2 —

81355707987

実質的に類似した証券の売付の申込をしたり、買付の申込を勧誘したり、あるいはその他の
方法でこれらに関して折衝したり交渉したことはない。

3．本買受人による表明

3.1.（ⅰ）本買受人は、本債券に関して日本国証券取引法（昭和23年法律第25号、改正を含み
「証券取引法」と総称する。）第4条に基づく届出をロンフィンが行っていないこと
を確認する。

（ⅱ）本買受人は、本債券を投資目的のために本買受入自身の勘定又は信託勘定により買
受けるものであって、かかる債券を証券取引法上届出が必要とされる募集又は売出し
と解されるような時期又は方法で売付けないことをロンフィンに対して保証し、かつ
約束する。

4．本債券の売却及び買受

4.1.ロンフィンは本契約添付別紙5の本買受人名に対応した「買受債券元本額」欄記載の本債
券の元本額を額面の100 ％の発行価額にて本買受人に対し発行し売却することに同意し、
本買受人は本契約に規定された条項・条件に従い、かつ本契約上のロンフィンの事実の表明、
保証及び合意に基づき、ロンフィンから当該本債券を上記発行価額にて買受けることに同意
する。本買受人が買受ける本債券の発行価額の総額が本契約第4条第2項の規定に従いロン
フィンに対し支払われることを条件として、ロンフィンは1988年7月27日（以下「払込期日」
という。）に本債券を発行するものとする。

4.2.払込期日の午後2時（日本時間）までに、本買受人はロンフィンに対し本買受人が買受け
た本債券の発行価額の総額を支払うものとする。当該支払は、住友信託銀行株式会社東京営
業部にあるこの目的のために開設されたロンフィン名義の口座に即時現金化可能な円で振込
むことにより行うものとする。

4.3.本契約第4条第1項に基づく本債券の発行後可能な限り速やかにロンフィンは住友信託銀
行株式会社東京営業部において、ロンフィンのために適法に署名された払込期日付の本買受
人が買受けた元本額相当の本債券の債券を交付するものとする。

本買受人は買受けた本債券を本買受人の選択により、ロンフィンの費用負担で社債等登録
法（昭和17年法律第11号）に基づき登録することができる。この場合、本債券の債券の代り
に登録済証が本債券の発行後可能な限り速やかに交付されるものとする。

5．停止条件

5.1.本買受人が払込期日に買受ける元本額の本債券を買受け、かつ、その代金の支払をなす義
務は、本契約第2条のロンフィンによる表明・保証が正確であり、かつ、それらが遵守され
ていること及び払込期日以前において下記の条件が成就することを停止条件とする。

— 3 —

81355707987.

（ⅰ）共和国の法務長官又は法務省の法務担当高官の意見書

　　　ロンフィンが、共和国の法務長官又は法務省の法務担当高官の下記の趣旨の英文の意見書を本買取人に交付していること。（この意見書は払込期日付とし、日本法上の問題に関しては以下に記載の青木・クリステンセン・野本法律事務所の意見に依拠することができる。）

　　(a)　共和国はロンフィンの単独構成員である。ロンフィンは、共和国法に基づいて設立され、現存する法人として有効に存続しており、現在行っている業務及び本契約第2条第1項所定の販売説明書において記載されている業務を行ない、また、本債券を持続し本債券を発行する（法人としての、及びその他の）完全な権利、権限を有する。

　　(b)　本債券は、ロンフィンにより正当かつ有効に承認されており、日本法に基づき本債券が正当かつ有効に署名、発行、交付されれば、本債券はロンフィンにより正当かつ有効に署名、発行、交付される。本債券及びそこに含まれるすべての約束は、その条項に従いロンフィンの有効にして法的拘束力のある直接的、無条件かつ取消不能の一般的債務を構成する。本債券は、ロンフィンの現在及び将来のその他のすべての無担保の債券と同順位であり、発行日の前後、支払通貨、その他の理由による優劣はない。

　　(c)　買受契約は、ロンフィンにより適法に承認、署名、交付されており、ロンフィンの有効かつ法的拘束力のある義務を構成する。

　　(d)　ロンフィンによる買受契約又は本債券の署名、交付、ロンフィンによるそれらに基づく義務の履行、あるいはロンフィンによるそれらの条項・条件の遵守は、ロンフィンに適用される又はロンフィンが設立にあたり準拠した法律、行政規則、裁判所の判決もしくは命令、又はロンフィンが当事者となっているか、あるいはロンフィン又はその財産が拘束されている契約もしくは証書の如何なる条項もしくは規定にも違背、抵触せず、またそれらの不履行ともならず、ロンフィンの財産もしくは資産に対する先取特権、質権その他性質の如何を問わず何らの負担をも発生させ又は課することにならない。

　　(e)　ロンフィンは本債券の発行を授権する旨記載された共和国内の事前の書面による同意を取得している。この同意は払込期日において完全な効力を有する。これ以外にはロンフィンによる買受契約の署名、交付及び買受契約に基づく本債券の発行、販売並びに買受契約もしくは本債券に基づくその債務の履行に関して共和国又はオーストラリア連邦の政府当局、政府機関、その下位機関は行政区画のなんらの承認、認可、同意、許可も要しない。

　　(f)　現在施行されている共和国又はオーストラリア連邦又はそれらの行政区画の法律、規則によれば、ロンフィンが、オーストラリア・ドルと交換に日本円を買入れ、本債券の保有者に対し本債券の元金、額面超過金（もしあれば）及び利息をその条項に従って支払うことにつき共和国又はオーストラリア連邦の政府当局、政府機関、その下位機関又は行政区画のなんらの承認、認可、同意、許可も要しない。

　　(g)　共和国において課せられるか又は支払うべき印紙税、文書税その他の類似の租税、負担金は存在しない。買受契約及び本債券は本債券の買受人に交付された様式において共

— 4 —

81355707987

和国の裁判所において証拠能力を有している。

(h) 本債券の買受人が買受契約に基づき提起する訴訟及び本債券の保有者が本債券に基づきロンフィンに対して提起する訴訟は、日本の東京地方裁判所、日本法上当該裁判所からの上訴を審理する権限を有する日本の裁判所又は共和国の管轄裁判所にこれを提起することができる。共和国及びその関係行政区画の法律によれば、ロンフィンはかかる訴訟においてかかる裁判所の裁判権からの裁判免除の抗弁を自ら主張し、又は自己に代って他人に主張させることはできない。

(i) 本債券の元利金（額面超過金を含む。）及び本債券に関し支払われるべきあらゆるその他の金員の支払は、共和国により、法第４条(6)項に基づいて保証され、又、かかる支払は保証の要項に従って追加的に保証される。本債券が本契約及び債券の要項に従って適法に発行されたときは、保証はナウル法上の問題に関する限りにおいて、法的に有効かつ拘束力のある共和国の無担保の債務となり、その成立の日、支払通貨その他理由のいかんを問わず、共和国の借入金にかかるすべての無担保債務及び第三者の借入金に対するその他のすべての無担保の保証債務又は補償債務と同順位であること。

(j) 保証の成立及び共和国による保証の履行は、共和国の憲法をはじめとする成文法もしくは法令規則並びに共和国が当事者であるか、あるいは拘束される契約のいずれの条項にも違背せず、かつ、これらから発生する共和国の債務又は義務に一切抵触しないこと。

(k) 共和国は、保証に基づく義務に関して、管轄権を有する日本もしくは共和国の裁判所における訴訟においては、主権を理由とする免責特権を主張する権利を有しないこと。

(l) 本債券の信権者は、買取契約第８条第２項又は債券の要項第25項又は保証の要項第９項に従い管轄権及び訴状送達に服することによりロンフィン又は共和国に対し管轄権が取得された場合、本債券の元利金（額面超過金を含む。）の支払を求める訴訟を日本国においてロンフィンまたは共和国に対して提起し最終判決を得た場合には、それから訴訟手続を共和国最高裁判所もしくはその他の管轄裁判所に申立てることができる。日本の判決に基づく上記共和国裁判所の判決は、共和国最高裁判所において なされた判決の日本における執行に関し、実質的に相互主義の取扱がなされることが保証されていると納得できる場合には、更に次の主たる要件が充たされていると共和国裁判所が判断した場合には、日本の判決の実体審理を行うことなく、取得され得る。主たる要件は、ロンフィン又は共和国が実際の日本の訴訟手続において、訴訟に関する主権その他に基づく免責特権を放棄していること、日本の判決が詐欺により取得されたものではないこと及びその判決の執行が共和国の公序に反しないことである。

(m) ロンフィンあるいは共和国の本契約、本債券の要項もしくは保証の要項の下に債務を履行する能力に重大な悪影響を及ぼすおそれのある、ロンフィンあるいは共和国に対しての訴訟、仲裁もしくは行政手続は、ロンフィンの知る限りにおいて、現在行われておらず、審理中でなく、又そのおそれもない。

— 5 —

81355707987.

(n) 販売説明書中の「The Republic of Nauru Finance Corporation 」及び「The Republic of Nauru」という見出しの下の法的性質を有する記載は、当該販売説明書中にある通り正確である。

上記法律意見書には、本債券を発行し及び保証を付与することについての根拠となる共和国の法令の関係条文、その他関連書類を添付しなければならない。

（ⅲ）買受人の日本の法律顧問の意見書

本買受人が、買受契約、第5条第1項第5号に記載の元利金支払事務取扱契約、第5条第1項第5号に記載の登録事務取扱契約、本債券及び本保証で予定された取引に関する本買受人の日本の法律顧問である青木・クリステンセン・野本法律事務所の意見書で、買受契約、元利金支払事務取扱契約、登録事務取扱契約、本債券及び本保証が日本法上有効である旨並びに本買受人が要求するその他の関連事項について記載したもの（同意見書は払込期日付とし、共和国法に関しては第5条第1項第1号記載の意見書に依拠することができる。）を受領し、ロンフィンは本買受人の法律顧問が上記事項に関し合理的範囲内で要求する書類（必要な場合には証明書付英語訳を添付して）を同法律顧問に対し提出していること。

（ⅲ）事実の表明の正確性

本契約第2条記載のロンフィンによる事実の表明及び保証を、虚偽もしくは不正確ならしめるような事由はなく、かつそれらは払込期日になされたものであるごとく同日現在真実かつ正確であること。

（ⅳ）日本国大蔵大臣への事前届出

本債券の発行に関し、日本の外国為替管理法令上要求される届出及びその変更届出（もしあれば）がロンフィンにより日本の大蔵大臣になされており、上記届出及びその変更届出（もしあれば）に係る取引を行うことを承認する旨の日本の大蔵大臣の通知が当該大臣よりなされており、当該通知は払込期日において完全に有効であること。

（ⅴ）元利金支払事務取扱契約及び登録事務取扱契約

元利金支払事務取扱契約及び登録事務取扱契約がロンフィン及び住友信託銀行株式会社との間で締結済であり、払込期日現在完全な効力を有していること。

（ⅵ）本債券の登録のための主務大臣の指定

社債等登録法施行規則（昭和17年大蔵、司法省令第1号）に従い、登録債としての本債券の指定、及び社債等登録法施行令（昭和17年勅令第409号）に従い、本債券の登録機関としての住友信託銀行株式会社の指定を日本国法務大臣及び大蔵大臣から取得していること。

（ⅶ）そ　の　他

ロンフィンは買受契約において払込期日以前にロンフィンが行うものとされているその他の一切の行為（もしあれば）を、払込期日以前に完了していること。

— 6 —

B1355707987

5.2. 本第5条第1項の諸条件のいずれかが、本買受人の買受けるべき本債券の発行価額の本契約第4条第2項に従った本買受人による支払までに充足されていない場合、本買受人はロンフィンへの電信又はテレックスによる通知（速やかに書面により確認すること。）により、それ以前に当該条件が充足されない限り又は本買受人が当該条件を書面で放棄しない限り、本債券の買受の約束をただちに解除できるものとする（但し、かかる解除をする義務を負うものではない。）。この場合、本契約はただちに解除されて効力を失い、本買受人はその債務を免れるものとする。但し、ロンフィンは、本契約第6条第1項第1号に基づく債務を免れるものではない（但し、本契約第2条第3項に規定の代理人に支払うべき手数料を除く。）。

5.3. 買受契約に基づくすべての買受人がそれぞれ買受けることを約した額面額の本債券を払込期日に買受けなかった場合には、ロンフィンは、払込期日に本買受人が買受ける本債券を本買受人に売渡す義務はない。


6. ロンフィンの約束

6.1. ロンフィンは以下の如く約束し、かつ合意する。

（ⅰ）ロンフィンは、買受契約上の取引に関してロンフィンが負担した一切の費用を支払う。ロンフィンは、本契約第2条第3項に規定される代理人の買受契約上の取引の斡旋に関する手数料及び実費、販売説明書、買受契約証書、元利金支払事務取扱契約証書、登録事務取扱契約証書、本債券の債券、利札、その他の書類の作成及び印刷の費用及び本契約第5条第1項第2号に規定された弁護士への報酬及び実費、並びに買受契約上の取引に関して本買受人及び他の買受契約上の他の買受人が負担した合理的範囲の費用を支払うものとする。

（ⅱ）ロンフィンは、本債券と実質的に類似した有価証券を、本債券と当該有価証券を一体としてみた場合に、その募集又は売出しが証券取引法に基づく届出が必要とされる不特定多数の投資家への募集又は売出しと日本の裁判所または日本国大蔵大臣により解釈されるような方法で、同時に日本において募集又は売出しをしないものとする。

（ⅲ）ロンフィンは、買受人のためにできるだけ速やかに（いかなる場合においてもロンフィンの各会計年度終了後6ヶ月を超えないものとする。）貸借対照表と損益計算書を含むロンフィンの監査済の年次報告書の十分な部数を銀行（債券の要項に定義される。）に対して提出するものとし、又、銀行が随時合理的に要求する追加の情報を銀行に対して提供するものとする。


7. 通　知

7.1. 別段の定めがない限り、本契約に関するロンフィン又は本買受人に対する通知もしくは請求は、下記の宛先へ送付した場合に、すべての目的のために正当に通知もしくは請求されたものとみなす（但し、テレックスの場合は、郵便料前払の書留航空郵便により書面にて遅滞

— 7 —

81355707987.

なく確認すること。）。ロンフィンに対しては、以下の宛先に行う。

　　航空郵便の場合は、

　　　　Republic of Nauru Finance Corporation

　　　　Government Offices,

　　　　Yaren District.

　　　　The Republic of Nauru

　　　　Nauru Island

　　　　Central Pacific

　　　　Attention : Chairman

　　テレックスの場合は、

　　　　ZV 33DB1 GOVNARU

とする。

　　本買受人に対しては、本契約証書添付の別紙５記載の本買受人の住所宛に行う。本契約の一方の当事者が他方の当事者に対し書面により他の宛先を指定した場合には当該宛先に対し通知もしくは請求するものとする。通知もしくは請求はすべて英語により行うものとする。

8. そ の 他

8.1. 本契約は日本法に準拠し、日本法に従って解釈されるものとする。ただし、ロンフィンによる本契約の授権に関する事項は共和国法に準拠する。

8.2. 本契約から生ずるか又はこれに関するロンフィンに対する一切の訴訟は、東京地方裁判所及び日本法上当該裁判所からの上訴を管理する権限を有する日本の裁判所に対して提起することができ、ロンフィンはここにかかる裁判所の管轄権に明示的、無条件かつ取消不能の形で服する。ロンフィンに対するかかる訴訟は共和国法に基づき管轄権を有する共和国の裁判所に対しても提起することができる。ロンフィンが、それ自身もしくはその財産又は資産に関し、司法上の手続（送達、判決の取得、差押え、強制執行又はその他に関するものであるか否かを問わない。）からの免責特権（主権に基づくか否かを問わない。）を有し又は将来取得する範囲において、ロンフィンは本契約に基づくロンフィンの債務に関してロンフィンに対し日本もしくは共和国の上記裁判所において提起されるかかる司法上の手続からのかかる免責特権を、適用法上可能な限度まで、無条件かつ取消不能の形でここに放棄する。ロンフィンは、ここに本契約から生ずるか又はこれに関して日本において提起されることのある一切の訴訟につき、ロンフィンの権限ある送達受領代理人として日本における共和国領事を指名し、かかる送達を受けるべき宛先として本締結日現在、日本国鹿児島市加治屋町12番13号福岡デンタルビルに所在するナウル共和国領事館をここに指定する。ロンフィンは、本債券の未償還残高が存する限りいつでも、当該指名及び指定が完全な効力を有するのに必要な一切の行為（あらゆる書類の作成及び提出を含む。）をなすことをここに約束する。日本における共和国領事が何らかの理由によりロンフィンのかかる権限ある代理人として行為する意思がなく、又は行為することが不可能な場合には、ロンフィンはただちに日本国に所在す

— 8 —

81355707987

る後任の相應ある代理人を指名し、かつ当該指名が効力を有するのに必要な一切の行為をな
すことをここに約束する。またロンフィンは本債券の債権者に対し、当該後任の代理人を通
知し又は通知させるものとする。

8.3. 本契約のすべての条項及び規定（一切の約束、合意、事実の表明及び保証を含む。）は、
本契約の当事者並びにそれぞれの承継人及び譲受人（その時々の本債券の債権者を含む。）
を拘束し、これらの者はその利益を享受することができるものとする。ただし、ロンフィン
は、買受人の書面による事前の同意を得なければ本契約上のロンフィンの権利又は義務を譲
渡又は移転することができない。

8.4. いずれかの買受人によりなされた調査がある場合にもそれにかかわらず、本契約及び本債
券において なされた すべての約束、合意、事実の表明及び保証は、本債券の発行及び交付並
びにそれに対する払込後も引続きその効力を有するものとする。

8.5. 本契約証書は日本語により2部作成され、英語訳をこれに添付する。本契約につき意味又
は意図に疑義ある場合には日本語による本契約証書が優先するものとする。

　以上の契約の証として、本契約証書冒頭に記載された場所及び日付において、両当事者の代表
者はそれぞれここに調印する。

　　　　　　　　　　　　　　ナ　ウ　ル　金　融　公　社


　　　　　　　　　　　　　　　　　_____


　　　　　　　　　　　　　　　　　_____


— 9 —

81355707987

別紙 1

#### 債 券 の 要 項

　本債券の要項(以下「本債券の要項」という。)は、ナウル金融公社(以下「ロンフィン」という。)
が、適法な授権に基づき発行するナウル共和国(以下「共和国」という。)保証C号ナウル金融公社
円貨債券 (1989)(以下「本債券」という。)に適用する。
1．本債券の額面総額は、金50億円とする。
2．本債券の券面の種類は、1,000万円の1種とし、分割又は併合はしない。
3．本債券の利率は、年7.0パーセントとする。
4．本債券は無記名式利札付に限るものとし、記名式への変更はしない。
5．本債券の元利金(額面超過金を含む。)、および本債券に関し支払われるべきその他のすべての金
　員の支払は、共和国により、改正済の1972年ナウル金融公社法(以下「法」という。)第4条第6
　項に基づいて保証され、また、かかる支払は、保証の要項(以下「保証の要項」という。)に従い、
　共和国により、追加的に保証される。当該保証は、以下「本保証」という。
6．本債券の消滅時効は、元金(額面超過金を含む。)について10年、利息については5年とする。
7．本債券の債券及び利札にはロンフィン会長の複写方式による署名を付する。
8．本債券の登録機関は、住友信託銀行株式会社(以下「銀行」という。)とする。本債券の債権者
　(以下「本債券の債権者」という。)は、いつでもその本債券を登録することができる。本債券の
　応募者登録の費用はロンフィンの負担とし、その他の登録の費用は請求する者の負担とする。登録
　債の登録抹消による本債券の債券及びこれに付属する利札の作成及び交付に要する一切の費用は、
　請求する者の負担とする。
9．本債券の債券原簿(以下「債券原簿」という。)の作成及びその管理は、ロンフィンに代り銀行
　が行う。
10．本債券の元金(額面超過金を含む。)及び利息の支払は、ロンフィンにより銀行の東京営業部に
　おいて、日本国法定通貨によってなされる。
11．現物債の場合、元金(額面超過金を含む。)の支払は、本債券の債券と引換にこれを行い、利息
　の支払は利札と引換にこれを行う。ただし、本債券の要項第22項に別段の定めがある場合を除く。
　　登録債の場合、元金(額面超過金を含む。)の支払は、元金領収書及び登録済証と引換にこれを
　行い、利息の支払は利金領収書と引換にこれを行う。銀行は提出された元金領収書及び利金領収書
　に債権者が銀行に登録している印影と同一の印影が付されていることを確認するものとする。
12．本債券の債券の償還には、支払期日未到来の利札全部を付した本債券の債券の提出を要するもの
　とし、支払期日未到来の利札で欠缺したものがあるときは、償還金額からその欠缺した利札額面金
　額に相当する金額を控除してその残額を支払う。ただし、その欠缺した利札の所持人は、当該利札
　の付されていた本債券の債券の償還期日から5年の消滅時効期間内にこれを提出して、その控除金
　額の支払を受けることができる。
13．元金(額面超過金を含む。)及び利息の支払に際しては、銀行は、債券原簿に適切な記載を行う。
14．本債券の利息は、1989年7月28日から付し、最初の利払期日を1990年1月27日とし、以降毎年
　1月27日及び7月27日の2回に、右のおのその日までの(その日を含む。)6か月分を支払う。
15．本債券の利息は、償還期日後はこれを付さない。ただし、ロンフィンが償還期日に償還を怠った
　ときは、償還が実際に行われるまでの期間につき本債券の要項第3項に定める本債券の利率に基づ
　く日割利息(365日日割計算による。)を支払う。ただし、その期間は、銀行が償還資金を受領した
　旨の通知をロンフィンに代り銀行が公告するか又は他の方法により本債券の各債権者に対し通知を
　発送した日から日本における7銀行営業日を超えないものとする。銀行は、償還資金を受領した後
　日本における14銀行営業日以内に当該公告をするか当該通知を発送する。
16．本債券の元金(額面超過金を含む。)及び利息の支払はすべて、共和国又は共和国のもしくはそ
　の国内の課税当局により課されることのある現在又は将来の公租公課を控除もしくは源泉徴収され
　ることなく、支払われるものとする。ただし、ロンフィンが法により、当該共和国の税につき控除

— 1 —

81355707987

又は源泉徴収を強制された場合はこの限りでない。この場合、ロンフィンは、本債券の債権者の受
領する元金（額面超過金を含む。）もしくは利息の金額が、これらについて当該控除又は源泉徴収
を行わなかった場合に受領されるべき金額となるよう追加額を支払う。ただし、当該追加額は、
本債券を所有しているという以外の理由で共和国に関係があるために、元金（額面超過金を含む。）
もしくは利息について共和国に納税義務のある本債券の債権者により又はそのために支払のため提
示された本債券については支払われないものとする。本債券の要項（本第16項を除く。）において
元金（額面超過金を含む。）及び利息は、おのおのにつき本第15項の規定に基づき支払われるべき
上記追加額をそれぞれ含むものとする。

17. 本債券は、1994年7月27日に額面金額で償還される。

18. 本債券は、ロンフィンの有効な、法的拘束力のある、直接、無条件、取消不能の一般債務であり、
その発行日、支払通貨、その他を理由として優先もしくは劣後することなく、ロンフィンの他のす
べての現在又は将来の無担保の債務と同順位の債務である。ロンフィンは、本債券につき未債還残
高が存する限り、ロンフィンの現在又は将来の債務を担保するためにロンフィンの現在又は将来の
資産又は収入の全部もしくは一部又は1968年ナウル燐収入（支払及び投資）法（改正済）および
1968年ナウル燐収入信託基金令命によって規律されるいずれの基金にも先取特権、抵当権、質権その
他の担保権を設定し、また存続させないものとする（但し、ロンフィンの購入財産上の先取特権、
抵当権、質権その他の担保権が有効に付され、かつその先取特権、抵当権、質権その他の担保権を設定する証書
又は法令が明示的にその旨規定する場合はこの限りでない。但し、本債券に対し、かかる他の債務と同等の順位、比率をもって先取特権、抵当権、質権、
その他の担保権が有効に付され、かつその先取特権、抵当権、質権その他の担保権を設定する証書
又は法令が明示的にその旨規定する場合はこの限りでない。

19. 本要項第18項に基づきロンフィンが本債券の債権者に対し担保を提供する場合、銀行はすべての
本債券の債権者のためにその担保権を保有し実行する。銀行が担保権を保有し実行するにあたって
要する費用はすべてロンフィンの負担とする。銀行は、その際適用を受ける日本法に別段の定めが
ない限り、本費用がロンフィンにより支払われていない限度において本債券の債権者に対し、そ
の本債券の保有額の割合に応じてこれを請求し、かつ当該費用の前払を求めることができる。ただ
し、この規定はロンフィンの上記費用負担義務に影響を与えるものではない。

20. 下記(a)から(i)までに記載された債務不履行事由のいずれかが生じ、かつそれが継続している場合
には、銀行は、本債券の債権者集会の決議又は本債券の未償還額面総額の過半数にあたる本債
券を有する債権者の書面による銀行への請求により、ロンフィンに対し書面で通知することにより本債
券の未償還総額について期限の利益の喪失を宣言することができる。

(a) 本債券又はそのいずれかの元金（額面超過金を含む。）又は利息を5日を超えて、ロンフィン
及び共和国が支払わなかったとき。

(b) ロンフィンが、本債券の他の条項を遅滞なく履行、遵守せず、当該債務不履行が、銀行がロン
フィンに対し、当該債務不履行を治癒するよう要求した書面による通知を
最初にした日から20日を超えて、なお継続しているとき。

(c) ロンフィンが、その義務の不履行により借入金にかかる債務につき期限前に支払を義務づけら
れたとき又は義務づけられる可能性が生じたとき、又は満期に、債務の元本の返済を怠るか又は
債務の元本に関する保証の支払を怠ったとき（かつ当該不履行が該当する猶予期間を超えてなお
継続しているとき。）。

(d) ロンフィンが、その業務のすべてもしくは実質的な部分を行うことを停止したとき、又は業務
遂行に必要なすべてのもしくは実質上すべてのロンフィンの資産もしくは財産の所有、占有又は
管理を自発的もしくは強制的に放棄し又は放棄を余儀なくされたとき。

(e) ロンフィンが、適用ある法の下で破産もしくは支払不能を宣言されたとき、ロンフィンが、支
払期日の到来する債務を支払えないことを書面で認めたとき、債権者のために包括的に譲渡を行
ったとき、管轄地の法律に基づき、ロンフィンが、ロンフィンに関する破産、更生、解散もしく
は清算のための手続又はこれと類似の手続を開始したとき、又はロンフィンに対してかかる手続
が提起され30日間却下されないでいたとき、又はロンフィンの財産の実質的な部分について、判
決、強制執行等の令状が発せられるかもしくは課され、これがその後60日以内に解除されなかっ

— 2 —

81355707987

　　たとき。

　　(f)　ロンフィンが、本債券に基づく義務を遵守し履行するために必要な行政上その他の登録、許可、認可又は承認が、取消され、撤回され、保留され又は、その他完全な効力を有しなくなったとき。

　　(g)　ロンフィンが、本債券に基づく義務のいずれかを履行することが不適法になったとき。

　　(h)　現在又は将来のロンフィンの債務もしくはロンフィンの債務保証あるいは現在又は将来の共和国の債務もしくは共和国の債務保証の支払猶予令（モラトリアム）が共和国又はその他政府機関によって宣言されたとき。

　　(i)　共和国による本保証が完全な効力を有しなくなったとき、又は共和国国内法が、法第30条の改正により、ロンフィンの借入金若しくはこれに供与された信用の返済を確保するために本要項第18項に記載のいずれの基金の資産に対してもこれを負担させ又はその資産の預託を行わせる命令を出す完全な権限を有しないこととなったとき。

　　上記(c)ないし(i)の各項に定めた事由が発生したときは、ロンフィンは直ちにこれを銀行に通知するものとし、銀行はロンフィンに代って直ちにこれを公告するか又はその他の方法により本債券の債権者に通知するものとする。

　　銀行による上記宣言がなされたときには、本債券の未償還総額につき期限の利益を喪失し、経過利息とともに額面価額で直ちに支払われるものとする。ただし、かかる宣言前にロンフィンが当該債券不履行をすべて治癒した場合はこの限りでない。本第20項の規定の適用に関しては、ロンフィンの保有する本債券がある場合にはこれを無効し、未償還でないものと看做す。本第20項の手続に要する合理的範囲の費用はこれをロンフィンの負担とする。

21.　銀行は、本債券の未償還額面総額の10分の1以上にあたる本債券を有する債権者から、共同又は単独で、書面による請求を受けたとき、又は自ら必要と認めたときは、本債券の債権者の利益に重大な影響を有すると銀行が認めた事項を議題とする本債券の債権者の債権者集会の招集を行う。この場合、銀行は、債権者集会の招集通知を公告又はその他の方法で開催日の少なくとも21日前までに行う。当該債権者集会においては、本債券の各債権者は、本債券の額面 1,000万円毎に 1個の議決権を有する。当該債権者集会の決議は、本債券の未償還額面総額の過半にあたる本債券を有する債権者が出席し、その議決権の 3分の 2以上にあたる多数をもって行ない、その決議はすべての本債券の債権者を拘束し、またその実行には銀行があたる。本第21項の規定の適用に関しては、ロンフィンの保有する本債券がある場合にはこれを無効し、未償還でないものと看做す。本第21項の手続に要する費用は、ロンフィンの負担とする。

22.　銀行は、本債券の債券又は利札を紛失し、盗取され、滅失し又は汚損した者が、日本国の裁判所によりなされた除権判決の確定謄本を添えて代り債券又は代り利札の交付を請求したときは、これを交付するものとする。支払期日の到来したものについては、かかる除権判決の確定謄本の提示があったときは、本債券の債券又は利札の引渡を受けてその元金（額面超過金を含む。）又は利息を支払うものとする。本債券の債券又は利札の除権判決のための手続は、本債券の元金（額面超過金を含む。）又は利息の支払場所を管掌する日本国の裁判所がこれを管掌する。本債券の債券又は利札を利札を紛失し、盗取され、滅失し又は汚損した者が、日本国の裁判所からかかる除権判決をとるため、その本債券の債券又は利札をロンフィンが発行した旨の証明書を請求したときは、銀行はこれを作成して交付するものとする。汚損した本債券の債券又は利札で、銀行が真偽を鑑別し得るものについては、銀行は、その債券又は利札の引渡を受けたときは、代り債券又は代り利札を交付し、引渡を受けた本債券の債券又は利札は利札を廃滅するものとする。代り債券又は代り利札の作成及び交付に要する費用は、これを請求する者の負担とする。

23.　本債券の元金（額面超過金を含む。）又は利息の支払期日が日本における銀行休業日にあたるときは、かかる支払は日本におけるその翌銀行営業日にこれを行う。

24.　本債券の要項において別段の定めがある場合を除き、本債券に基づく義務の履行地は、東京都とする。

25.　ロンフィンによる本債券の発行に関する授権及び本要項第18項所定の担保権の設定、効力及び実行に関する事項を除き、本債券、本債券の債券の様式及び内容、並びにそれらに基づく本債券の債権者を含むすべての当事者の一切の権利及び義務は、すべての点において日本法に従うものとする。

—— 3 ——

81355707987

26. 本債券、本債券の債券及び本債券の要項から生ずるか又はこれらに関するロンフィンに対する一切の訴訟は、東京地方裁判所及び日本法上当該裁判所からの上訴を審理する権限を有する日本の裁判所に対して提起することができ、ロンフィンはかかる裁判所の管轄権に明示的、無条件かつ取消不能の形で服する。ロンフィンに対するかかる訴訟は共和国法に基づき管轄権を有する共和国の裁判所に対しても提起することができる。ロンフィンが、それ自身もしくはその財産又は資産に関し、司法上の手続（送達、判決の取得、差押え、強制執行又はその他に関するものであるか否かを問わない。）からの免責特権（主権に基づくか否かを問わない。）を有し又は将来取得する範囲において、ロンフィンは本債券に基づくロンフィンの債務に関してロンフィンに対し日本もしくは共和国の上記裁判所において提起されるかかる司法上の手続からのかかる免責特権を、適用法上可能な限度まで、無条件かつ取消不能の形でここに放棄する。ロンフィンは、ここに本債券、本債券の債券及び債券の要項から生ずるか又はこれらに関して日本において提起されることのある一切の訴訟につき、ロンフィンの権限ある送達受領代理人として日本における共和国領事を指名し、かかる送達を受けるべき宛先として、日本国鹿児島市加治屋町12番13号福岡デンタルビルに所在するナウル共和国領事館をここに指定する。ロンフィンは、本債券の未償還残高が存する限りいつでも、当該指名及び指定が完全な効力を有するのに必要な一切の行為（あらゆる書類の作成及び提出を含む。）をなすことをここに約束する。日本における共和国領事が何らかの理由によりロンフィンのかかる権限ある代理人として行為する意思がなく、又は行為することが不可能な場合には、ロンフィンはただちに日本国に所在する後任の権限ある代理人を指名し、かつ当該指名が効力を有するのに必要な一切の行為をなすことをここに約束する。またロンフィンは本債券の債権者に対し、かかる後任の代理人を通知し又は通知させるものとする。本第26項の規定は、本債券の債権者が管轄権を有するすべての裁判所においてロンフィンに対し訴訟を提起する権利を制限するものではない。

27. 本債券に関するすべての公告は日本国官報に1回掲載されるものとする。銀行が適当と認めるときは、官報に掲載することを要せず、銀行が本債券の全債権者に対し直接通知することをもって公告に代えることができる。

— 4 —

81355707987

別紙 2

保　証　の　要　項

　本保証の要項（以下「本要項」という。）は、ナウル金融公社（以下「ロンフィン」という。）が
発行するＣ号ナウル金融公社円貨債券（1988）（以下「本債券」という。）に対するナウル共和国（以
下「共和国」という。）による保証（以下「本保証」という。）にこれを適用する。
1．共和国は本債券の元利金（額面超過金を含む。）および本債券の要項（以下「債券の要項」とい
　　う。）に従って支払われるべきその他の金員の満期日またはその他の支払期日におけるロンフィンに
　　よる確実な支払を本債券の債権者（以下「本債券の債権者」という。）に対し、無条件かつ取消不
　　能の形で保証する。共和国は、ロンフィンが本債券の元利金（額面超過金を含む。）または債券の
　　要項に従って支払われるべきその他の金員をその支払期日に確実に支払うことを怠った場合には、
　　かかる支払がロンフィンによって行われた場合と全く同様に、これらの金員を満期またはその他の
　　支払期日に支払うこと、並びに共和国内閣が、必要な場合には、本債券の要項第18項に記載のいず
　　れの基金の変態に対してもロンフィンの借入金若しくはこれに供与された信用の遅滞を確保するた
　　めにこれを負担させ又はその資産の預託を行わせる命令を出すことを約束する。
2．本保証に基づく共和国の義務は、絶対・無条件の義務であって、次に掲げるいかなる事由によっ
　　ても影響されまたは阻害されないものとする。
（イ）本債券またはそれに添付の利札の有効性、違法性もしくは強制力の欠如またはそれらが取消し
　　　得べきものであること。
（ロ）ロンフィンの合併、更生、破産または解散。
（ハ）本債券もしくは利札に関する権利もしくは救済手段の行使について銀行（債券の要項に定義さ
　　　れる。）または本債券の債権者もしくは利札の所持人がこれを懈怠しもしくは遅延させること ま
　　　たは当該権利もしくは救済手段を行使する努力を欠くこと。
（ニ）銀行、本債券の債権者もしくは利札の所持人による債券の要項の規定の放棄、同意または猶予。
（ホ）共和国が当事者であるかまたはその存在を認知していたか否かを問わず、ロンフィンと銀行ま
　　　たは本債券の抵通者または利札の所持人との間の取引。
（ヘ）本債券もしくは利札に基づく権利もしくは救済手段の行使またはロンフィンに対する判決の取
　　　得もしくはかかる判決の執行のための手続の完了。
（ト）その他、その方法もしくは程度の如何を問わず、一般に保証人の責任を解除し、または保証人
　　　の抗弁となし得る事態の存在。
3．本債券の債権者もしくは利札の所持人または銀行は、共和国による本要項に規定された義務の履
　　行に先立ってロンフィンに対し通知もしくは請求を行いまたはロンフィンの資産に対し法的手段を
　　とることを要しない。共和国は、本要項に規定された共和国の義務は、債券の要項は本要項に
　　基づく金銭債務の完全な履行によってのみ消滅するものであることに同意する。
4．共和国は、本要項に従った共和国の債券の履行の結果としてまたはそれに関連して共和国がロン
　　フィンに対して何らかの契約上または法律上有することとなる求償権、代位権その他の金銭債権を、
　　本債券すべての元利金（額面超過金を含む。）および債券の要項に従って支払われるべきその他の
　　金員が完全に支払われない限り、一切行使しないことを約束する。
5．本保証に基づく共和国の要務は、共和国の借入金（債券の発行を含む。以下同じ。）にかかるす
　　べての無担保債務および第三者の借入金債務に対する共和国のすべての無担保保証債務と、その発
　　行もしくは成立の日、支払通貨その他の事由のいかんを問わず同順位の債務である。
6．共和国が本保証の実行として行う本債券の元利金（額面超過金を含む。）の支払は、共和国また
　　は共和国のもしくは共和国内の徴税機関によって現在または将来課されるところのある公租公課を控
　　除または徴収されることなく行われるものとする。かかる支払につきかかる公租公課が課される場
　　合には、共和国は、現在または将来の公租公課を控除または徴収した後の本債券の元利金（額面超
　　過金を含む。）すべての純支払純が、債券の要項に定める金額を下回らないよう必要な追加額を支
　　払うものとする。ただし、共和国は、本債券の債権者または利札の所持人が本債券もしくは利札の

— 1 —

81355707987.

所有または本債券の元利金（額面超過金を含む。）の受領以外の事由により共和国と関連を有する
との事由でかかる公租公課の賦課が行われる場合には、上記追加額の支払義務を負わない。
7．共和国による本保証の授権を除き、本保証（本要項を含む。）ならびに本保証に基づいて生じる
本債券の債権者および利札の所持人ならびに銀行を含む関係各当事者の一切の権利義務は、すべて
日本国の法律の定めるところに従うものとする。
8．本保証（本要項を含む。）に基づく義務の履行地は東京都とする。
9．共和国に対する本保証（本要項を含む。）にかかるすべての訴訟は、東京地方裁判所および日本
法上同裁判所からの上訴を受理する権限を有する裁判所に提起することができるものとし、共和国
はかかるすべての訴訟につきその管轄に明示的かつ取消不能の形でここに服する。なお、上記の訴
訟は、共和国の管轄裁判所に対しても提起することができる。共和国は法律上可能な限り、かかる
訴訟に関して享受し得ることあるべき裁判管轄権、訴訟手続、差押え、判決または執行からの免責
特権をここに取消不能の形で放棄する。
　共和国は、上記の日本の裁判所に提起されたかかる訴訟に関し、訴状送達を受けるための住所を
日本国鹿児島市加治屋町12番13号福岡デンタルビルの共和国領事館に定め、その駐在日本国領事を
もって訴状送達の受取人とする。

— 2 —

81355707987

別紙 3

¥10,000,000
No._____

ナウル共和国保証
C 号
ナウル金融公社
円貨債券（1989）

金壱千万円

利率　年7.0%
１９９４年７月27日　満期

　ナウル金融公社（以下「ロンフィン」という。）は、本債券の裏面記載の本債券の要項に従い、本債券の所持人に対し、元本金額壱千万円（額面超過金を含む。）および本債券の元本金額に対する利息を支払うことをここに約束する。
　本債券は、ロンフィンが適法な授権に基づき1989年7月27日に発行したナウル共和国保証C号ナウル金融公社円貨債券（1989）額面総額50億円の一つである。なお、本債券の署名、交付および履行は、共に1972年ナウル金融公社法（改正済）（以下「法」という。）に基づく1989年4月13日付ロンフィン理事会決議および1989年5月5日および7月11日付共和国内閣の書面による事前同意によって授権されている。
　1989年7月27日

ナウル金融公社
会　　長

（複写方式による署名）

　ナウル共和国（以下「共和国」という。）は、法および1989年5月5日および7月11日付共和国内閣決定に基づき、裏面記載の保証の要項に従い、本債券の元金（額面超過金を含む。）および利息ならびに債券の要項に従って支払われるべきその他の金員の期日にに於ける確実な支払を無条件かつ取消不能の形で保証する。
　1989年7月27日

ナウル共和国
大統領

（複写方式による署名）

81355707987

別紙 4

ナ ウ ル 共 和 国 保 証
C　　号
ナ ウ ル 金 融 公 社
円貨債券 (1989)

金壱千万円券利札

半

年　　　　　　　額

利　　　　　　年　　月　　日渡

金　　　　　　№

ナウル金融公社
会　長

（複写方式による署名）

81355707987

別紙 5

| 買　受　人　の　名　称 | 住　　　　　　　　　　所 | 買受償券<br>額面金額 |
|---|---|---|
| 住 友 信 託 銀 行 株 式 会 社 | 東京都千代田区丸の内 1 丁目 4 番 4 号 | 500,000,000 |
| √千 代 田 生 命 保 険 相 互 会 社 | 東京都目黒区上目黒 2 丁目19番18号 | 500,000,000 |
| √日 本 団 体 生 命 保 険 株 式 会 社 | 東京都渋谷区東 1 丁目 2 番19号 | 500,000,000 |
| ケ ミ カ ル 信 託 銀 行 株 式 会 社 東 京 支 店 | 東京都千代田区丸の内 2 丁目 3 番 1 号<br>三菱商事ビル別館 | 1,000,000,000 |
| √荒 川 信 用 金 庫 | 東京都荒川区荒川 3 丁目79番 7 号 | 500,000,000 |
| 都 留 信 用 組 合 | 山梨県富士吉田市下吉田1729 | 500,000,000 |
| √富 良 野 信 用 金 庫 | 北海道富良野市本町 8 番 1 号 | 200,000,000 |
| √平 和 生 命 保 険 株 式 会 社 | 東京都中央区銀座 3 丁目 2 番16号 | 200,000,000 |
| 水 戸 信 用 金 庫 | 茨城県水戸氏大工町 1 丁目 2 番41号 | 200,000,000 |
| モ・ネンコン・エンド・チャンハイ・バンキング・コルホレーション | 東京都千代田区丸の内 2 丁目 1 番 2 号<br>千代田ビル | 150,000,000 |
| √愛 知 県 警 察 信 用 組 合 | 愛知県名古屋市中区三の丸 2 丁目 1 番 1 号 | 100,000,000 |
| √遠 賀 信 用 金 庫 | 福岡県遠賀郡水巻町大字頃末1020番 4 号 | 100,000,000 |
| √株 式 会 社 鹿 児 島 銀 行 | 鹿児島県鹿児島市金生町 6 番 6 号 | 100,000,000 |
| 高 松 信 用 金 庫 | 香川県高松市瓦町 1 丁目 9 番 2 号 | 100,000,000 |
| 中 津 信 用 金 庫 | 大分県中津市豊田町 2 番 528号 | 100,000,000 |
| 松 沢 信 用 金 庫 | 東京都世田谷区上北沢 3 丁目32番13号 | 100,000,000 |
| √愛 知 県 医 療 信 用 組 合 | 愛知県名古屋市中区丸の内 3 丁目 5 番18号 | 50,000,000 |
| 品 川 信 用 組 合 | 東京都品川区南品川 3 丁目 6 番53号 | 50,000,000 |
| 福 井 県 た ば こ 信 用 組 合 | 福井県福井市宝永 2 丁目 4 番 3 号 | 50,000,000 |
| 合　　　　　　　計 | | 5,000,000,000円 |

C $\frac{P}{5}$.　5b7o

JPY2.45b7o

①15,392857